Case 1:18-cv-05973-GBD-OTW   Document 56   Filed 05/02/19   Page 1 of 182

Case 1:18-cv-05973-GBD-OTW   Document 9-1   Filed 08/14/18   Page 1 of 6
Case 1:18-cv-05973-GBD   Document 6-2 (Court only)   Filed 08/13/18   Page 1 of 6

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Sean Best - 09-A-1969

Write the full name of each plaintiff.

18 CV 05973 - GBD - OTW

(Include case number if one has been assigned)

-against-

The City of New York
The New York State Dolls
Parole Officer Brown, Senior
Parole Supervisor Paredes ETAL

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑Yes   ☐ No

RECEIVED
SDNY PRO SE OFFICE
2019 MAY -2  AM 9: 25
S.D. OF N.Y.

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Sean                         A.                  Best
First Name             Middle Initial                  Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

09- A- 1969
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Sing Sing Correctional Facility
Current Place of Detention

354 Hunter St.
Institutional Address

Ossining                         N.Y.                  10562
County, City                         State                  Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☑ Convicted and sentenced prisoner
☑ Other: Parole Violator

Case 1:18-cv-05973-GBD-OTW   Document 56   Filed 05/02/19   Page 3 of 182

Case 1:18-cv-05973-GBD-OTW   Document 9-1   Filed 08/14/18   Page 3 of 6
Case 1:18-cv-05973-GBD   Document 6-2 (Court only)   Filed 08/13/18   Page 3 of 6

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct
information is not provided, it could delay or prevent service of the complaint on the defendant.
Make sure that the defendants listed below are identical to those listed in the caption. Attach
additional pages as necessary.

Defendant 1:   The city of New York

First Name _____ Last Name _____ Shield #

N/A

Current Job Title (or other identifying information)

N/A

Current Work Address

Law Dept., 100 Church St., N.Y.C, N.Y 10007

County, City _____ State _____ Zip Code

Defendant 2:   The New York State Dept. of Corrections

First Name _____ Last Name _____ Shield #

N/A

Current Job Title (or other identifying information)

28 Liberty St.

Current Work Address

N.Y, N.Y.   10005

County, City _____ State _____ Zip Code

Defendant 3:   Joanna   Brown   N/A

First Name _____ Last Name _____ Shield #

Parole Officer

Current Job Title (or other identifying information)

314 W. 40th Street

Current Work Address

N.Y   N.Y.   10018

County, City _____ State _____ Zip Code

Defendant 4:   Claudia   Paredes   SPO

First Name _____ Last Name _____ Shield #

Senior Parole Officer

Current Job Title (or other identifying information)

314 W. 40TH Street

Current Work Address

N.Y.   N.Y.   10018

County, City _____ State _____ Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence: ___NYc DoGS  /  NYSDoccS.___

Date(s) of occurrence: ___VARious___

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

PLEASE

SEE

ATTACHED

Enclosed

Case 1:18-cv-05973-GBD-OTW   Document 56   Filed 05/02/19   Page 5 of 182

Case 1:18-cv-05973-GBD-OTW   Document 9-1   Filed 08/14/18   Page 5 of 6
Case 1:18-cv-05973-GBD   Document 6-2 (Court only)   Filed 08/13/18   Page 5 of 6

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

VARious INJURIES Stated in Claim and To be determined.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Punitive, compensatory Damages Against All Defendents in their individual and official capacities in the Amount OF $100 million U.S.D

Case 1:18-cv-05973-GBD-OTW   Document 56   Filed 05/02/19   Page 6 of 182

Case 1:18-cv-05973-GBD-OTW   Document 9-1   Filed 08/14/18   Page 6 of 6
Case 1:18-cv-05973-GBD   Document 6-2 (Court only)   Filed 08/13/18   Page 6 of 6

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

April 24, 2019
Dated

Plaintiff's Signature

SEAN                    A.                    Best
First Name          Middle Initial          Last Name

Sing Sing C.F.  354 Hunter St.
Prison Address

Ossining                    N.Y.                    10562
County, City                State                  Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:   April 24, 2019

## Defendant's Information

Defendant #5
C.O. Grainger-Shield #18108
Special Search - GRVC
09-09 Hazen St.
East Elmhurst, NY 11370

Defendant #6
C.O. Farley-Shield #2066
Gang Intelligence -E.S.U.
Emergency Service Unit
16-16 Hazen St.
East Elmhurst, NY 11370

Defendant #7
Captain Marshall-Shield #319
Former Security Captain E.M.T.C.
R.I. Adjudicication Unit
Rikers Island Judicial Center
160 East 4th St.
East Elmhurst, NY 11370

Defendant #8
Captain Frances Salmon
Correction Captain E.M.T.C.
10-10 Hazen St.
East Elmhurst, NY 11370

Defendant #9
C.O. Ubinas-Shield #19138
Correction Officer - E.M.T.C.
10-10 Hazen St.
East Elmhurst, NY 11370

Defendant #10
Jorge Morban-Shield #5794
Detective-32 Precinct
New York City Police Department
1 Police Plaza, Rm. 1200
N.Y. N.Y. 10038

Defendant #11
C.O. Brown-Shield #17616
Correction Officer -A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #12
C.O. Chapelle-Shield #17920
Correction Officer - A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #13
C.O. Walker-Shield #7012
Correction Officer - A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #14
C.O. Burt-Shield #18597
Correction Officer -A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #15
C.O. Raman-Shield #15650
Correction Officer -A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #16
C.O. Thompson-Shield #11482
Correction Officer - A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #17
C.O. Spivey-Shield #5657
Correction Officer
Parent Command of the Transit Bureau
130 Livingston St., 3rd Fl.
Brooklyn, N.Y. 11201

Defendant #18
Deputy Warden Julien
Deputy "Project" A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #19
C.O. Lofton-Shield #10273
Correction Officer - A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #20
C.O. Haynes-Shield #7971
Correction Officer - R.M.S.C.
19-19 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #21
C.O. J. Perez-Shield #4736
Correction Officer -A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

**Defendant #22**

S. Trugman-Shield #17660
Correction Officer - Support Service Division
Rikers Island - 13-11 Hazen St.
East Elmhurst, N.Y. 11370

**Defendant #23**

Tyson, -Shield #7458
Correction Officer - A.M.K.C.
18-18 Hazen St.
East Elmhurst, N.Y. 11370

**Defendant #24**

Taveras, -Shield
Former Correction Officer
Parent Comm. Recruit Training Section
1 Police Plaza, Rm. 503
N.Y. N.Y. 10007

**Defendant #25**

Rios, Shield #2061
Emergency Service Unit
16-16 Hazen St.
East Elmhurst, N.Y. 11370

**Defendant #26**

Amador Nuno-Shield #19853
Police Officer - NYCPD 48pct.
450 Cross Bronx Expressway
Bronx, N.Y. 10457

**Defendant #27**

Jordan Moses-Shield #24160
Police Officer - NYPD - NYCPD-48 Pct.
450 Cross Bronx Expressway
Bronx, N.Y. 10457

**Defendant #28**

A. Rivera-Shield #6810
Correction Officer - E.M.T.C.
10-10 Hazen St.
East Elmhurst, N.Y. 11370

**Defendant #29**

K. McClain-Daniels,-Shield #481
Captain -E.MT.C.
10-10 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #30

Ianozzi, -Shield #10331
Correction Officer - E.M.T.C.
10-10 Hazen St.
East Elmhurst, N.Y. 11370

Defendant #31

Figueroa, -Shield #
Sergeant-Downstate Correctional facility (DOCCS)

Defendant #32

Lillek, - Shield #
Lieutenant - Downstate Corr. Fac. (DOCCS)

Defendant #33

Carrington-Allen, Linda D. - Shield #
Captain - Queensboro/Lincoln/Sing Sing

Defendant #34

Colleymore-Shield #
Former Correction Officer-retired (DOCCS)

Defendant #35

OMH Unit Chief -
Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #36

Walker, -Shield #
Correction Officer/Sergeant as of 2018
Sing Sing Corr. fac.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #37

Gonzalez, -Shield #
Sergeant
354 hunter St. - Sing Sing C.F.
Ossining, N.Y. 10562

Defendant #38

Royce,
Deputy Superintendent of Security
Sing Sing C.F. - 354 Hunter St.
Ossining, N.Y. 10562

Defendant #39

M. Barnes
Captain - Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #40

Elam,
Doctor
Sing Sing C.F. - 354 Hunter St.
Ossining, N.Y. 10562

Defendant #41

M. Capra
Superintendent of Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #42

Bodge,
Lieutenant-Sing Sing C.F.
354 Hunter St.
ossining, N.Y. 10562

Defendant #43

Pagan,
Lieutenant-Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #44
L. Varghese
F.O.I.L. Officer-Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #45

T. Hill
Correction Officer - Law Library Officer
Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendnat #46

Donovan Abreu
Correction Officer-Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

Defendant #47

Brown,
Correction Officer-Sing Sing C.F.
A-Block Keeplock Officer
354 Hunter St.
Ossining, N.Y. 10562

Defendant #48

Jonathan Franco
Correction Officer-Sing Sing C.F.
354 hunter St.
Ossining, N.Y. 10562

## Defendnant #49

Kelvin Murphy
Correction Officer-A Block K.L. Officer
Sing Sing C.F. - 354 Hunter St.
Ossining, N.Y. 10562

## Defendant #50

Carlos Acevedo
Sergeant-Sing Sing C.F.
354 Hunter St.
Ossining, N.Y. 10562

## Defendant #51

Jose Muniz
Sergeant-Sing Sing C.F. - 354 hunter St.
Ossining, N.Y. 10562

## Defendant #52

Waldemar Ramos
Sergeant-Sing Sing C.F.
354 Hunter St.
Ossining, NY 10562

## Defendant #53

Food Service Administrator-DOCCS
Sing Sing C.F.-354 Hunter St.
Ossining, NY 10562

## Defendant #54

Francis
Food Service Civilian
Sing Sing C.F. - 354 Hunter St.
Ossining, NY 10562

## Defendant #55

Jackson, T
Correction Officer-Sing Sing C.F. - Disciplinary office
354 Hunter St.
Ossining, NY 10562

## Defendant #56

Cooper,
Correction Officer-Sing Sing C.f. /O Gallery Officer
Unknown (Wende or Attica)

## Defendant #57

Dominica Piazza
S.O.R.C. - Now a deputy Superintendent
Unknown

## Defendant #58

ORC in charge of Legal Call
Sing Sing C.F.

Defendant #59

Anthony Annucci
Acting Commissioner of DOCCS
1220 Washington Ave.
Albany, NY 12226

Defendant #60

Tina M. Stanford
Chairperson-NYS Division of Parole
1220 Washington Ave.
Albany, NY 12226

Defendant #61

Miguel Malave
Correction Officer-Sing Sing C.F.
354 Hunter St
Ossining, NY 10562

Defendant #62

S. Henton
Deputy Superintendent for Health
Sing Sing C.F.-354 Hunter St.
Ossining, NY 10562

Defendant #63

Henry Guiterrez
Correction Officer-Sing Sing C.F.
354 Hunter St.
Ossining, NY 10562

Defendant #64
Tiffany Turner
Correction Officer-Sing Sing C.F.
354 hunter St.
Ossining, NY 10562

Defendant #65

Benjamin Russell
Correction Officer-Sing Sing C.F.
354 Hunter St.
Ossining, NY 10562

Defendant #66

Morillio
ORC-Sing Sing C.F.
354 Hunter St.
Ossining, NY 10562

Defendant #67

Dave Taylor
Correction Officer-Sing Sing C.F.
Property Claims Officer
354 Hunter St.
Ossining, NY 10562

## Claim #1

Throughout my incarcearation in the NYS DOCCS and prior, I've been treated for a serious Mental Illness (**SMI**). I was scheduled to be released on September 10, 2015. I was told that I'd receive discharge planning from The Office of Mental Health (**OMH**). This never occurred. When I went to see my ORC to sign my Parole Release papers in Green Heaven Corr. Fac., I was told that the NYSDOCCS - Parole Re-Entry Unit had a section specifically for person's with SMI's and that I'd be on that case-load.

I met with Parole Officer (P.O.) Brown, Joanna, on September 11, 2015. I asked her was she A P.O. on the OMH Re-entry Unit, She said "No". But she also told me that I'd be placed on the OMH--caseload. This never happened. P.O. Brown was not properly trained in dealing with a person who has been diagnsed with an SMI. I was not given any of the promised treatment. My mental health deteriorated.

The NYSDOCCS by way of its employees specifically the ORC's at Green Heaven C.F., and P.O. Brown and her Supervisor Mr. Paredõs were deliberately indifferent to my serious Mental Health needs, By not giving the promised requested treatment my life begin to spiral out of control. I lost control of my mind. As an American with a disability, I was owed a duty of reasonable care and accommadtions. However, this was not provided. My rights of 'Equal Protection' as well as 'Due Process' were violated.

## Claim #2

After the failure of the NYSDOCCS failed to give me any assistance with my SMI, not limited to but including proper discharge planning, medications. I begin to go into a manic phase of bi-polar. I have been diagnosed with bi-polar since 2006, throughout my entire tenure in the NYSDOCCS, I was being treated as an OMH level 2S. It is well known that without the proper medications and treatment I succumb to paranoia (Extrøme), Insomnia, racing thoughts and Suicidal and Homicidal behaviors. I am not my best self, very aggressive, irritable etc.

On approximate April 15, 2016, my wife (ex) who is untrained to deal with a person with an SMI, and who has never seen me in that

(1)

mind state called an ambulance so that I can be taken to a hospital and treated. I was medicated and then released.

I received a Card at my residence (It was left at the door). The name of Detective Jorge Morbas of the 32nd precinct and left a note for me to call him. I called the Detective. He told me that I wasn't in any trouble and wanted to know when I could "come in" to "clear some paperwork" up. I informed him that I was in the middle of Mid-terms, and that I could come in on April 15, 2016. He stated that was no problem. In speaking to him, I never felt there was any legal wrongdoing on my part and he assured me everything was find.

As promised I went to the 32nd precinct. I was told that someone from the Detective Squad was comming down to meet me. at approx: ten (10) minutes later, I was met by a Detective who told me Detective Morbas was running late. He put me into a room and I was locked in. My property including my wallet, keys, cell phone were confiscated. I asked this detective was I under arrest? he told me very rudely to "Shut up!" I told him I had no case. He laughed and walked away.

Approx: 2 hours later, with no food or drink, no phone call, no bathroom nothing, Detective Morbas whom I spoke to prior and made the appointment with came in. He sat in the room with me and explained and alleged that my wife (ex) Nichole Smith had made a Criminal Complaint against me and that pursuant to N.Y. Law, I had to be detained, So that he could inform her I was in custody and give her an opportunity to "File Criminal Charges". He explained to me that in N.Y. this is done so that the 'victim's' of Domestic violence feel protected. I then told him I have never ever hit my wife or any woman and I had no clue as to what he was talking about.

I was taken downtown and held in the holding pen for several hours. I was then arraigned on a Slew of charges, all Misdemeanors. I was given a Bail. I was then taken into the custody of the NYC DOCS. I remained there for several hours. My bail was posted and hours later I was released and given a Court date.

I immediately contacted my Parole Officer Ms. Joanna Brown, who did her own independent investigation. The results of which resulted in my ex-wife telling her that 'she' never filed charges on me and that there must be a misunderstanding". P.O. Brown instructed

(2)

her to put this on paper in a letter form, get it notarized and bring
it to her. My ex-wife did that.

When I returned to Court for these falsified charges, my
Attorney went on record and asked the Court to dismiss the charges,
because according to the documents there was no complaining witness,
no signature was on the documents. The case was adjourned for the next
Court date. The charges would be dismissed. I was given another Court
date and my Attorney's Card.

I attempted to contact this Attorney, to no avail. Docket #
for this case was #21122 of 2016. This case was dismissed in January
2017. My claim is for violation of my due process rights, cruel and
unusal punishment, false arrest, malicious prosecution and false
imprisonment.


### Claim #3

I was revoked and restored to Parole Supervision after a
final hearing before ALJ Ross on November 22, 2016. However I
was not released. On November 29, 2016 I was taken to Rikers Island
Judicial Center (R.I.J.C.) where I signed my parole release papers
and my conditions. I was told I'd be released later that day. I was
taken back to A.M.K.C. to the housing area dorm 3 Upper.

I spoke to the Correction Officers on all 3 shifts, including
C.O. Brown, shield #17616, C.O. Chapelle, Shield #17920, C.O. Walker,
shield #7012, C.O. Burt, shield #18597, C.O. Roman, shield #15650,
C.O. Thompson, shield #11482, and C.O. Spivey, shield #5657. I also
spoke to several Correction Captains who made rounds. I've yet to be
provided their names. I also spoke to the Assistant Deputy Warden,
who was assigned to the dorm area, Deputy Warden Julien, all to no
avail.

On approx: December 10, 2016, I had a chance encounter with another
Deputy Warden, Ms. Banks. (She is not a defendant); Deputy Banks told
me she would immediately get to the bottom of this. Later that day
I was informed by Deputy Banks that, there was a detainer on me from
Baltimore County and that not only should I have been informed of
this, but they only had 72 hours from the time the NYS DOCCS parole
warrant was lifted to arraign me on the detainer. She also informed

(3)

me that she spoke to someone in the U.S. Marshall's Office, who told
her they'll get to me when they can.

On December 13, 2016, I was picked up by the U.S. Marshall's,
taken to Manhattan N.Y. County Supreme Court. After I was re-arrested,
and processed, I was taken to Court and formally arraigned on the
detainer warrant. The time after I was released from Parole up until
when I was arraigned on the detainer was unprivileged, unlawful and
wrongful. This was a violation of my Constitutional Due Process Rights,
as well as Cruel and Unusual punishment, excessive and wrongful con-
finement.

### Claim # 4

On three separate occasions that I visited inmates on Rikers
Island, I was harassed and singled out for being a former inmate by
staff who were familiar with me. These officers and captains were
part of the "Special Search Team". When I stepped off the NYC MTA
Bus that drops civilians off at Rikers Island, I was immediately
bombarded by Correction Officers as were all visitors. We were then
put into a circle and told that we would be searched by a K-9 and
not to make any sudden moves. I complied. I was told by an officer
to 'Step in the back'. I asked why was I stepping in the back?, and
was told 'because I said so'. this officer then told another officer,
'I know this piece of shit, he just left here. I know he is smuggling".
I was then taken to a small bathroom where I was told to strip naked.
I asked to speak to who was in charge and was told, 'I am Motherfucker'.
At that point I begin to cry and said 'I'm a civilian, I have rights'.
I was then told, "You don't have no fucking rights once you step on
our property. I was so afraid and embarassed, I begin to strip. I
got down to my T-shirt and boxers, the officer's told me "Take all
of it off Bitch! If I have to  say one more thing to you, its off
with your head, that's assault on an officer, so then you'll be back
on the count".

I continued to cry. I took all my clothes off. I was told was
told to 'lift my Balls, pull my skin back and even though I'm circumcised,
bend over and spread my cheeks". I complied. I was also told to get
dress. I was sent to another seacrh area. I asked to speak to a Captain.

(4)

When the Captain came, I explained what transpired and was told "Don't
come back and visit, if you were locked up here".

Upon information and belief, the parties involed were; C.O.'s
Lofton, #10273; Haynes, #7971; Perez, #4736; Trugman, #17660; Tysos,
#7458; Tavaras, #_____, and Grainger, #18108. Again upon information
and belief, these are all the officers that I've been made aware of
that were involved. The only one I know by name is C.O. Grainger.

They were involved in separate incidents. April 12, 2017,
Perez #4736 and Trugman #17660. The second time I visited a prisoner
who was being housed at E.M.T.C., the same short black officer, C.O.
Lofton, Captain of the Special Search Team, singled me out again.
This time C.O. Grainger who I had known from a previous incarceration,
She was an officer in the visit area of G.R.V.C.

Ms. Grainger came to me and said "Look they have a hard-on.
they are on to you. Just give me whatever you have on you, last chance".
I replied that 'I did not have anything on me' and asked 'Why am I
being harassed every time I come here?' She said 'OK, go get stripped'.

Upon information and belief, Officer Perez #4736 and Trugman
#17660 took me into the same bathroom as the first time incident.
I performed the same humiliating strip search. No contraband was
found because I had none. I was than told I would be having a Non-
contact 'Booth visit'. When I asked "Why?" especially with the fact
that I was illegally strip searched. I was told I was a "Suspected
Contraband Carrier" like "All assholes that are released, yet come
back to visit your scumbag gang friends".

The last incident occurred on May 21, 2017. I again complied
and completed the search and no contraband was found. After my com-
plete 1 hour visit, I got on the visitors bus to be dropped off at
the Perry Building to exit Rikers Island. I was pulled off
of the bus physically by an officer, placed in handcuffs. I was than
told the person I visited Tronk Patterson was found with Tobacco in
the back of the jail. I asked to speak to a Captain, to no avail.
I was then taken to a trailer and processed as a New Arrestee. I
was then taken to Bronx County Criminal Court. I was released on
(R.O.R.) Tronk Patterson was found "Not Guilty" for possessing any

contraband, tobacco or other. I was arrested on November 25, 2016
and charged with an Assault. I had to agree that I wouldn't be indicted
on Felony Assault if I also plea to **"Promoting Prison Contraband"**.
I did not want to plead guilty to a crime I did not commit. Yet I
did. However, under a New ruling from the U.S. Supreme Court, <u>Garza</u>
<u>v. Idaho</u>, Feb. 27, 2019, I am expecting a full reversal.

I never once verbally or by signing a waiver gave anyone
permission to strip search me. My U.S. Constitutional Rights to be
free from under restraint was violated as well as my due process
rights. I could not leave, refused to be searched or turn back out.
I was violated in all Three (3) incidents.


## Claim #5


I had a verbal dispute with Sheretta Burke at 1932 Crontona
Parkway in the Bronx. Ms. Burke then left and went to her apartment.
Upon information and belief, Ms. Burke called the police. (See attached
records of testimony by the Security Staff on duty. <u>Exhibit-A</u>). When
the officers encountered me, they informed Security that I was "too
intoxicated" for them to arrest. They gave instructions that if I
came back to the building to call them back so they'd take me to the
Hospital. This did not happen and they failed to protect me from danger
from myself or others.

Sheretta Burke emerged from her building with a wooden stick.
She came towards me yelling and screaming then attacked me with the
stick. I was able to get the stick from Ms. Burke. In the process
she was injured. I was accosted by four (4) NYPD Officers, two of
which upon information and belief were police officers' Amador Nuno
#19853 and Jordan Moses #24160, both of the NYPD's 48th precinct.
These officers were the officer's who responded to the first call
as well.

They turned on their sierns and lights, jumped out of their
vehicle with weapons drawn. These officer's had just frisked me app-
roximately ten (10) minutes prior and kept me in their vision. They
knew I was unarmed, and saw me get assaulted. They said to me "We
told you to take your stupid Black, drunk ass home". I was then placed
in handcuffs. I told my arresting officer that I was the one assaulted

(6)

and I wanted Ms. burke arrested as well. This is when I was told "We saw what happened, but we told your ass to go home ten minutes ago". "You're going to jail". I was arrested and put into the police car.

After I made it to the precinct, I refused to exit the vehicle until I was able to speak to the commanding officer. I was attacked from both sides of the vehicle while handcuffed. I was dragged out of the car, taken into the precinct and beaten again.

I complained to a Tall, caucasian, gray-haired, clean shaving white shirt commanding officer, who told me "Shut the fuck up before I loss some teeth". He then told his subordinates to keep me there in the precinct until a Judge was ready to hear my case.

I'm unsure of the hours, but it was a long time. I was left in a filthy cell, with no running water, no working toilet, and they refused to feed me or give me a phone call.

They failed to protect me, violated my right to be free from Cruel and Unusual punishment, Excessive force, which all is a violation of my constitutional rights.

### Claim #6

On November 26, 2017, I was taken to A.M.K.C. on Rikers Island. During the intake processing, I told the officer all of my pre-scribed medications, for medical and mental health purposes. I was told all my records were available. However, it took 2½ weeks before I begin to get medicated. I am a diabetic, with high blood pressure and high chlorosterol, and I get severe migraines. Both NYC DOCS officer and NYC Health and Hospitals were deliberately Indifferent to my serious medical needs.

### Claim #7

On November 27, 2017, P.O. Brown came to serve me violation papers. At this time I was in a manic phase and incohorent. She told me that because I was charged with a new Felony, I was not entitled to a Preliminary Hearing. She wanted me to check the document in the area stating so. I refused to. I told her I needed an Attorney to make that decision. She told me to sign that I received a copy. I

(7)

did. P.O. Brown left out and came back in and handed me the original white copy. The top copy. This copy was void of any check marks. Exhibit-B.

When I finally met my Court appointed Attorney at my Final Parole hearing. I brought this to his attention. My attorney said that I had a very viable issue towards a "Writ of Habeas Corpus". the Writ was submitted.

In the Attorney General's response, the Assistant Attorney General of record, Mr. Chong submitted a copy of exhibit-B, which differed greatly from mine, Exhibit-C. Mr. Chong's copy submitted by P.O. Brown was a falsified, fraudulent document. P.O. Brown also submitted a sworn statement in the form of an affidavit. Exhibit-D. the action taken by P.O. Brown was a violation of my constitutional right to due process. Her actions caused me to be illegally and wrongfully and excessively confined, and was cruel and unusual punishment. Violations of my State and Federal Constitutional rights.

## Claim #8

The City of New York by way of its employees, the (NYC DOCS) violated my due process rights by wrongfully labeling me a gang member, belonging to the "Bloods". I was placed on a Security Risk Group" list (SRG). I was also labeled "Influential". By doing this they made me a target by the Bloods rival gangs - the Crips, Folks, Latin Kings, Trinitanios, MS-13 etc.

My picture was placed in the front of the jail where staff and inmates who clean the area could clearly see it. The NYC DOCS was deliberately indifferent to my life and safety. Not only did they put a target on my back, but they failed to protect me from the danger they caused me.

The first incident took place in December 22nd 2017. While I was in Dorm 2 Upper in A.M.K.C. The officers on the 3pm - 11pm shift D. Simos # 7112 , M. Cappuccio 13891 , had been given specific instructions not to let inmate Ayala , E , back into the housing area. I knew this inmate as Star. a well known High ranking Latin with a proponsity towards violence. Even after instructions were given by the 11pm - 7am officers John Doe and Jane Doe

the 3pm-11pm officers ___CAPUCCIO___ and ___Simon___
that inmate Ayala threatened to "Cut me if he was returned to Rikers
from Court". When inmate Ayala came from Court, he attempted to enter
the housing area. Initially he was denied and told that he was moved
to another location as was as his property.

After some time inmate **Ayala was let** into the housing area.
At approx: 10pm while I was in the communal bathroom. Inmate Ayala
made good on his earlier threat. inmate Ayala pulled out a metal
object which upon information and belief, was a Scalpel. He came towards
me in a slashing motion. While backing away in fear of my life, I
attempted to blcok his hand. He nicked me. I was able to restrain
him. I then begin to yell for help from the officers. The C.O. finally
came and separated us. The rest of the inmates begin to call me a
"Snitch".

The NYC Department of Corrections not only failed to protect
me, but were deliberately indifferent to my safety when they refused
to move me from Dorm **2**Upper where I was being called a snitch and
taunted everyday. This is an open dormitory where I was in fear of
my life everyday. When I'd finally got to fall asleep, I was hit with
bars of soap, apples and other hard objects. No one did anything.

I received an infraction for fighting, (Exhibit-**E**). I was
never called to a hearing. However, the infraction was dismissed.
(Exhibit-**F**). Prior to the hearing it was determined that "No Hearing
Required" by Capt. De Souza #1262 . This was done so the NYC DOC could
cover up the fact that inmate Ayala was allowed back into the housing
area after it was well documented that he was already moved prior
to his return from court. His property was at his new housing area,
and they were aware of his threat and proponsity towards violence.
especially of people labled "Blood" by  the NYC Department of Corrections.

The officers in all housing units have a listing of all alleged
"SRG" members, and their alleged affiliations. This list is frequently
stolen from the officers station or giving out to the "House Gang"
which is the officers "Hit Squad".

I remained in Dorm 2-Upper a very unsafe environment until
January 5, 2018. Approx; 14 days and nights, in fear of my life.


**Claim #9**

I was transferred to E.M.T.C. (C-76) on Rikers Island. This transfer was done because I was at the point, only being held on a parole violation and violators (some) are held there. I was placed in Dorm 9-Upper. As soon as I entered the dorm, I was bombarded and surrounded by inmates with Hispanic accents, they appeared to be Dominicans. I was repeatedly asked was I a "Blood?", I repeatedly said "No". They informed me that "a couple of days ago, they just had a 'Gang War' and although they couldn't completely stop Black people from coming in' there would absolutely be no 'Bloods' allowed. They said that I could "stay for now, but if and when they found out I was a Blood, I'd die in there". I knew that I was not a gang member, so I wasn't worried. What I didn't know was that I was again placed on the "SRG" list as a Blood. One of the officers who worked the steady in Dorm 9-Upper, C.O. Aponte, was alleged to be a member of the Trinitarios. and upon information and belief, C.O. Aponte on February 11 , 2018, in retaliation for me telling him 'I'd write him up he informed the trinitarios that I was a Blood member.

I was physically assaulted and attacked by two (2) inmates, one of which was Stacey Jackson, both of them trinitarios. This attack happened while I was sitting on my bed for the count.

The assault was caught on video. There were two (2) officers on duty. C.O. Williams #13826 , and C.O. Aponte # _____. C.O. Aponte was outside of the dorm in the A-post and C.O. Williams was assigned to the B-post. C.O. Williams did nothing to stop the attack. He never utilized his departmental issued O/C spray, nor did he pull his Radio Emergency pin. However, officer Aponte did pull his emergency response pin.

When the 'Squad' arrived, C.O. Aponte pointed them straight to me and said 'I was the aggressor, when in fact, I was the victim. C.O. Aponte as well as Captain Francis Salmon # _____ , and the area Captain, Mr. _____ # _____ , directed C.O. Williams to falsify an infraction. C.O. Williams did as he was instructed. In his Report and Infraction, (Exhibit- G), He stated that there was a one on one fight bewteen inmates Stacy Jackson and myself, Sean Best.

The Captain that conducted an investigation and watched the vidoe surveillance of the incident, is also in violation of my due

process rights, and others. Because he failed to direct C.O. Williams
to re-write his falsified report. This was Captain _____-#_____
He also added that I was the aggressor, this even after watching the
video.

I had a 'Bing Court hearing' on February 15, 2018, in conjunction
with this infraction, Exhibit-**H** . This hearing was done by adjudicating
Captain Phillips, #7946 . Captain Phillips went on the record to say
that according to what she viewed on the recorded video footage,'Mr.
Best was clearly attacked by two (2) inmates, and was the victim of
an assault'. She dismissed all charges against me.
The City of New York by way of the NYC Department of Corrections violated
my State and Federal Constitutional  Rights, of the Eighth and fourteenth
amendments. When they were deliberately indifferent to my safety, by
placing me on a list for SRG members, which I've never been a part of
By placing me in a Trinitarios housing area, knowing there was just
a gang war with alleged "Bloods" and they knew they labeled me a
'**Blood**'. They are also responsible for failing to properly screen their
officers for current or former Gang affiliations.

C.O.'s Williams and Aponte failed to protect me from this
assault when they saw it happening. C.O. Aponte is responsible for
(Upon information and belief) that I was an alleged "Big Fish in the
Bloods". Captain Salmon and Captain/also violated my rights when they
ordered C.O. Williams to falsify an official NYC document. Exhibit-**G**,
and Captain _____, also falsified documents. Exhibit-___ .

Two (2) of my back teeths were cracked in this incident.


## Claim #10


I was transferred to Dorm 4-Upper due to the incident on February
10, 2018. On March 10, 2018 at approx: 5:30am, prior to the morning
Chow, inmate Javell Williams told the "A-post" officer, C.O. _____,
#_____ , to give him 2 bags to pack his stuff up. He told him that
he had enemies in the housing area. Officer _____, whom was
the meal relief officer at the time gave him the bags. This officer
never inquired as to who Javell Williams was referring too.

Inmate Javell Williams drew his weapon and laid back on his
bed. I went to the bathroom, as I passed Mr. Williams, he mumbled

(11)

something I didn't hear clearly. Approx: 15 minutes later while the Breakfast was being served, all hell broke loose. I was laying in my bed and heard a lot of commotion. When I looked where the noise was coming from, it appeared that Javell Williams was stabbing my friend Pedro Henderson. I jumped out of my bed to break up the fight because the "B-post" officer, C.O. _____, #_____, was just standing there. He did not use any of his training skills. He never utilized his O/C spray, and he did not pull his emergency assistance pin on his radio. As I was trying to disarm Mr. Williams, he continued to attack Mr. henderson and myself. Still no O/C spray or emergency response.

This incident could have and should have never happened. Mr. Williams already told the officer he had **"enemies"** there. He asked for bags, to pack his stuff, tied his sneakers and laid on a bare mattress, armed and ready for war. This was at 6:00am, while not only I, but approx: 60 inmates were the most vulnerable, in our beds.

The City of New York, by way of its employees, the NYC Department of Corrections, and C.O. _____ and C.O. _____, who knew of an immediate threat to not only my safety but others, disregarded that threat with deliberately indifference and failed to protect me and others from a known dangerous person, Javell Williams. I was injured physically, mentally and traumatized as the fear of going to sleep unprotected in a dorm area where the officers did not or could not provide protection was mental torture and cruel and unusual punishment. All violations of my State and Federal Constitutional Rights.


### Claim #11


On April 26, 2018, I went to the main messhall with my housing area dorm 10-Upper. We were given the allotted time to eat. After we were done we remained in the Messhall for an half hour (30 minutes) longer than we should have. There was no Captain present as is required. My housing officer C.O. Peebles went and asked C.O. Joyce, # 14807 , who was responsible for the movement to and from the Messhall. C.O. Peebles told us that she was informed that an inmate who had a prior issue with inmates in my housing area, Myron Richards #349-17-09311

(12)

is his name.

All staff were aware that Mr. Richardson had pulled out
a weapon on several prisoners in the Dorm of 10-Upper. Just days
prior. He was moved out of the Dorm 10-Upper for that reason.

C.O. Joyce was also aware of this, as it is one of her duties
to know who, in what housing areas had separations, as to limit the
the possibilities of interaction. She told Officer Peebles that she
"wanted to keep 10-Upper and 10-Lower separated" because of the
aforementioned incident. She also was concerned that we'd cross in
the Messhall or the stair case. Officer Joyce did the best she could
without a Captain present.

However, as we waited in the messhall, 10-Lower begin to enter.
This made no sense, and was deliberate indifference to not only my
safety, but that of other inmates and officers. After about 10 minutes,
40 inmates enter the messhall, Mr. Myron Richards entered. My housing
area was seated on the other side of the messhall, a distance of
about 20 feet. Mr. Richards made it to the serving window, he then
grabbed an empty tray, positioned it in his hand to be used as a weapon,
and he begin to yell across the messhall. At this time there
were approx: 8 officers and no Captain in the messhall.

Mr. Richards was allowed to freely walk across the messhall with
no officer even attempting to stop him. Not one person used any of
their training. No one utilized their O/C Spray nor did anyone at
that point pull their emergency response radio pin. Mr. Richards made
it to the middle of the housing areas seating tables and begin yelling
and swinging the empty tray as a weapon. He was attacking little 21
year old boys. I yelled for the officers to do something, and no officer
did anything.

I attempted to take the tray from Mr. Richards, because no
officer(s) was doing anything. As I approached Mr. Richards, he turned
around abruptly. I then  went into my training defense mode. I am
an Out-reach Worker for Cure Violence. I have been trained to disarm
any threats. The fact that no officer was doing anything and he was
attacking kids, I was montoring, I had to protect them.

As Myron Richards begin to swing the tray at me, I was able to
get the weapon (Tray) from him. Still no officer(s) sprayed the O/C
or attempted to restrain this 300lb man. He jumped on top of the

table and spit in my face. Still no assistance from the officers.
Mr. Richards jumped off of the table. We both went into a fighting
stance and exchanged blows. none of which connected. I attempted to
get Richards to the officers so they could restrain him. I turned
around and yelled at C.O. Ubinas to help me. Then without warning
C.O. sprayed me directly in my eyes with his departmental O/C spray
at a distance of less than Three (3) feet.

This was a violation of the NYC DOCS Directive. Exhibit-
and Cruel and Unusual punishment. Once he (C.O. Ubinas) sprayed me
in my eyes, I was defenseless. At this point he had a duty to protect
me, yet he did not. I went to the railing and put my head down as
I held onto the rail, I felt a very hard blow to my head. I did not
know who was attacking me. I could not protect myself, because I could
not see. I then felt another very hard blow and went deaf in one ear.
I still did not know who was attacking me until I heard "Get that
Motherfucker Richards" "Get him good". This came from an officer,
Upon information and belief, this was C.O. Ubinas saying that.

At some point, I was then put into mechanical restraints and
and led out of the Messhall. I could not see where I was going. However,
I heard someone say "Intake on your Door". I was placed in pen #1.
I was yelling and screaming for the officers to uncuff me, when I
was finally uncuffed, I begged officer (determined to be C.O. Ianozzi)
for water to decontaminate myself. I was told I had to wait to get
into the shower because inmate Richards was in there. I was in pen
#1, with another inmate who was sprayed at close range, Shamel Gourdine.
I forced my eyes open to be able to see. C.O. Ianozzi (Upon information
and belief) did not bring any fan to the area and face it into the
cell as he alleged on his report. (Exhibit-J , nor did he give any
treatment, as he alleged.

Mr. Gourdine who I was montoring was able to see well. He led
me to the toilet because there was no running water in the sink, it
was also filled with garbage. My face and eyes were burning so bad,
that I could no longer take it. I had to stick my whole face and head
into the toilet bowl. I was told that someone flooded the holding
pen which is why the sink was turned off. I was even in more pain
once the water made contact with my skin and eyes. I was yelling,
crying and begging the officers to let me take a shower, which according
to the aforementioned Directive, Exhibit-  K      , is mandated, to
no avail.

(14)

no avail.

This went on for approx; 3 hours. The Captain on duty when I was brought to intake was Captain McClain Daniels, # 481 , she knew I was sprayed and not taken to the decontaminated or to Medical, yet did neither. At aprrox: 5:30pm, I saw Captain Brown--Scott, enter into the intake area. I explained to her that I'd been in intake since 2:30pm in this bullpen. I told her not one officer took me to be de-contaminated or to be seen by medical, or even give a new set of clothing. Captain Brown-Scott was very upset and appalled at this. She immediately admonished her sub-ordinates and commanded them them to "Immediately" take me to the decontamination area and to medical to be examined and treated.

When she asked the officers who were on duty the 3pm to 11pm tour, officers, _____, _____, _____, They said "No one told them that I was in a "Use of Force via O/C spray" nor did anyone relay to them "Why they are even here".

The Acting Warden, Mr. Philps, put out a Memorandum with clear instructions that at "Any time" there is a use of force by staff (including, but not limited to O/C spray exposure) "within one (1) hour". The inmate "MUST" be seen by medical staff here three (3) hours had passed, and it was Two (2) hours over the mandate limit.

In order for this violation to be covered up, I was told that I could not "return to the block" nor get into the "Decontamination" shower unless I "signed off" on medical treatment. I signed off under duress. I still never got a decontamination shower, any eye flush nor a change of clothes. My vision was very blurry and still is. After the prolonged exposure to the O/C spray which was sprayed at me at point blank range. I requested sick call on numerous days, to no avail. My eyes got so bad that my previous prescription glasses (Exhibit-L )(Prescription #1) were not working. My vision was damaged. After seeing a Nurse at Downstate C.F., who tested my eyes, she said that I will be seeing the Optometrist at my "Receiving Facility".

It was approx: ____ months later that I saw Dr. Wertzel, the visiting optometrist at Sing Sing C.F., he tested my eyes. I was giving a New prescription, "Bifocals" Exhibit-M, Prescription #3. I now had terrible vision pursuant to the prolonged exposure to to the direct blast of O/C spray by C.O. Ubinas. I also had the loss

(15)

of some hearing in the ear I was struck in. While at Rikers island
I was examined by Dr. _____, on __/__/20___, who put me
in for the Audiologist. However, I was transferred to Downstate C.F.,
Upon arriving at Sing Sing C.F., I was placed on the list, and months
went by and when the audiologist did show on __/__/20___, Dr. _____,
Sing Sing Staff for some reason unknown to me, refused to let him
in. (Explained later). The full extent of my injuries have yet to
be determined.

### Claim #12

   The City of New York via their employees, the NYC DOCS - specifically
officer Ceaser of the E.M.T.C. (C-76) violated my NYS and Federal U.S.
Constitutional rights when they discriminated against me for my religious
beliefs, were deliberately indifferent towards my religious beliefs,
failed to properly train their officers on how to properly deal with
members of different Muslim sects and the different customs and beliefs,
and by doing this they put me in harms way. I have a constitutional
right to exercise my religious beliefs. I am an active member of the
Nation of Islam. I have fasted during the Holy Month of Ramadaan since
1994, every year including up to the present.

   While at E.M.T.C., I was not allowed to break my fast with other
members of my faith (Nation of Islam). I was also not treated in the
same manner that the other 'orthodox' Muslims sects were treated. I
placed a complaint to 311, as well as spoke to the  Imam, who explained
to me that the (N.O.I.) is considered "American Black Muslims" and the
fact that we have vewry different beliefs, we cannot congregate or worship
together. I could not understand this, however, for the sake of argument
I agreed with him. However, the City of New York and the NYC DOCS, has
been aware of this problem.

   One of the major differences in our belief system is that in
the (NOI) we believe whole-heartedly that Allah came to us in the form
of Master Farrad Muhammad, and enlightened the Honorable Elijah Muhammad
to be the chosen one to liberate his peoples, and is the Long awaited
Messiah of the Christians and Makdhi of the Muslims. These other sects
do not believer that. They are firm in their belief that the Prophet

Muhammad (PBUH) was the last and only Messenger of Allah. The difference in our belief makes it not only impossible to congregate or worship together, because it could create a violatile dangerous situation. However, according to law, we are suppose to congregate with our sect of believers, in a separate religious congregation for this Holy month as is done all over the State of new york prison systems as a religious right.

I was attempting to handle this issue prior to the start of Ramadhan to no avail. On May 23, 2018,, at approx: 9pm, I walked into the main Messhall, C.O. Ceaser begin to yell at me to get out because I hadn't attended service. I explained to him that I cannot and will not attend service when the person who is the founder of my nation, The Honorable Elijah Muhammad (PBUH) is not respected. Upon information and belief, C.O. Ceaser is a Sunni Muslim.

He continued to tell me to get out the messhall and then said, "You are not a real Muslim anyway. The NOI is a bunch of jokers", and he went further to say, "if you can't attend service with us, you can't eat with us". He did not give me a Sahor Bag or a meal. This went on from the 23rd of May until I left Rikers Island on June 5, 2018. It should be noted that based on C.O. Ceaser's comments and behavior he riled up the prisoners in his control and the Shurta team (Security for Sunni's) also prisoners stepped to me and told me to leave and don't come back.

### Claim #13

After receiving fraudulent documents from P.O. Brown that violated my due process rights of the U.S. constitution to a preliminary hearing, I was scheduled for a Final hearing on December 7, 2017, as I had another Court appearance. I was re-scheduled to January 9, 2018. This adjournment was attributed to the NYS DOCCS, total time was Thirty-Two (32) days.

On January 9, 2018 my Court appointed Attorney adjourned. The next Court date was March 9, 2018. The defendants the City of New York, by way of their employees, the NYC DOCS, did not take me to Court, therefore violating my constitutional rights to due process and access to the Courts. The case was then adjourned to April 10, 2018. Again the City of New York by way of its employees, the NYC

(17)

DOCS violated my due process rights and also restraicted my access
to the Courts a second time. On this day I was taken to the intake
area of the Otis Banum Correctional Center (OBCC) at approx: 11am,
this was only after I (complained to every Captain that signed the
logbook in my housing area Dorm 6-Lower, that I had Court. I was told
that the facility was on Lockdown status and no one was going to Court
unless it was "off the Island". I told the intake Captain John Doe ,
#_____, that once there is an Order to Produce by the Court, that
NYCDOCS is mandated by law to produce me whether on or off the Island.
I was finally transferred by myself to Rikers Island judicial Center
(RIJC).

Upon arrival I was never let off the bus, one of the steady officers
told me that all of the Lawyers and Judges left for the day. I was told
that I was going back to OBCC. I wrote a Grievance to which I never
received any response. I appealed it. I'm unsure what transpired as
I was moved back to EMTC (C-76).

I received an Attorney visit by Mr. Robert Jereski at E.M.T.C.,
He told me ALJ Casey said if I didn't show-up he'd hold me hearing
in absentia. he then asked me why was I not showing up to Court? I
informed him that "They aren't taken me, I don't have free movement
in jail. Mr. Jereski ask to speak to the area Captain. He requested
from NYCDOCS staff any and all "undelivered" defendant forms in my
file. The Captain gave him Two (2) papers which both had different
hand writing from my own hand writing. He asked where the form from
March 9, 2018 was? He was told that there was no receord of that.

It should be noted that I have never received a Infraction
for failing to go to Court or refusing Court, which is mandated and
mandatory. The only justification and justifiable reasons or exceptions
to that Rule is: (1) Religious Exemption - for me that would've been
on Friday, and I had no Hospital trips.

My counsel at the Hearing on May 29, 2018 was Ms. Leslie Ann Brudy,
brought the fact up that my hearing was not held in the allotted 90
days, and any continuance would be a violation of my constitutional
due process rights. By ALJ Casey as well as the NYCDOCCS parole Specialist
_____, she refused to lift the warrant. In turn she violated
my Constitutional Due Process Rights. As she went against her own
Rules and Regulations. She is not entitled to Qualified Immunity.

## Claim #14

On May 29, 2018, at my Final Hearing, which was untimely, ALJ Casey found me "Guilty" of the lone standing charge and gave me a reserved decision.

on june 5, 2018, I was told to pack my items (Personal Property), as I was being transferred to Downstate C.F., I did as I was told. When I asked Deputy Warden of Security Ms. Bailey, "How am I leaving when I have not yet received a Decision from my Final Parole Hearing as of yet?" She informed me that because the ALJ gave me a reserved decision, I could and was being sent Upstate.

Once I got to Downstate C.F., I saw my assigned ORC Counselor, **who gave me my Time Computation Sgeet. Exhibit– N . She told me told** that it appeared that I was given 18 months violation by ALJ Casey. I informed her that I never got the mandated written Disposition or Notice of Appeal documents. I also pointed out to her my max date was listed as August 28, 2018, and my P.R.S. Max date was only pushed back 15 months, and if I was given 18 months, it would have reflected there. She explained to me that I'd be going home on my Max date, August 28, 2018, whichwould be exactly 9 months of incarceration, plus 6 months I had delinquent time, totalling 15 months, which is why my P.R.S. Max date went froward 15 months. She assured me that I would be released on my Max date.

On June 21, 2018, I was transferred to Sing Sing C.F., I met with my ORC, Ms. Brown. We spoke at length about when I'd be released. She stated to me that by all appearances, I'd be released on August 28, 2018. I was not released on my date.

I wrote a letter to another ORC, Ms. V. Brown. She came and visited with me, and she spoke to the Inmate Records Coordinator, here at Sing Sing C.F., whom explained to her that because I was a parole violator, my Max date changed. I explained to Ms. Brown, ORC. If that is the case, it would and should have reflected on my Time Computation Sheet., and it was not. Exhibit– O .

Ms. Brown, ORC. told me to file a Grievance, which I did. Exhibit– P . At the Grievance Hearing, the committee read my complaint, as well as a response from Senior ORC – Ms. Piazza, whom at the time of the hearing was promoted to Deputy Superintendent. (Note: at the

time of this writing, I have been waiting seven months for a F.O.I.L. request for this response) Exhibit- Q .

In her response, Dep. Piazza stated, "Mr. Best is 100% correct. We have searched all of our records, we see no where that Mr. Best was served with any dispoistion, written or otherwise as mandated by Executive Law §259-i), that states he was given an 18 month hold for a violation. As so he should have been released August 28, 2018". I requested a copy of this at the hearing for litigation purposes. I was denied and told to submit a FOIL. I have filed one, but to avail.

My current ORC, Ms. King was present at this hearing. She told me "That is not right, I'll get you what I can". And she sent me some documents, which together are exhibits- R . She also wrote me a response that her "Boss" would not allow her to give me copies of Dep. Piazza's response to my grievance, Exhibit- S .

The I.G.R.C. stated in their response and answer, "Issue to be investigated". Exhibit- T . I appealed to the Superintendent Michard Capra. He denied my grievance. Exhibit- U . I appealed to CORC to no avail. I then wrote to the NYSDOCCS Headquarters to Ms. Tina Stanford, Chairperson of the Division of Parole. Exhibit- V . Her response is affixed as Exhibit- W .
In her response, She never answered my question or my requests. She She puts blame on my Attorney for failing to file a Notice of Appeal. I wrote again requesting any and all documents pertaining to my Final Hearing, not limited too, but including a written Disposition from ALJ Casey, The reasoning and Notice of Appeal. Exhibit- V , letter #2. I received the same response, Exhibit- W , Response #2.

As so, the NYSDOCCS; Superintendent Capra; Tina Stanford, and Dep. Supt. Piazza, and Anthony Annucci, acting Commissioner of DOCCS, violated my constitutional protection rights, to due process of law, by failing to provide me the requested/requisite papers including a Notice of Appeal. Which is governed by Executive Law §259(i), which states that "The alleged violator AND his Attorney" are to receive a copy these documents. Executive Law §259(i) section _____ .

By the aforementioned depriving me of any Notice(s), they violated my due process rights. The fact that they violated my due process rights by failing to give me any documents of Notice of Appeal. My confinement is not privileged, I was conscious of the confinement, They intended to confine me, I did not consent to this confinement,

and as so, it was wrongful and excessive. A Habeas Corpus petition
is now pending in the Westchester County Supreme Court, in front of
Honorable Susan Cacace, SJC. at this time. Exhibit-**X**.

It is plainiff's contentions that the aforementioned claims
#_____ and #_____, makes his entire incarceration illegal.
To make matters worse, I have suffered many violations of a Constitut-
ional magnitude at the hands of NYS DOCCS employees.

### Claim #15

On June 5, 2018, I was transferred from Rikers Island to Downstate
Correctional Facility. I begin the processing normally done. Prior to
taking an I.D. picture, offenders both new Commitment and Violators
are required to get an initial Hair cut and Shave. The only exceptions
to this are listed in Exhibit-**Y**, entitled "Inmate Grooming Standards"
NYSDOCCS Directive #**4914**.

The officer who accompanied me stated I know you're a violator
, and you are registered as a Rastafarian. You're exempt from a shave
and cut. I corrected him and told him, "No! I'm Nation of Islam", he
said same rules apply. I did not receive a shave or cut. I was trans-
ferred to Complex 1, for reasons of OMH Treatment, approx: Seven (7)
days later with no incidents until June 15, 2018; when I was stopped
in the Hallway by Sgt. A. Figuoroa. She told me "I needed to cut my
hair, in accordance with Directive #**4914**". I told her that I came
through processing and was told I was exempt from a hair-cut or shave
on religious grounds. Stipulated in Directive #**4914**, and I am
exercising my First Amendment Constitutional rights, and I was in
accordance with NYSDOCCS Directive and the Law. She had me escorted
to my cell.

I received a Misbehavior Report on June 18, 2018, by C.O. Pequoro,
L. The report according to the hearing record sheet, Exhibit-**Z**,
was reviewed by Lt. Limaye, on June 16, 2018. As a reviewing Lieutenant,
Mr. Limaye had a duty to check my files to see if I had an exemption
in place, and if I did, he was suppose to dismiss the Misbehavior
Report, and release me from confinement, without forwarding the MBR.
Instead, he compounded the violation of my constitutional rights,
by forwarding it to an hearing officer in the Tier I, II, III system,

(21)

At the hearing, I told Lt. Lelle_ (1) I had a Religious exemption; and (2) Sgt. Figueroa stated she gave me a direct order to cut my hair. I told him, even if I could follow her direct order, she never presented me an option, because it was approx: 4:35pm. (Hearing Record). Exhibit-__Z__. And no Barbershops was open anyway. However, I made it very clear to him, that I would not have cut my hair anyway.

Lt. Leller said, "Well I'm giving you an option now, If you cut your hair, I'll take you off of Keeplock status, and if you don't, I'll give you 30 days. I agreed to cut my hair, because I was just going to file a Civil Action 1983 Lawsuit. So I told him to put it in writing, he refused. However, he told the escort officer, if he gets it cut tell me, and I'll lift the keeplock".

Lt. Lelle_, never gave me a copy of the written disposition. I did not cut my hair. The next day I was sent to Sing Sing C.F., and upon my arrival I was not placed on K.L. status. At that point I figured now that I was out of Downstate C.F., I'd been released from K.L. sanctions. However, on Saturday June 23, 2018, I was placed back on K.L. Status.

An officer from Disciplinary Officer here at Sing Sing C.F., brought me Exhibit-__Z__. Which stated I received 30 days K.L., with Loss of Packages, Phones and Commissary. I immediately appealed to Captain Carrington, who never replied. I then filed a grievance Exhibit-__#1__. I received a response from the Inmate Grievance Program Supervisor, Ms. Q. Quick, (IGP). Exhibit-__*1__. I remained on keeplock until July 20, 2018, with all aforementioned sanctions in place.

According to NYSDOCCS own directives which are in accordance with constitutional protections, I could not have and should not have been punishmed for unconstitutionally protected conduct yet I was.

## Claim #16

While I was on keeplock status, I was never taking to any of the callouts I had to see my OMH Psychiatrist, Dr. Hunderfean. Officer refused to give me an opportunity to receive adequate Medical treatment. The keeplock officer responsible is C.O. Santiago (SSCF), B-Block K.L. officer.

His failures to get me out for my callouts, constituted deliberate indifference to my serious Mental Health needs. His actions caused me not to get my OMH Medications for months. I complained to all the Sgt.'s I came into contact with:, Sgt's Deckembaum; Reid, and Brown, to no avail. I was also being refused medical meds., because retired C.O. Collymore, told officer A. White, I do not receive Hospital meds., which was not true and inaccurate. I received several medications. Exhibit-#2

I wrote a grievance on August 28,2018, approx: 50 days after I got to Sing Sing C.F. Exhibit #3. This is in accordance with Directive #4040, "inmate Grievance". As I tried to resolve the matter informally. As stated in my grievance, I was threatened by C.O. Collymore with SHU (Special Housing Unit) sanctions if I came back to the hospital.

On July 16, 2018, I put down for emergency Sick-Call to see my Providor Dr. Alam, who confirmed I do get Medical Meds. When I asked him why wasn't I permitted to self-carry, he stated "OMH has to approve that after this, I still was not allowed to go to the Hospital to get my Meds. because of C.O. Collymore instructions.

I dropped another Sick-Call slip on August 20, 2018. However, I did not see him until August 22, 2018. I explained to him the import-ance and need for me to have my Medications, as I am a Diabetic, with High Blood Pressure, and High chloresterol. All if not properly treated can cause death. He asked me if I was still having problems and I told him Yes. He checked the computer and said "Well somebody changed your Mental Health Status, you can self-carry now. I'll order your Meds. I got my medication on August 23, 2018 at approx: 60 days after I arrived at Sing Sing C.F.

This is a clear constitutional violation to my Eighth Amendment right to "adequate Medical Care". and "Deliberate Indifference" to my serious Medical needs.

### Claim #17

On June 6, 2018, during my initial processing at Downstate C.F., I saw a Worker from OMH. I was told I'd remain on my medication that was prescribed to me. I explained to her that I was participating in the "Ramadhan Fast", and that I needed Reasonable Accomodations, so that I my adhere to my strict religious diet. She told me that would

(23)

not happen at Downstate C.F.

I remained at Downstate C.F. until June 20, 2018. Ramadhan ended on June 16, 2018. So approximately 11 days was all I was asking for Reasonable Accomodations for, but was denied that.

Upon arriving at Sing Sing C.F., I was scheduled with a Callout by my Thrapist Ms. Lightstone, she asked me about my medications. I told her that I was not receiving and and didn't know why. She said I was scheduled to see the Doctor.

July came and went without me seeing any Doctor. Then August came around and still no Doctor. Yet she continue to tell me that my Status was changed from a Level (2S), to a Level (2). I have been a Level (2S) since my inception in NYSDOCCS in 2009. As I have had the same diagnosis forever, and it's a SMI, and prior to that; I was diagnosed in 2006 with Bi-polar. I asked Ms. Lightstone who authorized that as I have not been seen by anyone. Not only did my diagnosis change, my medications were stopped without any Doctor laying eyes on me and examining me.

I remained off of my medications from june 20, 2018, until November 2018. I wrote to the Unit Chief _____, who did nothing. When I finally saw Dr. Hunderfean, she doesn't know why I was not bought to my July and August callouts. I told her all callouts are Mandatory, and if you don't get written up, that's because it's no fault of yours. As I was on keeplock status, and it was C.O. Santiago's duty to bring me, Yet he didn't. Exhibit 4 .

The aforementioned defendant's were deliberately indifferenct to my serious mental health needs and violated my due process right to adequate treatment.

### Claim #18

As aforementioned, my confinement in NYSDOCCS is wrongful and excessive in itself. Adding further injury, I received a host of fraudulent Misbehavior Reports, and a host of sanctions. Exhibit 5 . The majority of which were written in Retaliation for exercising my constitutionally protected Speech, and my right to redress the government.

What initially set off this conspiracy and retaliation was a Misbehavior Report (MBR), written by then Boss C.O. Walker. Exhibit-

#5-1, who is now a Seargent.

After I was released from K.L. on ___9/21___, 2018, from another MBR. I was summoned to the offices desk. C.O. Walker told me that he was given a direct order from Sgt. Gonzalez to give me a direct order to cut my hair. I told C.O. Walker that I had already been illegally placed on K.L. status for my hair once. I told him I had an exemption in my files. I told him that I am registered N.O.I, But the officer put Rastafarian. Either was I'm exempt by law and I'm not cutting my hair. C.O. Walker placed me on keeplock and escorted me to my cell. I received a MBR on ___September 22 (19)___ reviewed by Lt. _____. Exhibit-+++(HRS). I remained on K.L. and went to my hearing on _____ ___, 2018, before Lt. Panzirelli. I explained to him the situation, he checked my file and noted on the record that I had the same Hair-style upon entering Downstate C.F. and Sing Sing C.F., because it was on my I.D. Card, and in the computer. He dismissed all charges and took me off of keeplock status.

On November 13, 2018, I received a MBR for an incident alleged to have taken place on 11/12/18. On the morning of 11/17/18 I was taken to the Sing Sing C.F. (SSCF) Disciplinary Office to begin my hearing at approx: 8am, and I remained there until after the Count cleared. I returned to my cell at approx: 1:30pm. This can be verified by the K-Gallery logbook, the K-Gallery "Go Round" sheet. The Facility Count, Sheets, for K and O Galleries for the 11am Master Count, and the Disciplinary logbook.

At 1pm I was told that my hearing officer, Lt. Pagan was going to "SHU" and would return in the afternoon. I asked C.O. Cabas, "If I have to stay here in the holding disciplinary bullpen till my hearing officer returned back, and C.O. Cabas told me, YES". I had to use the bathroom badly, as I had been there for approx: 4 hours and there was no toilet paper in the bathroom. The officer, C.O. Cabas said that she would escort me back to my cell and if she didn't come back, she'll get me in the A.M. of November 18, 2018. I said that would be fine.

That evening, November 17, 2018, C.O. Castro from Disciplinary Office brought me a Hearing Disposition, Exhibit #5-2 C.O. Castro told me that Lt. Pagan, found me Guilty of all charges. I told her that this had to be a mistake. Because my hearing never started. She said that she was told that I refused to appear at the hearing, and

Lt. Pagan held it in absentia.

The disposition states that, on November 17, 2018 at 12pm., Lt. Pagan started the hearing and it ended at 12:10pm. In his Statement of the Evidence Relied Upon, he started by stating "Your refusal to be present at the hearing".

This was a violation of my right to be present at my hearing and other due process rights afforded by the U.S. Constitution.

As stated I was at the disciplinary office between 8am and 1:30pm, Yet he alleges that at 12pm, I refused to attend my hearing. Secondly, the hearing record is void of any Factual evidence stating how or why I refused to attend my hearing. There must be a written record of this and it must be apart of the Statement of Evidence relied upon. He cannot just state "You refused to be present". without any testimony of the escort officer, his interview of me or a written refusal form signed by me.

Lt. Pagan gave me penalties that included: 30 Days Keeplock, with loss of Packages, Commissary and Phone privileges. However, the start date for all penalties was 11/12/18, and the end date was 12/12/18. Most importantly is that he Deferred all penalties for 30 days. As so, any K.L. status was voided yet I remained on K.L. status and on loss of All Privileges for 30 days.

This period of 30 days of punishment and confinement was wrongful and excessive, and a violation of my constitutional right to due process and cruel and unusual punishment.

Based on the aforementioned wrongful actions, Lt. Pagan is not entitled to any Qualified Immunity as he knew or should have known that his conduct was illegal and a violation of the Law.

I spoke to Sgt. Montgomery who took the time to take my disposition to Lt. Pagan, and said what it said about being deferred. Sgt. Montgomery said to me after he conferred with Lt. Pagan, that the Liuetenant told him that no, I gave him 30 days keeplock and loss of all privileges AND put 30 days over his head.

Lt. Pagan was well aware that on a Tier II Disciplinary hearing, you can only receive penalties up to 30 days. He stated he was giving me 60 days.

I appealed my disposition to Supt. Capra. I received a response

(26)

from Captain M. Barnes, who denied my claim. Exhibit-#5-3

Supt. Capra made rounds in A-Block, and I saw him vis-a-vis cell side. I showed him my disposition, he was walking with Sgt. Shepard, who he told to take me off of keeplock, but she didn't.

## Claim #19

On Wednesday, November 21, 2018, while enroute to K.L. recreation, I was searched. The search was completed I was told to grab my things. I was stopped by C.O. Franco who told me to "face the fucking wall." I attempted to explain to him that the officer told me to grab my things and go out. He told me "You do what the fuck I tell you." At that point, Sgt. Acevedo came over and asked C.O. Franco what was the problem? C.O. Franco said this fuck can go back upstairs. Sgt Acevedo asked did I comply with the search?, C.O. Franco said yeah. but he ain't going out. No reason was given. C.O. Franco then escorted me to my cell by his self.

Once at my cell, C.O. Franco said the only reason he did that is because he wanted to talk to me alone. At that time he made Sexual advances towards me, he told me if I complied, he'd bring me in con- traband. I felt degraded, disrespected, vulnerable and violated. I told him I was writing him up. He then got visibly upset and said "You want to be like that? your going to the Box". He then spit in my face and slammed my gate closed. I told him "Thanks for the DNA, and I further told him, he just made me a Milliomaire".

I wrote to the Office of Special Investigations (OSI), Governor Cuomo, acting Commissioner of DOCCS, Anthony Annucci, and the NYS Police. I also filed a grievance. I did not get a response from anyone. I hide the officers DNA on my gallery with another inmate, because I knew that C.O. Franco would eventually come looking for it.

C.O. Franco actions were Malicious and Sadistic, and violated my constitutional rights.

## Claim #20

I received a MBR on November 14, 2018 for an incident alleged to have happened on November 13, 2018. The hearing begun some 10 days

later, in violation of my due process rights. As I was on keeplock
for this incident.

I had a hearing before Lt. Bogack it begin on November 23,2018,
and concluded on November 26, 2018. I objected to all of the violations
of my due process rights on the record.

I filed an appeal to Supt. Capra, attached herein Exhibit-#5-4
He denied my appeal, attached herewit as Exhibit-5-4. My constitutional
rights were violated.

### Claim #21

On November 27, 2018, I made it to keeplock rec. without incident.
At the conclusion of keeplock rec., I was enroute back to my cell
every prisoner on K-gallery South informed me that, they saw C.O.
Franco leave out of my cell with Two (2) draft bags full of items.

I made it to my cell, and could not believe what I saw.
All of my Medical records, Hygiene products; commissary items, items
from Home; College Transcripts, Glasses; Pictures and Mail. He destroyed
all of my legit Medications, and took all of my legal supplies including
my pens. He took my Personal Jail House Lawyers Manual and Prisoners'
Self Help Litigation Manual; and my NY Gilberts law book of 2008.
He left me no I-64 formreceipts or contrabnad form. He took all of
my State issued clothing. My Tide detergent, everything, but a set
of bed sheets.

I refused to lock in without first seeing a Sgt. (Area Supervisor).
My gallery officer Castro told me to lock in or get sprayed with O/C
spray.

C.O. Franco came upstair with C.O. Brown and 3 other officers.
C.O. Franco said to me "I told you your going to the Box, you want
to hit me right?" I told him that he wasn't worth it, but that I'll
see him in Court. I said remember I have your DNA. He locked me in
my cell then took out his O/C spray and sprayed into my cell. I begin
to choke. I yelled for help and medical attention, to no avail.

C.O. Jackson from Disciplinary Office came to bring me a hearing
disposition. I begged her to call medical for me. I told her that
C.O. Franco sprayed O/C spray in my cell earlier. She said she would
call medical for me, and she did.

(28)

It was only then that Sgt. Gonzalez came to my cell. I explained to him all that happened. He said "You think I give a fuck about you? Remember that MBR I told Walker to write on you, and you beat?. Yeah, Payback time bitch? So I hear that you can't breathe, and he begin to laugh. I asked him what was funny? He said "I was a C.O. here, and now I'm a Sergeant, my officers can do what they want to Scum-bags like you". You are a piece of shit! "You should have cut your hair, and you made me look stupid in front of my officers when you beat that ticket! I told you I'd get you for that, and I got you now". So,  When Nurse Peters came to my cell, Sgt. Gonzalez said to him

"This guy is fucking faking! He's good". However, Nurse Peters did his job. He took my vitals, he then told Sgt. Gonzalez that I needed treatment an got to come with him to the clinic.

When I arrived at the facility clinic, I encountered Dept. Supt. of Health, Ms. Henton and the Nurse Administrator. Sgt. Gonzalez said he's faking it. Dept. Supt. Henton begin to yell at me. She said "Why are you walking if you can't breathe?" I said "You tell me? it's your duty to be sure that I'm receiving adequate treatment, but because this Sgt. told you I'm faking it, you immediately jump right on me!"

As I was headed to medical with chest pains, C.O.'s Franco; Brown and Martinez as my escorts. C.O. Brown said we got company now, but we're going to see how much of a bitch you are.

I was taken to the E.R. where Nurse Peters tended to me. However there were approx: 7 officers now in there. Nurse Peters told them they shouldn't be in the room. Sgt. Gonzalez said to Nurse Peters, "I make the rules. C.O. Ellis came to my rescue, she came into the hospital and said "It does not take all of you to be here. I have a Messhall to run". Four (4) of the Seven (7) officers ~~refused.~~ left.

Nurse Peters again asked Sgt. Gonzalez, C.O. Brown and C.O. Paruviy But none of them honored his request, and stayed in the E.R. room. Nurse Peters told me to hold on, he was going to get the Doctor to make them leave. He left out of the E.R. room.

Sgt. Gonzalez told C.O. Brown to close the door. He then walked over to me and slapped me. I fell off of the chair as I tried to get up, C.O. Brown punched me in the back of the head. I hit the floor again. C.O. Brown then kicked me twice in the ribs. While Sgt. Gonzalez

(29)

pulled me by my hair, and said "I told you that you were a Bitch!".

I started crying out of fear, pain and anger. C.O. Brown kicked me in my stomach Two(2) more times and said, "You better not say shit to anyone or next time it will be worse and don't ever come back out to K.L. Rec. or you're going to the Box broken!".

Officer Paruvie, who is caucasian, said "what the fuck are ya'll doing! Are you crazy?!" "No fucking way am I losing my pension for this Bullshit! No way! Stop this shit now!". This regular C.O. acted as if he was the Sergeant. He saved me. He told C.O. Brown to go take a walk. C.O. Brown, said "Yeah I got a visit I need to drop off". (The visit log book will reflect this.) Sgt. Gonzalez stayed. The room was silent.

When Nurse Peters and the Doctor came back into the E.R. Room, both Sgt. Gonzalez and C.O. Paruvie stayed in the room. I could not tell them what just transpired with me, because they were in the room, violating my rights to Medical privacy and HIPPA. Finally Sgt. Gonzlaez left. I felt safe with officer Paruvie, who also left the room, so that I could receive medical confidentiality with the Nurse Peter and the Doctor.

Nurse Peters told me look, I can see you are angry and in pain. Please just go home safely. I cried then.I was escorted back to my cell.

I wrote a Grievance attached as Exhibit- 6 . The Supt. denied my appeal. I asked for it to go to CORC. I have not received a response.

I have a constitutional right to be free from assault, and cruel and unusual punishment, and retaliation from protected speech and the right to redress the government. These rights were violated. I also have a constitutional right to exercise a minimum of One (1) Hour Recreation per day, which C.O. Brown violated between November 27, 2018 and January 28, 2019, by telling officers "do not let me out for my 1 hour keeplock recreation.

## Claim #22

On November 29, 2018, I was told to get ready for a hearing. This was for a MBR from Novemebr 20, 2018. It was 8am, at approx: 8:45am. I was escorted to the Disciplinary Office. On this day I had

(30)

Two (2) callouts. One to see my OMH Doctor Hunderfean, in Building 8. and because I had conflicting callouts, I really needed to go to OMH callout first, because I needed my meds. Dr. Hunderhean agreed to see me in the A.M., The OMH log book will reflect this. This was approx: 10am.

After I was done with my Doctor's callout, I told the officer escorting me, that I needed to return back to disciplinary for my hearing. He told me that it was Count time, and if they wanted to me back, they will call for me. This was C.O. Malave. He escorted me back to my cell.

I remained in my cell throughout the Count, and at approx:12:15pm, I was in my cell eating my Lunch meal, I was told that I had to get ready for the hospital callout. At approx: 12:50pm, I was taken to my callout by C.O. Murphy, where I met with Dr. Alam.

Lt. Bodge hold another hearing for me in absentia. He found me "Guilty" of all charges, and gave me an severe sanction. Exhibit-#7. According to Lt. Bodge, I refused to attend the hearing, which was held at 12;15pm., and ended at 12:42pm. I could not have refused at that time, because i was in my cell for the Count.

My constitutional right to due process was violated again. I was punished again with wrongful and excessive confinement, and loss of privileges. I appeal to the Supt. Capra, To no avail. I remained under these illegal sanctions.


### Claim #23


On Novemeber 19, 2018, I was scheduled for an 11am. Legal call with the Defendant's Attorney's. This was ordered by the Honorable Ona T. Wang. In Judge Wang's order, (Exhibit-#8 ), the call was  to be from 11am. until the duration,

I informed the gallery officer that I had a callout for a Legal call. I put it on the Go-round sheet at the 6:00am. Count rounds, and informed the keeplock escort officer as well. I was never taken to my callout. In fact, I was told, "whomever called will call back at 1pm." I was not taken to building 8, until 1:10pm. The call begin and all parties were on the line when I arrived. In the middle of

of the legal call. C.O. Abreu who escorted me, opened the door of the phone booth I was in and said, "I had three (3) minutes left.

I tried to explain to him that I had no time limit and this legal call, and it was ordered by Federal Judge Wang. That I would hang up once the conference call is over. Four minutes later, C.O. Abreua came back with 2 other officers and begin to yell "Hang it up now!" Whether the Attoneys will admit it or not, I know that all parties on the phone heard this as well. Mr Garcia asked me what was going on? I told him that I was surrounded by several officers, who was demanding that I hang up the phone. He told me to tell them that "this was a Federal Court Conference call." I said "I did tell them". They continued yelling at me to hang up the phone. So I did.

I was then slapped by C.O. Abreau and dragged out of the phone booth, and was told "Why the fuck don't you listen!? When I say hang the fuck up, that's exactly what the fuck I mean, Hang up!".

I again told him "I was on a Federal Judge's Conference call, and I'm glad that they heard first hand how you guys treat us prisoners". C.O. Abreau slapped me again and told me "Tell the Federal Judge to suck my D__k". My legal papers were then snatched from my hands and ripped up.

I attempted to speak to the Sergeant, but he yelled from his office "Shut the fuck up and go to your cell".

I filed a Grievance and asked for it to be exhausted, I have not received any response. ~~Exhibit # 9~~

My constitutional rights were violated. I have a right to be free from assault, cruel and unusual punishment, and access to the Courts. This was an infringment upon my constitutional rights by C.O. Abreau.

Sgt. Shepard did the investigation and told me to stop snitching on officers or it will be worse.


### Claim #24


I put in a State Habeas Corpus petition pertaining to my illegal confinement in Westchester County Supreme Court. The Honorable Susan Cacace granted my motion and gave an "Order to Show Cause", which she ordered me to serve on the defendant's by or on _____

At the time the legal mail got to (SSCF), They (Inmate Records) had
me in the computer as **"Out-to-Court"**. Although I was scheduled to
go out to Court, I was still in the facility, because they cancelled.

I put down for the Law Library everyday, but it takes Seven (7)
days for it to be approved here. I told Sgt. Gonzalez, I had a deadline,
he didn't care. I finally made it to the law library. The regular
Law Library Officer, Tyrell Hill was on vacation. In his place was
another officer. There was no funds in my Inamte Accounts. So I was
entitled to use an advance disbursement form.

The law Library inmate Clerk (Rose) told the officer that the
copy machine in the law library belongs to the Quakers, and he was
not allowed to make any copies on an advance disbursement. He told
him that C.O. Hill goes to the Educational Office across the hall.

We went over there. The Principal Ms. Markazi told the officer,
No, he cannot make copies for me on her machine, do it in the Law
Library.

We went back to the law library. He ordered Inmate Rose to make
the copies and said if anybody asked, tell them, I gave you the order
to make the copies. He said No. My legal papers were not copied as a
result of that, I was unable to comply with the Judges Order to Show
Cause, and serve the Respondents' before my deadline. And to make
matters worst, I was unable to obtain a Notary Public, and had to
submit my legal papers with an unsworn Statement.

When C.O. Hill came back, I got the copies made, but it was
late, because my petition had been dismissed for failure to comply
with an Court order, to serve the respondents' in a timely matter.

My constitutional right to access to the courts was violated,
and due to this, I was injured when my Habeas Corpus petition which
was in fact mertorious dismissed and my immediate release delayed.
I filed a grievance and asked it to be exhausted. Exhibit # 10

## Claim #25

My constitutional right to access to the courts and redress
of Government was again infringed upon when;

On December 2, 2018, I again had to file a grievance about the
inadequate law library here at (SSCF).

(33)

I was in the process of submitting an Article 78 for several claims under State Law. I had 120 days from the final decision to perfect my Article 78 petition. I had been requesting notary Services from November 11, 2018, everyday for the pass 3 weeks proceeding my grievance as well as copies. I was on K.L. status, and unable to go to the law library to get the notary,. It had to come to me, by way of the law library officer. It never happened.

I was constantly being told that officer Hill was on vacation, and had been. Exhibit *11 ., I was told that I had to see my Block notary officer. However, due to the illegal confinement, I could not get to the Gym to see the C.O. that doesn't want to come to inmates cell, in order to notary inmates paperwork.

I was unable to get the legal copies, nor notary services I needed in a timely fashion to perfect and serve my Article 78, as mandated by law., therefore, I was legally barred. The law does not provide any provisions to request a late filing of an Article 78, Therefore, I was injured again, because my mentorious claims could not be addressed. Which amounted to a violation of my constitutional rights.


## Claim #26


On December 10, 2018, I saw the law library officer Hill, vis-a-vis cell side. He notarized some documents, and told me he does not have too, and is not going to notarize more than Five (5) pages. I told him that I'm going to grieve that policy. I then gave him several documents to be copied. I filled out an Advance Disbursement form as well as a regular disbursement form as instructed. I never received my legal copies back.

I wrote to the law library everyday for approximately One (1) month. I then wrote a grievance on January 10, 2019. This was after I saw officer Hill at my cell, on Saturday January 5, 2019, and he told me"he did not know where my copies or papers were". He said that "He sent them to the Superintendnet, because the total was over Twenty Dollars, and he had to approve it"

This caused me to miss more deadlines and more claims were time barred.

I have already stated why this is a violation of my constitutional rights to access to the courts.

After filing my grievance, I received a portion of my documents, and have yet to receive the rest of them. Which at this point, I deem lost and or destroyed.   Exhibit #12

### Claim #27

While I was on keeplock status illegally between November and January, officer Brown in retaliation for my grievances, refused to submit my Commissary sheets, which I ordered Legal Supplies and Stamps. I spoke to Sgt. Gonzalez, Sgt. Acevedo, and Sgt. Alvarez, no one did anything about it. I then filed another grievance. Exhibit-#13

C.O. Brown actions and retaliation conduct while refusing to turn in my Commissary sheets so violated my constitutional rights.

### Claim #28

I have a Fish allergy. This has been in my files (Medical) since 2001. While on keeplock, every time that fish was served, they would serve me fish in my keeplock tray. I gave the company officers and keeplock officer my medical paperwork, so that could see this. (See Exhibit-#14.). The civilian Francis in the Messhall, denied me my alternate tray. On days that there was fish on the menu, I would go hungry, because I had no food in my locker, because of the officer Brown not handing in my commissary sheets.

On Friday, January 15, 2019, I was given a feed-up tray that contained fish. I did not want to starve again, so I gave it to the Porter (my documentation papers given to me by NYSDOCCS), and told needed an alternative meal tray. I also put alternative on the go-round sheet.

He took the paper and the tray and returned to the Messhall. He returned with the fish again. I refused to accept it.

He went back to the Messhall again, and returned this time with a tray that contained, Rice and Beans. Which was what the Alternative meal consisted of.

As I begin to eat the tray of Rice and Beans, I immediately had

an allergic reaction. My throat begin to close up and my lips begin
to swell. I asked the feed-up inmate worker, what was in this tray?
The inmate told me that the Messhall civilian Francis took the fish
out of the tray and said tell him to eat that!

I asked the inmate to go get the Company officer quick. The
C.O. came A.S.A.P., I was taken to the clinc and treated for an allergic
reaction.

This malicious and sadistic action by civilian Francis amounted
to Cruel and Unusual punishment, as well as deliberate indifference
to my serious medical needs. His actions could have killed me. There
can be no logical penological reasoning this was done. I filed an
grievance and submitted copies of my paperswork. My grievance was
denied. I appealed it for exhaustion reason.

## Claim #29

Based on the aforementioned illegal keeplock sanctions, I was
given a total of 60 days K.L., starting from November 11, 2018, and
ending on January 11, 2019. As stated, 30 days of that was deferred.
However, I was forced to do the illegal 30 days.

On January 11, 2019, I was not taken off of keeplock. I
spoke to Sgt. Acevedo, and gave him all of my documents from disciplinary
showing that I was to be released this day. He told me that his "paper-
work said that, I got off of K.L. on January 19, 2019. I told him,
I had a total of 60 days, starting at November 11, 2018. it was math-
ematically impossible".

He told me that he spoke to Lt. Bogor, who he alleged told him,
"He's an asshole anyway, who likes to write grievances. Tell him to
grieve it".

I reamined K.L. illegally for 9 extra days. I wrote to the
Superintendent, who did nothing about it.

I was kept illegally K.L.'ed in retaliation for protected speech,
in violation of my constitutional rights. I filed a grievance to ex-
hauste this remedy.

## Claim #30

After trying for months to formally resolve the issue of C.O. Brown and other officers refusing to take me to my Medical and OMH callouts. I filed a grievance on January 23, 2019.

This was for the retaliation that I was being exposed to for standing up for my rights. This retaliation was part of a continuing conspiracy to violate my rights. This amounted to deliberate indifference to my serious medical and mental health needs.

The dates that I was not taken to my Mental Health callouts are as followed:

### Mental Health

November 29, 2018
December 12, 2018
December 17, 2018
January 14, 2019
January 23, 2019

### Hospital/Medical

December 11, 2018
December 19, 2018
December 24, 2018
January 7, 2019
January 22, 2019
April 12, 2019

I spoke to Sgt. Ortega, Sgt. Gonzalez and Sgt. Acevedo about this. The only one who tried to rectify this problem was Sgt. Ortega.

This deliberate indifference to my serious medical and mental health needs was only done as retaliation by officers and Sergeants for the grievances I have filed, which is protected by the U.S. Const-itution.

The aforementioned officers and sergeants tell inmates/prisoners, I am a "Rat and Scumbag, Child Molester", in an attempt to try and get me hurt. They said they didn't care if I died. The fact that they did not know, and could not know what these callouts pertained to, show that they meant that.

### Claim #31

I already stated in my claim _____, that C.O. Franco retaliated against me for filing a PREA complaint and grievance by taking all of my property. When I spoke to Lt. Bodge, who gave me the Loss of property. He told me "So what I told him to do it". I told him that

(37)

all he took and he said "Sounds like personal property to me". I then explained to him that, I was not giving a reciept for my property. He said "My disposition was my receipt.

This was not in accordance with the NYS DOCCS's Directive #4910-#4910A. Exhibit #15 .

I requested permission to speak to the Property Claims Officer in Building 8, C.O. Taylor. I asked him "when was I scheduled to get my property back?" After checking all of his documents and the computer records, he told me "I do not have any property here for you listed. I don't even have you on the loss of property sanction sheet neither". I showed him my disposition with the loss of property sanction per Lt. Bodge. He said to file a Claim which I did. However, this act was done maliciously with no logical penological interest, other to violate my constitutional rights. This was a conspiracy to retaliate more against me, and to restrict me my access to the courts.

## Claim #32

This claim is for the failure of Supt. Capra to allow reasonable accomodations to disabled persons in his custody, as myself, and in instructing his staff not to cut any breaks with the count procedures. I received the attached MBR. Exhibit-#16 .

I went to my hearing and explained to Lt. Cousins, that my medication dosage was upgraded and I was not intentionally disrespecting the C.O., the Count or the Supt. He (H.O.) said, it don't matter, he (Supt.) said no breaks for you.

The Hearing officer never made any attempts to contact Mental Health staff to verify, if in fact my medications or there side-effects would have an potential to cause me to over sleep or not. He just found me "Guilty". This was a violation of my Americans with Disabilities Act rights, which afford reasonable accommodations to people with serious mental illness.

I grieved this issue, and no response was given. I requested that my grievance be exhausted in according to Directive #4040.  Ex-#17

## Claim #32

I was taken off of keeplock on January 28, 2019. However,

(38)

I have a loss of recreation sanction until May 15, 2019 Exhibit-___.
I had an AM/PM program. In (SSCF) loss of rec. inmates are allowed
one hour (1) of rec. in the A.M. module only. However, if you have
a program, you cannot go to rec. I was denied my privileged and man-
datory One (1) hour recreation from January 28, 2019 until the present
March 18, 2019, and still counting as of this writing.

I filed a grievance, and received an response back from IGP
Q. Quick, who pointed to Directive, that allegedly states that "going
to and from program constitutes exercise, satisfying the Federal mandate.
I responded with a case from the U.S. District Court W.D.N.Y.,
             , which clearly states that, this does not satisfy the
Federal mandate as so my constitutional rights have and is being
violated, and as such, I still have not received my mandated One (1)
hour of exercise recreation.

### Claim #33

While I was illegally confied on K.L. for 39 days, I was taken
to building eight (8) on the Fourth floor, which is where the ORC's
(Counselors) are located, for the aforementioned legal call. At the
time I saw ORS Smith, who  is the "Program Committee" Chairperson.
The person responsible for placing and removing prisoners to and from
their assigned programs. I explained to her that I was on K.L. and
getting off of K.L. on January 11, 2019, and that I would like to
keep my program as a Barber. ORC Smith told me, because I had a Barber
License (The only one) and the fact that I was a Parole violator, she
would not be removing me from my program. However, until I get off of
K.L., she would take me off of the payroll until I got off of K.L.,
I told her that was find.

While on K.L., I found out that the officer of the Barbershop,
who was working it when I was not keeplock, had left, and that there
was a new officer in charge of the barbershop now. So on January 9, 2019,
I asked one of the Porters in the barbershop to, let the new officer
(OIC) that is there, C.O. Guiterrez know, that I'd be returning. The
proter came and told me that C.O. Guiterrez said "Tell him I said
He's never coming back. He likes to write officers up, he's not welcome".

I didn't hear this personally, so when I was taken off of K.L., on January 19, **2019. I report**ed to work. C.O. Russell told the officer C.O. Orbe that I was fired and was not supposed to be at work. I showed them my program card and my program change sheet. At 10am., C.O. Guiterrez came in, he begin yelling that I was fired and he put paper work in. C.O. Orbe said "No you didn't, you filled it out, but it's in the book, I JUST SHOWED IT TO HIM".

I then went to speak to Sgt. Ramos, who took Sgt. Gonzalez place as the State Shop area Sergeant. He's in charge of the barbershop as well. I showed him my credentials. He told me "You like to write up officers, I'm Latin, and the barbershop officer is Latin, we don't want you here, and ORC Smith should've never kept you in. She made a mistake". I told him, she is the program committee Chairperson, and it was no mistake. He said, Well she is no longer here, BYE'

I was escorted to my cell. I again reported to work, because as far as the records show, (attached), if I didn't, I'd be out of place and subject to a Misbehavior Report. Upon my arrival, C.O. Guiterrez begin to call me racist obscenities and told me to take" my snitching black ass back to my cell. among other things. He called my housing block and told C.O. Ellis to get me out of there, and don't let me come back.

On February 4, 2019, I received a program change sheet. Exhibit-#18, signed by ORS Soto, stating "I was removed from the program, reason 'per area Sgt.'". This is illegal and a violation of NYSDOCCS Directive pertaining to "Inmate Program Placement".

On the next day I was called to the Program Committee, where I complained and quoted the Directive. ORC Soto said "Her hands were tied". She assigned me to GYM and Carpentry. I immediately wrote to D.S.P., Malin, and filed a complaint, Exhibit-#19. I also wrote to Sgt. Ramos and told hime that he was being a racist and he was illegally retaliating against me. I also wrote to ORC Soto, and told her, she was involved in a conspiracy to violate my rights. Approximately two (2) days later, I received another Program Change Sheet, reassigning me back into the Barbershop.

I reported to work on february 11, 2019, C.O. Guiterrez went crazy. I gave him my new assignment papers. He called Sgt. Ramos, He was pissed as well. To be spiteful, C.O. Guiterrez gave me a box

(40)

with no trimmers, and broken Blades. He told me I'm going to get you.

I did not return back to work. The officer on my gallery said "The Barbershop officer and area Sgt. said, don't let me out of my cell. I remained locked in my cell.

On February 25, 2019, my cell opened for work. When I arrived downstairs, I didn't see C.O. Guiterrez. However, there was C.O. T. T. Turner. She said that she was the new OIC officer of the Barbershop. When we got to the shop, C.O. Russell seen me, and leaned over and whispered in C.O. Turner's ear. C.O. Turner then took my picture off of the desk, and ripped it up and said "You won't be working here long".

It should be noted that. I personally know both of these officers from my neighborhood. C.O. Russell use to buy drugs in my building, and (T.T.) Turner knows my ex-wife.

When It was time to go back, I was told to stay back. C.O. Turner forced me to have inter**ORAL**course with her. But received a call, that the "Executive Team" was enroute. She made me hide. C.O. Russell was also present and laughing the whole time.

I immediately wrote a grievance which was given right to C.O. Turner, and never submitted. Upon knowing about the grievance, C.O. Turner falsified a misbehavior report on me. Exhibit-*20., which turned out to be her demise. Through her own MBR, she verified that I was in the barbershop at Count time 11:40am., I should have been in my cell.

I filed a PREA complaint. Exhibit-*21, I also written to several agencies. Exhibit-*22. On february 25, 2019, I was told that, "being giving a direct order to report to work". I followed orders. As soon as I got there C.O. Turner said "There go that rat muthafucker. why you'll not doing shit to him".

I was again escorted to my cell. I was placed on keeplock, and  moved to B-Block. two days later I was given another falsified MBR from C.O.  Turner, in retaliation for my PREA complaint. I also received another program change sheet. I was removed for the falsified MBR, prior to me even having my hearing.

Both MBR's were dismissed at that hearing I attended for them. An investigator from the office of Special Investigations came to see me. He took my statement. My claim of Sexual Assault was substantiated. C.O. Turner was arrested upon information and belief and escorted

out of the facility.

I wrote to be placed back in the program as both MBR's were dismissed, and because that was  the reason I was removed in the first place, and it was unjustified.

However, on March 21, 2019, I was singled out by C.O. Walker who said "You got Turner locked out the jail, you're a fucking rat". He attempted to assault me during a Pat search. He was stopped by Sgt. Dekabaum, who took me back to my cell safely.

C.O. Walker in retaliation for C.O. Turner being in trouble, and C.O. Franco (who was now in B-Block) even though he is not to be around me, was telling everyone I got his vacation days taken, and to "get me" was also retaliating on me as was Sgt. Gonzalez.

I was given a Tier III that was falsified. At my hearing, I pled "Guilty" to direct order, just to get it over with. I felt safer in my cell. But I did nothing, nor did I disobey any direct orders. This was only retaliation against me.

My constitutional right to be free from Sexual assault was violated as was my right not to be retaliated against for exercising my protected right to speech and petition the government.  Exhibits #2B

Respectfully Submitted,

_____
Mr. Sean Best
Sing Sing Correctional Facility
354 hunter St.
Ossining, N.Y. 10562

(42)

# Exhibit A

**THE BRONX DEFENDERS**
360 E 161st Street,
Bronx, NY 10451
(718) 838-7878
(718) 665-0100 (fax)

Robin G. Steinberg
*Executive Director*

My name is ___Lafaykia  Smalls___. I am giving this statement to Tess Domb

Sadof, an investigator for The Bronx Defenders, that is representing ___Sean   Best___

_____.

I have worked at the supportive housing facility

located at 1932 Crotona since October 9th, 2017.

I work at 1932 Crotona as a resident monitor.

The first time I met Sean Best was in

November 2017. Sean is not a resident of

1932 Crotona, but he is a frequent visitor. In

Initials _LS_

Page 2

November, I saw Sean around the building about eight times. Sean was nice to me every time I saw him. Sean stays with people on the 1st, 2nd, and 6th floors. I heard after Sean was arrested that Sean and Sheretta Burke, a resident on the 3rd floor, chill together and used to be together. The first time I had an unpleasant interaction with Sean ~~was on Thanksgiving. Earlier that day, on~~ On Thanksgiving I worked the 4PM-midnight shift. LS

LS At the beginning of my shift, Thanksgiving, Sean appeared to be sober and was being nice to me. Sean offered to bring

Initials LS

Page 3

me water. At around 6PM or 7PM, Sean came

downstairs and was being rowdy. I had seen

on the cameras that Sean had gotten into

fights with people on the 1st and 2nd floors before

LS — coming downstairs.

When Sean came downstairs, he tried to pass

by where I was sitting in the security booth

and go to the office. I said to Sean

"Why you going back there?". Sean said

"because you're not paying me no attention,

bitch". I told Sean to leave the building.

Sean left the building. I knew Sean

Initials LS

Page 4

was drunk because he was wobbling around and would never talk to me like that. I did not call the cops after that interaction on Thanksgiving. The next day, I was scheduled to work a 4PM - midnight shift. When I got to work, I told my supervisor Anna, another resident monitor, that Sean had been acting drunk yesterday and that he cursed me out. I was telling Anna to share how my night had been, not to complain. Anna seemed surprised when I told

Initials LS

Page 5

her that, because he's never acted like that

before. The rest of my 4PM - midnight shift

was normal, busy as usual. At around midnight,

Sheretta came downstairs. Sheretta seemed a little

drunk when she came downstairs. I had seen

Sheretta hopping from house to house on the

cameras all day. My relief who was supposed

to come at midnight never showed up.

Sheretta and I talked about how I was

stuck with no relief. Sheretta offered me

something to eat or drink while I was

Initials LS

Page 6

writing for my relief. Shrretta left to go get

some juice for me from her apartment.

When Shrretta came downstairs with a cup

of juice in her hand, Sean was walking in
Shrretta was standing in the area between the
first and
the building. I had not seen Sean at   second
front doors
in front
all that day. The first door was open.   of the
security
booth
LS

So Sean walked right into the building.

I think Sean must have thought there was

alcohol in the cup, because he took the
LS

cup from Shrretta's hand. said Sean was

very drunk, wobbling and loud. Sean took the

Initials LS

Page 7

cup of juice, drank from it, and threw the cup at the window across from the security booth. The cup still had juice in it, so juice sprayed everywhere. Sean then, still standing close to Sheretta, mushed Sheretta on her forehead. I don't know what hand Sean used to mush Sheretta. Sheretta immediately walked away, and said she was going to call the cops. I saw Sheretta on the cameras take the elevator to her apartment. Sean stayed in the area between the first

Initials LS

Page 8

2nd second front doors, trying to open the second door. To open the first door, you need to be buzzed in. ~~To open the second~~ LS

LS ~~door there is no~~ There is no buzzer on the second door. I told Sean to leave because Shawetta was calling the cops. After a minute, Sean finally left the building.

When Sean stepped out of the building, came back after a minute 2nd

the first door closed. Sean ∧ kept trying to LS

ring the buzzer to get in the building through the first door. That's when Brandy,

Initials LS

Page 9

the director, called me. Brandy was calling to tell me that I was stuck, that I would be working a double shift that night. It was around 12:20am. Brandy could hear the buzzer ringing on the phone because Sean was holding the bell. Brandy asked who was ringing the bell and I said Sean. I told Brandy I wanted to call the cops because he had been starting with Sheretta, was drunk, and now was refusing to leave the building. Brandy asked me to Facetime, so she I just wanted Sean to leave so he would not get in trouble. LS

Initials LS

Page 16
Scan LS

could see what Sean was doing. I

Facetimed Brandy so she could see Sean,

while at the same time calling 911 from the

LS

desk phone. I was Facetiming Brandy

until the cops arrived, about 8 minutes after

LS

I dialed 911. The cops arrived, and

told me they needed the person who made

the report. Shuretta had come downstairs at

this point, and was standing in the hallway.

LS

Four cops had arrived. Two

cops went to talk to Shuretta inside the

Initials LS

Page \_\_11\_\_

building, and two cops stayed outside to

talk to Sean. The two cops who were

intervening Sharetta had trouble understanding

Sharetta because she was a little drunk and

talking in circles. The two cops went over

to the security booth and asked me what

happened. I told the cops about what

happened between Sharetta and Sean. I

told the cops that Sean did not live

in the building and had been starting trouble

since Thursday. The cops told me they

Initials LS

Page 12

could not arrest Sean because he was too

drunk. The cops told me to call them if

Sean came back to the building, and that

they would come and take him to the

hospital. When the cops left, Sean left, LS

walking outside of the view of the cameras.

Shevetta went back upstairs. About 20 minutes

later, I was standing outside the security

booth in the lobby, talking to JD. JD

was the only person who had come into the

building after the cops left. JD is also a

Initials LS

Page 13

frequent visitor to the building, but does not

live there. JD had entered the building as

the cops were leaving. JD was asking about

what happened. JD was telling me in about

the history between Shuetta and Sean, and

the building since I'm new. JD and I

were talking outside the booth, when I

saw Levi, another frequent visitor, come

Levi also does not live in the building. LS

into the building. ∧ I let Levi into the

building, and Sean came into the building

towards me. LS

behind Levi, running∧. Sean was yelling about

Initials LS

Page 14

how I called the cops on him. JD

jumped in front of me because Sean was

approaching me. Sean swung at JD, and

JD and Sean started fighting. I don't

know what hand Sean used to swing at

JD. JD and Sean fought, swinging at each

other, for about a minute. While JD and Sean were fighting, I called the cops on my cell phone. JD was telling ✓LS Sean to calm down. Eventually JD was I dialed 911. ✓LS

able to calm Sean down, and pulled Sean

out of the building. Levi followed Sean and

JD out of the building. Sean, JD, and

Initials LS

Page 15

Levi were standing in front of the building.

LS ~~Stan was outside~~ That's when Sheretta came

downstairs. I was in the security booth

at this time. Sheretta came downstairs

with a stick in her hand. The stick was

wooden, about 3 feet long and 3-4

inches wide. I don't know ~~which~~ LS hand

LS Sheretta was carrying the stick with. Sheretta

was holding the stick to her side, and

the stick was swinging around. I stood up,

and came out of the booth to the

Initials LS

Page 16

hallway where Sheretta was standing. I

told Sheretta: "Don't go out because Sean

is still upset and I just called the cops".

Sheretta said to me "I'm not scared" and

LS — walled
~~went~~ outside, with the stick in her hand.

                    saw on the cameras
LS — I ~~saw on~~ Sheretta walked ~~outside~~, and Sean started
                         LS
following her. ~~Sean~~ On the cameras, it

looked like Sean was going after Sheretta,

trying to hit her. JD was pushing Sean

away from Sheretta. That lasted for about

a minute, until Sean, JD, Levi, and Sheretta LS

Initials LS

Page 17

walked out of the camera's view. A few seconds

later, the four of them came back into

the camera's view. That's when Sean hit Sheretta,

Slapping her on the back of her head.
I don't know which hand Sean slapped Sheretta with. LS
JD pushed Sheretta towards the building. I
LS

buzzed the door, so that Sheretta could

get inside. Sean was already running towards

Sheretta and hit Sheretta in the forehead.

Sean either punched or slapped Sheretta,
I don't know with what hand. LS
Sheretta took the stick and swung at

Sean, at his head. When Sheretta swung

Initials LS

Page 18

at Sean with the stick, Sean pushed her to the floor. I don't know if ~~Sean~~ Sheretta hit LS Sean or not. Sean then took the stick from Sheretta and started beating her with it. Sean hit Sheretta with the stick two times. I saw this all from the security booth. As Sean was beating up Sheretta, I dialed 911 and was back on the floor. I buzzed the door for JD, and JD pulled Sean off of Sheretta. As ~~So~~ LS JD was pulling Sean off Sheretta, the

Initials LS

Page 19

cops arrived. Sheretta was bleeding on her

head. When the cops arrived, they asked me

for my name and number, and took the

video surveillance. ⌃The cops tried to ask
                    The two cops were the same cops who had
                    come before to
                    talk to me.
                    LS

Sheretta questions but she did not want
                    Sheretta said she did not want to talk because she had
                    already
to talk. ⌃I don't know if the cops talked
                    told
                    the cops
                    to talk
                    Sean up
to JD or Levi. The cops took the still.
                    because she
                    was scared
                    the first
An ambulance arrived, and Sheretta was taken
                    time.
                    LS

to the hospital. I never went to the

precinct. I never did any identification

procedure, That is all I remember from the

Initials LS

Page 70

fight that happened the day after Thanksgiving

where I work.

L.S

Initials LS

I have read this statement (or it has been read to me) and it is true, accurate and complete.

I have made any changes that I wanted to make.

Signed: Natashia Smalls     Date: 12-6-17

Phone: 646-498-8005     Date of Birth: 7-30-86

*Exhibit B*

FORM P9011 (10/11)

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS)
NOTICE OF VIOLATION

TO: *Sean Best*                                   INST.# *0941967*

WARRANT# *784561*                          NYSID# *088594161*

You are charged with violating the conditions of your release in the manner specified on the attached violation of release report.

A preliminary hearing on these charges has been scheduled on _*Waived*_ at _____

                                Date                 Time                        Place

Should you waive a preliminary hearing or should probable cause be found at this hearing that you have violated any condition of your release in an important respect, a final hearing on these charges will be held on _*12/7/17*_ at _*9:30am*_ at _*R4UC*_

                                            Date                 Time                        Place

In the event that your return to the State of New York cannot be effected for the hearing as scheduled above due to circumstances beyond the Department's control, you will be afforded a preliminary hearing and final revocation hearing at such time as you may become available for return on the Department's warrant.

You have the right to a preliminary and final revocation hearing. A preliminary hearing may be held to determine whether there is probable cause to believe that you violated one or more of the conditions of your release in an important respect. At this hearing you are entitled to appear and speak on your own behalf; introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses. Proof of your conviction of a crime committed after your release shall constitute probable cause for the purpose of the preliminary hearing. You may be represented by counsel. It is your responsibility to obtain counsel. Your waiver of this preliminary hearing is the equivalent to a finding of probable cause.

In the event you are convicted of either a misdemeanor or a felony offense committed while under community supervision and a preliminary hearing has not been completed, you will not be entitled to the preliminary hearing on the basis of the new conviction. Any preliminary hearing which may have been scheduled may therefore be cancelled upon your conviction for such misdemeanor or felony.

Following the establishment of probable cause, the Board of Parole or its designee will review your case and may order that you be held for a final revocation hearing.

At the final revocation hearing, the presiding officer will determine whether there is a preponderance of evidence to support each of the charged violations. At this hearing, you have the right to be represented by counsel; to speak on your own behalf; have the right to introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses against you. At this hearing, you also have the right to present mitigating evidence relevant to your restoration to community supervision.

In the event you are convicted of a felony offense committed while under community supervision and you receive a new indeterminate or determinate sentence, any final revocation hearing which has been scheduled for you may be cancelled. In such instances, the Board of Parole may issue a final declaration of delinquency based upon that conviction and sentence.

In the event the Board of Parole issues a final declaration of delinquency, you will be served with a copy of that determination together with a copy of the commitment.

Should you be convicted of a crime committed after your release, it is the intention of the Department of Corrections and Community Supervision to introduce evidence of your conviction at the time of your revocation hearing.

A request to adjourn either scheduled hearing should be made in the case of a preliminary hearing, at least three (3) days, and in the case of a final hearing, at least seven (7) days prior to the hearing, in writing, to the local area office. Requests for adjournments made at the hearing will only be granted for good cause shown.

Violation of Release Report received:

X _____         _*11/27/17*_
            Signature                                    Date

All persons charged with a violation are required to be present at all proceedings regarding that violation of community supervision which are authorized by the Board of Parole. Any voluntary failure on your part to be present at any of these proceedings may result in a finding that your failure to appear was a voluntary, knowing and intelligent waiver of your right to appear. Should such a finding be made, a hearing in absentia can be held and a final determination be made regarding the charges pending against you, including, if necessary, a time assessment because of the violation of community supervision.

☐ I DO wish to have a preliminary hearing

_*11/27/17*_
Date

_*11/27/17*_
Date

☐ I do NOT wish to have a preliminary hearing

X _____
            Signature of Releasee

_____
            Signature of Witness

*Exhibit C*

FORM P9011 (10/11)
STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS)
NOTICE OF VIOLATION

TO: *Sean Best*                    INST.# *0941969*

WARRANT# *784561*                    NYSID# *088594161*

You are charged with violating the conditions of your release in the manner specified on the attached violation of release report.

A preliminary hearing on these charges has been scheduled on *Waived* at _____ at _____
          Date                    Time                    Place

Should you waive a preliminary hearing or should probable cause be found at this hearing that you have violated any condition of your release in an important respect, a

final hearing on these charges will be held on *12/7/17* at *930mm* at *R24JC*
          Date                    Time                    Place

In the event that your return to the State of New York cannot be effected for the hearing as scheduled above due to circumstances beyond the Department's control, you will be afforded a preliminary hearing and final revocation hearing at such time as you may become available for return on the Department's warrant.

You have the right to a preliminary and final revocation hearing. A preliminary hearing may be held to determine whether there is probable cause to believe that you violated one or more of the conditions of your release in an important respect. At this hearing you are entitled to appear and speak on your own behalf; introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses. Proof of your conviction of a crime committed after your release shall constitute probable cause for the purpose of the preliminary hearing. You may be represented by counsel. It is your responsibility to obtain counsel. Your waiver of this preliminary hearing is the equivalent to a finding of probable cause.

In the event you are convicted of either a misdemeanor or a felony offender committed while under community supervision and a preliminary hearing has not been completed, you will not be entitled to the preliminary hearing on the basis of the new conviction. Any preliminary hearing which may have been scheduled may therefore be cancelled upon your conviction for such misdemeanor or felony.

Following the establishment of probable cause, the Board of Parole or its designee will review your case and may order that you be held for a final revocation hearing.

At the final revocation hearing, the presiding officer will determine whether there is a preponderance of evidence to support each of the charged violations. At this hearing, you have the right to be represented by counsel; to speak on your own behalf; have the right to introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses against you. At this hearing, you also have the right to present mitigating evidence relevant to your restoration to community supervision.

In the event you are convicted of a felony offense committed while under community supervision and you receive a new indeterminate or determinate sentence, any final revocation hearing which has been scheduled for you may be cancelled. In such instances, the Board of Parole may issue a final declaration of delinquency based upon that conviction and sentence.

In the event the Board of Parole issues a final declaration of delinquency, you will be served with a copy of that determination together with a copy of the commitment.

Should you be convicted of a crime committed after your release, it is the intention of the Department of Corrections and Community Supervision to introduce evidence of your conviction at the time of your revocation hearing.

A request to adjourn either scheduled hearing should be made in the case of a preliminary hearing, at least three (3) days, and in the case of a final hearing, at least seven (7) days prior to the hearing in writing, of the local area office. Requests for adjournment made at the hearing will only be granted for good cause shown.

Violation of Release Report received _____ _____
                                          Signature                    *11/27/17*
                                                                        Date

All persons charged with a violation are required to be present at all proceedings regarding that violation of community supervision which are authorized by the Board of Parole. Any voluntary failure on your part to be present at any of these proceedings may result in a finding that your failure to appear, was a voluntary, knowing and intelligent waiver of your right to appear. Should such a finding be made, a hearing in absentia can be held and a final determination be made regarding the charges pending against you, including, if necessary, a time assessment because of the violation of community supervision.

☐ I DO wish to have a preliminary hearing              ☐ I do NOT wish to have a preliminary hearing

*11/27/17*                                             X _____
   Date                                                   Signature of Releasee

*11/27/17*                                             _____
   Date                                                   Signature of Witness

If you cannot afford an attorney and wish to have counsel at your preliminary hearing, sign and detach this form. It is your responsibility to mail the form to the address shown on the form. If you request counsel at your preliminary hearing, you must mail this form IMMEDIATELY.

TO: *Legal Aid*              RE: *Sean Best*
    *99 Water St*                    Name
    *NY NY*              WARRANT # *784561*

I am an alleged community supervision violator being held at: _____

I am scheduled for a preliminary hearing to be held on _____ at _____ at _____
                                                      Date          Time          Place

I have waived my preliminary hearing. A final hearing has been scheduled for _____
                                                                            Date

_____ at _____
  Time              Place

I cannot afford an attorney and request that I be assigned counsel. Releasee _____
                                                                            Name

Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X
People of the State of New York ex rel.
SEAN BEST,

[B&C # 895-17-01554;
NYSID # 08859416-L;
WARRANT # 784561];

                                    Petitioner,

- against -

WARDEN, Eric M. Taylor Center, and
NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION,

                                    Respondents.
-----------------------------------------------------------------X

: **DECLARATION OF**
: **PAROLE OFFICER**
: **JOANNA BROWN**
:
: Index No. 250009-18

**JOANNA BROWN**, declares under penalty of perjury that the following is true and correct:

1.       I am employed by the New York State Department of Corrections and Community Supervision ("DOCCS") as a Parole Officer ("PO"). I have held this position for approximately twenty-seven years. I am assigned to the Manhattan II Area Office. Previously I was employed for four years as an investigator for the New York Society for Prevention of Cruelty to Children. My Shield number is 1439.

2.       I am the parole officer who supervised Sean Best ("Petitioner") during his previous release to parole supervision, from September of 2015 to May of 2016. Petitioner had absconded from supervision, and left New York State. Upon being located out of state, other officers served Petitioner with the Notice of Violation in that prior violation, and Petitioner waived his right to a preliminary parole revocation hearing ("preliminary hearing"). I had no participation with that retaking or service of violation papers.

1

3.      I am also the parole officer who supervised Petitioner during the current release to parole supervision, from February of 2017 until he was placed in Rikers Island on November 25, 2017. I served Petitioner with the Notice of Violation at Rikers Island on November 27, 2017. I read all of the charges to Petitioner. I also explained his rights to and regarding the preliminary and final parole revocation hearings ("final hearing"). I explained that Petitioner had the right to a preliminary hearing, and that the purpose of the preliminary hearing is whether there is probable cause for the charges. I also explained that Petitioner could choose to waive his right to the preliminary hearing and go straight to the final hearing if he wanted.

4.      Petitioner told me that he did not know what he should do. I told Petitioner that it was up to him. Petitioner told me that he wanted to go straight to his final hearing. Accordingly, I filled out the top portion of the Notice of Violation, providing Petitioner's name, identifying numbers, that the preliminary hearing was waived, and the date of the final hearing. I then signed the form as the witness. I did not sign for Petitioner, nor did I check any boxes.

5.      I handed the Notice of Violation to Petitioner. I watched as Petitioner made his check mark, waiving the preliminary hearing. Petitioner signed on the lines indicating that he had received the Violation of Release Report containing the charges against him and affirming his choice concerning a preliminary hearing.

Dated: New York, New York
       February 36, 2018

_____
Parole Officer Joanna Brown

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
----------------------------------------------------------------X
People of the State of New York ex rel.                          :
SEAN BEST,                                                       :        **SUPPLEMENTAL**
                                                                :        **DECLARATION OF**
[B&C # 895-17-01554;                                            :        **PAROLE OFFICER**
NYSID # 08859416-L;                                            :        **JOANNA BROWN**
WARRANT # 784561];                                             :
                                                                :        Index No. 250009-18
                                        Petitioner,             :
                                                                :
- against -                                                     :
                                                                :
WARDEN, Eric M. Taylor Center, and                             :
NEW YORK STATE DEPARTMENT OF CORRECTIONS:
AND COMMUNITY SUPERVISION,                                      :
                                                                :
                                        Respondents.            :
----------------------------------------------------------------X

     **JOANNA BROWN**, declares under penalty of perjury that the following is true and

correct:

     1.    I am employed by the New York State Department of Corrections and

Community Supervision ("DOCCS") as a Parole Officer ("PO"). I have held this position for

approximately twenty-seven years. I am assigned to the Manhattan II Area Office. Previously I

was employed for four years as an investigator for the New York Society for Prevention of

Cruelty to Children. I am the parole officer who supervised Petitioner during the current release

to parole supervision, and I served Petitioner with the Notice of Violation.

     2.    I re-state and incorporate herein all of my statements in my first Declaration in

this matter, dated February 26, 2018, as true to the best of my knowledge.

     3.    When I served Petitioner with the Notice of Violation, I did not tell him that he

was not entitled to a preliminary parole revocation hearing ("preliminary hearing") because of a

new felony arrest. Such a claim makes no sense because if Petitioner truly were not entitled to a

preliminary hearing the form would not state that he had waived. Instead, I would have written "Not Entitled" into the blank at the top of the form for the preliminary hearing date. This is because being disentitled to a preliminary hearing is not the same as waiving it.

4.     Moreover, I am aware that parolees lose the right to a preliminary hearing only after a conviction, not an arrest as Petitioner claims in his affidavit. Additionally, I am aware that parolees lose the right to a preliminary hearing after a conviction of any new crime. I did not misinform Petitioner about either of these rules: I did not misinform him that arrests (as opposed to convictions) disentitle parolees from preliminary hearings, and I did not misinform him that only felonies (as opposed to felonies as well as other new crimes) have this disentitling effect. Parolees have the right to counsel at final parole revocation hearings ("final hearing"). I believe such misinformation would be revealed by their attorney at that stage. Intentionally misinforming any parolee concerning their preliminary hearing rights would be counterproductive as a result.

Dated: New York, New York
        April 13 , 2018

_____
Parole Officer Joanna Brown

Executed on April 5 , 2018

Sworn to before me this
18th day of April , 2018.

_____
NOTARY PUBLIC

**FUDGE CARRIE JO**
**NOTARY PUBLIC - STATE OF NEW YORK**
**NO. 01FU6313995**
**QUALIFIED IN DUTCHESS COUNTY**
**MY COMMISSION EXPIRES 10/27/20 13**

2

*Exhibit E And*



| CORRECTION DEPARTMENT CITY OF NEW YORK | ATTACHMENT D |
|---|---|
| HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION | Page 2 of 2 Pages / Form: 6500D / Eff. : 2/8/15 / Ref. : Dir. # 6500R-C |



**DOCUMENTARY EVIDENCE** (Where applicable)

| | | | Shown to Inmate: |
|---|---|---|---|
| Photograph of Injury: | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Photocopy of Weapon: | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Reports - Specify Types: | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Logbooks - Specify Types: | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Infraction Investigation: | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Physical Evidence (List): | ☐ Yes ☐ No | | ☐ Yes ☐ No |
| Witness Statements (List Witnesses): | ☐ Yes ☐ No | | ☐ Yes ☐ No |

On this date and time following disposition was reached after a hearing on the charges listed below: **12·3·18 @ 1700 hours**

| Charge # | Dismissed | Penalty | Guilty | Not Guilty | Basis for Findings & Evidence Relied On |
|---|---|---|---|---|---|
| | ☐ | | ☐ | ☐ | |
| | ☐ | | ☐ | ☐ | *N.H.R* |
| | ☐ | | ☐ | ☐ | |
| | ☐ | | ☐ | ☐ | |
| | ☐ | | ☐ | ☐ | |

Twenty Five Dollar ($25) Disciplinary Surcharge Grade I or Grade II offenses only: ☐ Yes   ☐ No

If you have been found guilty of multiple rule violations, these penalties will be served: ☐ Consecutively   ☐ Concurrently   ☐ Not Applicable

Infraction Dismissed: ☐ Yes   ☐ No

Reason: *NHR by the investigating official*

Pre-Hearing Detention Time Credit: _____ Days.

Adjudication Captain (Print Name, Rank, Shield #): *Pe Sorin   Captain 1262*   Signature of Adjudication Captain: _____

You have the right to appeal an adverse decision rendered by the Adjudication Captain within two (2) days of service of this decision. If you have been sentenced to a total of thirty (30) days of punitive segregation or loss of all your good time on any one (1) Notice of Disciplinary Disposition (6500D), you may file a petition for a writ under Article 78 of the CPLR. If you are sentenced to less that thirty (30) days punitive segregation or loss of less than all your good time, you may appeal that decision to the Warden of the facility where the infraction occurred.

| I certify that I received a copy of this notice. | Signature of Inmate: | B&C/Sentence #: *8·8·170·554* | Date: *1-4-18* | Time: *2·32* |
|---|---|---|---|---|
| Served by (Print Name, Rank and Shield #): *Nieves Capt 391* | | Signature of Server: | | |
| Refused to Sign for Notice: | ☐ Yes   ☐ No | Witnessed By: | | |



## CORRECTION DEPARTMENT
## CITY OF NEW YORK

**ATTACHMENT D**

**HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION**

Page 1 of 2 Pages

Form: 6500D
Eff. : 2/8/15
Ref. : Dir. # 6500R-C

| | |
|---|---|
| Infraction #: 4223 - 17 | Institution: AMKC |
| Inmate Name (Last, First): BEST, SEAN | B&C/ Sentence #: 8951701554 NYSID #: 08859416L |
| Location: D2U | Disposition Date: 1·3·18 Disposition Time: 170 Hrs. |
| Adjudication Captain (Print Name, Rank & Shield #): DeSousa Captain #2602 | |
| Folder #: | Hearing Start Date: 12·28·17 @ 1650 Hearing End Date: 12·28·17 |

Inmate's Accompanying card Indicates Inmate Received Rule Book: ☐ Yes ☐ No

Inmate requested Witness(es): ☐ Yes ☐ No ☐ Waived   ☐ Request Granted ☐ Denied   (If waived, inmate must sign. If denied, state reason.)
Reason:

Inmate requested Hearing Facilitator: ☐ Yes ☐ No ☐ Waived   ☐ Request Granted   (If yes, Hearing Facilitator must sign. If waived, inmate must sign.)
Reason:

Inmate Requested Interpreter: ☐ Yes ☐ No ☐ Waived   ☐ Request Granted ☐ Denied   (If yes, interpreter must sign. If waived, inmate must sign. If denied, state reason.)
Reason:

If inmate advised of right to remain silent, was inmate advised that statements could be used against him/her.   ☐ Yes ☐ No ☐ Not Applicable

**Special Situations**

Hearing in Absentia: ☐ Inmate Refused to Appear   ☐ Removed from Hearing Due to _____

Adjournment: ☐ By Adjudication Captain   Date Reconvened ___/___/___   Specify Reason
☐ By Inmate   Waived Time Limits to Facilitate Adjournment (Inmate Signature)_____

Referral: ☐ Security   ☐ Mental Health   ☐ Inspector General

Inmate Pled: ☐ Guilty   ☐ Not Guilty   ☐ Guilty with an Explanation

Summary of inmate's Testimony:

*N.H.R.*

The following witness(es) testified at your hearing. (If additional witnesses testified, attach additional sheets.)

| Witness Name (Last Name, First Name): | Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate): |
|---|---|

Witness Signature (Present at Hearing):

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason:

Summary of Testimony:

Testimony was: ☐ Credited ☐ Rejected   Reason:

| Witness Name (Last Name, First Name): | Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate): |
|---|---|

Witness Signature (Present at Hearing):

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason:

Summary of Testimony:

Testimony was: ☐ Credited ☐ Rejected   Reason:



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## REPORT AND NOTICE OF INFRACTION

Form: 6500A
Rev. : 08/04/15
Ref. : Dir. #6500R-C

| Infraction #: | Institution: E.M.T.C. | Date of Incident: 02/11/18 | Time Infraction Written: APPROX 1245 | Date of Report: 02/11/18 |
|---|---|---|---|---|

| Inmate Name (Last, First): Best, Sean | B&C/ Sentence #: 89517O1554 | NYSID: 08859416L |
|---|---|---|

| Location of Incident (Be Specific): BACK Aile between Bed #25 and 21 | Housing Area Location: 9 upper | Approximate Time of Incident: 1230 Hrs. |
|---|---|---|

| Charge # | Offense | Charge # | Offense |
|---|---|---|---|
| 120.10 | DISOBEY A DIRECT ORDER | | |
| 101.1 | INMATE- INMATE ASSAULT | | |

| Reporting Official (Print Name, Rank and Shield #): Williams CO #13820 | Reporting Official (Signature): |
|---|---|

**Details of Incident (Include details as to How, When and Where Infraction was Committed):**

On FEBRUARY 11, 2018 At APPROX 1230 I CO Williams #13820 Assign to 9 upper B Post observed Inmate Best Scan B/C 895170 1554 NYSID 08859416L exchanges several close Fists^with (punches) Inmate JACKSON, Stacey B/C #4411708583 NYSID 0287430CP to the FAcial AReA and upper Body AReA By the BACK Aile between BeD #25 and Bed #21, This writer gAve several verbal commands to "Stop Fighting" SAID Inmates Did not comply, AfteR several more verbal commands to "Stop Fight", Both Inmates eventually comply. PBA was Activated. PRobe Team ARRIveD on Post Both Inmates was escorted To Intake without FuRthoR incidents.

You are entitled to a hearing for this infraction no sooner than twenty-four (24) hours after you are served with this notice. If you are a sentenced inmate and you commit an infraction within twenty-four (24) hours prior to your discharge, and have not reached your maximum sentence expiration date, you may be served with charges and held for a hearing. The Department will make every effort to hold this hearing within three (3) business days of the service of this notice. This three (3) business day period excludes the day you are served, weekends, holidays, days you go to court (whether in person or via teleconference), days you are hospitalized or at a hospital attending a clinic, days you leave the facility for an attorney interview, days you are unavailable because you are transferred to another facility and days you are unavailable due to your absence from the facility for any purpose. The three (3) business day period is automatically extended by one (1) business day if you are transferred to another facility prior to your hearing (unless you are a Pre-Hearing Detention Inmate). Commencement of a hearing after three (3) business days is at the discretion of the Adjudication Captain and is not barred by Department rules.

At your hearing you have the following rights:

1. Right to appear personally, unless you waive your right to appear, refuse to attend the hearing or appear at the hearing and become disruptive.
2. Right to make statements. If you choose to remain silent, your silence cannot be used against you. If you make a statement, such statement cannot be used in a subsequent criminal trial unless you have been given a Miranda Warning and then voluntarily testify.
3. Right to present material evidence.
4. Right to present witnesses.
5. Right to the assistance of a Hearing Facilitator.
6. Right to an interpreter if you cannot communicate well enough in English.
7. Right to appeal.

Within twenty-four hours of the Adjudication Captain reaching a decision of guilty, you will receive a copy of the "NOTICE OF DISCIPLINARY HEARING DISPOSITION" form informing you of the violation(s) you are found guilty of, the basis for that finding, the evidence relied upon and the penalty to be imposed. The following penalties are the maximum which may be imposed individually or in any combination:

1. Reprimand.
2. Loss of privileges.
3. Loss of good time if you are a sentenced inmate.
4. Punitive segregation for up to thirty (30) days per each applicable individual charge.
5. Restitution for intentionally damaging or destroying City property.

A twenty five ($25) dollar disciplinary surcharge will be imposed on all inmates found guilty of a Grade I or Grade II offense. You have the right to appeal an adverse decision rendered by the Adjudication Captain.

| Interpreter Requested: | ☐ Yes (If yes, include what language) | ☑ No |
|---|---|---|

| Hearing Facilitator Requested: | ☐ Yes ☑ No | |
|---|---|---|

| Witness(es) Requested: | ☐ Yes (If yes, include witness(es) Name, Book and Case Number (if inmate) or Shield/ID (if staff) and Location (if inmate) or Post (if staff). ☑ No |
|---|---|

| Witness (Print Name): | B&C Number: | Location: |
|---|---|---|
| Witness (Print Name): | B&C Number: | Location: |
| Witness (Print Name): | B&C Number: | Location: |
| Witness (Print Name): | Shield/ID Number: | Post: |

| I certify that I received a copy of this notice: | Signature of Inmate: Refused | Date: 2/13/18 | Time: 1145 |
|---|---|---|---|

| Served by (Print Name, Rank and Shield #): Ciguero, Cpt #1836 | Signature of Server: |
|---|---|

| Refused to Sign for Notice: | ☑ Yes ☐ No | Witnessed By: Conti #8866 |
|---|---|---|

**FACILITY COPY**

 

| | CORRECTION DEPARTMENT CITY OF NEW YORK | ATTACHMENT D |
|---|---|---|

| HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION | Page 1 of 2 Pages | Form: 6500D Eff. : 2/8/16 Ref. : Dir. # 6500R-C |
|---|---|---|

Infraction #: 0228-18     Institution: EMTC

Inmate Name (Last, First): BEST SEAN     B&C/ Sentence #: 8951701554     NYSID #: 08859416L

Location: 4 UPPER     Disposition Date: 2/22/18     Disposition Time: 1720 Hrs.

Adjudication Captain (Print Name, Rank & Shield #): ABUL'S CAPT 1940

Folder #:     Hearing Start Date: 2/15/18     Hearing End Date: 2/15/18

Inmate's Accompanying card Indicates Inmate Received Rule Book: ☐ Yes ☐ No

Inmate requested Witness(es): ☒ Yes ☐ No ☐ Waived     ☐ Request Granted ☐ Denied (If waived, inmate must sign. If denied, state reason.)
Reason: Camera –

Inmate requested Hearing Facilitator: ☐ Yes ☒ No ☐ Waived     ☐ Request Granted (If yes, Hearing Facilitator must sign. If waived, inmate must sign.)
Reason:

Inmate Requested Interpreter: ☐ Yes ☒ No ☐ Waived     ☐ Request Granted ☐ Denied (If yes, interpreter must sign. If waived, inmate must sign. If denied, state reason.)
Reason:

If inmate advised of right to remain silent was inmate advised that statements could be used against him/her. ☐ Yes ☐ No ☐ Not Applicable

**Special Situations**

Hearing in Absentia: ☐ Inmate Refused to Appear     ☐ Removed from Hearing Due to _____

Adjournment: ☐ By Adjudication Captain     Date Reconvened ___/___/___     Specify Reason
☐ By Inmate     Waived Time Limits to Facilitate Adjournment (Inmate Signature) _____

Referral: ☐ Security     ☐ Mental Health     ☐ Inspector General

Inmate Pled: ☐ Guilty     ☐ Not Guilty     ☒ Guilty with an Explanation
Summary of inmate's Testimony: I was assaulted + was defending myself.

The following witness(es) testified at your hearing. (If additional witnesses testified, attach additional sheets.)

Witness Name (Last Name, First Name):     Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate):

Witness Signature (Present at Hearing):

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason:

Summary of Testimony:

Testimony was: ☐ Credited ☐ Rejected     Reason:

Witness Name (Last Name, First Name):     Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate):

Witness Signature (Present at Hearing):

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason:

Summary of Testimony:

Testimony was: ☐ Credited ☐ Rejected     Reason:



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

**ATTACHMENT D**

## HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION

Page 2 of 2 Pages

Form: 6500D
Eff. : 2/8/15
Ref. : Dir. # 6500R-C



**DOCUMENTARY EVIDENCE (Where applicable)**

| | Yes | No | | Shown to Inmate: | Yes | No |
|---|---|---|---|---|---|---|
| Photograph of Injury: | ☑ | ☐ | 6500 AB | | ☐ | ☐ |
| Photocopy of Weapon: | ☑ | ☐ | 104, 106 Combe | | ☐ | ☐ |
| Reports - Specify Types: | ☑ | ☐ | | | ☐ | ☐ |
| Logbooks - Specify Types: | ☑ | ☐ | | | ☐ | ☐ |
| Infraction Investigation: | ☑ | ☐ | | | ☐ | ☐ |
| Physical Evidence (List): | ☑ | ☐ | | | ☐ | ☐ |
| Witness Statements (List Witnesses): | ☑ | ☐ | | | ☐ | ☐ |

On this date and time following disposition was reached after a hearing on the charges listed below: **2/22/18 @ 1300**

| Charge # | Dismissed | Penalty | Guilty | Not Guilty | Basis for Findings & Evidence Relied On |
|---|---|---|---|---|---|
| 120.10 | | | ☐ | ☑ | My decision is based on Cc Williams written 6500A |
| 101-17 | | | ☐ | ☑ | Captn Gaines 6500B report review of the above listed submitted documents. On deni i Conclude y an |
| | | | ☐ | ☐ | are not guilty of 120.10 and 101-17. |
| | | | ☐ | ☐ | |
| | | | ☐ | ☐ | |

Twenty Five Dollar ($25) Disciplinary Surcharge Grade I or Grade II offenses only: ☐ Yes  ☐ No

If you have been found guilty of multiple rule violations, these penalties will be served: ☐ Consecutively  ☐ Concurrently  N/A

Infraction Dismissed: ☑ Yes  ☐ No

Reason: *Victim of Assault*

Pre-Hearing Detention Time Credit: _____ Days.

Adjudication Captain (Print Name, Rank and Shield #): **PHILLIPS C#0n444**   Signature of Adjudication Captain: *Phillips*

You have the right to appeal an adverse decision rendered by the Adjudication Captain within two (2) days of service of this decision. If you have been sentenced to a total of thirty (30) days of punitive segregation or loss of all your good time on any one (1) Notice of Disciplinary Disposition (6500D), you may file a petition for a writ under Article 78 of the CPLR. If you are sentenced to less that thirty (30) days punitive segregation or loss of less than all your good time, you may appeal that decision to the Warden of the facility where the infraction occurred.

| I certify that I received a copy of this notice: | Signature of Inmate: | B&C/Sentence #: 8951701554 | Date: 2/22/18 | Time: 2140 |
|---|---|---|---|---|
| Served by (Print Name, Rank and Shield #): *Capt. A. Eliza #468* | | Signature of Server: | | |
| Refused to Sign for Notice: ☑ Yes  ☐ No | | Witnessed By: *FC #9248* | | |

44

# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## REPORT AND NOTICE OF INFRACTION

Form: 6500A
Rev. : 08/04/15
Ref. : Dir. #6500R-C

| | | | | |
|---|---|---|---|---|
| Infraction #: 0399-18 | Institution: EMTC | Date of Incident: 3/10/18 | Time Infraction Written: 0950 | Date of Report: 3/10/18 |

| | | |
|---|---|---|
| Inmate Name (Last, First): Best, Sean | B&C/ Sentence #: 895 701 284   895 1 554 1 | NYSID #: 68859416L |

Location of Incident (Be Specific): 4 upper Dayroom/Housing area

Housing Area Location: 4 upper

Approximate Time of Incident: 0620    Hrs.

| Charge # | Offense | Charge # | Offense |
|---|---|---|---|
| 101.12 1   30 | Assault and fighting | | |
| 120.10   10 | Disobeying direct order | | |

Reporting Official (Print Name, Rank and Shield #): Rivera, CO #6810

Reporting Official (Signature): (signature)

**Details of Incident** (Include details as to How, When and Where Infraction was Committed):

On March 10, 2018 at approx. 0620 in housing area 4 upper, I CO Rivera #6810 assigned to 4 upper B post, observed a multiple inmate fight utilizing closed fists to upper body/facial area between inmates Best, Sean #895171554, Williams, Javell #825180027, and Henderson, Pedro #1001700137. This writer has given multiple direct orders to cease fighting, however, the inmates mentioned did not comply. After several verbal orders to stop fighting, inmates complied. Supervisor was notified.

You are entitled to a hearing for this infraction no sooner than twenty-four (24) hours after you are served with this notice. If you are a sentenced inmate and you commit an infraction within twenty-four (24) hours prior to your discharge, and have not reached your maximum sentence expiration date, you may be served with charges and held for a hearing. The Department will make every effort to hold this hearing within three (3) business days of the service of this notice. This three (3) business day period excludes the day you are served, weekends, holidays, days you go to court (whether in person or via teleconference), days you are hospitalized or at a hospital attending a clinic, days you leave the facility for an attorney interview, days you are unavailable because you are transferred to another facility and days you are unavailable due to your absence from the facility for any purpose. The three (3) business day period is automatically extended by one (1) business day if you are transferred to another facility prior to your hearing (unless you are a Pre-Hearing Detention Inmate). Commencement of a hearing after three (3) business days is at the discretion of the Adjudication Captain and is not barred by Department rules.

At your hearing you have the following rights:

1. Right to appear personally, unless you waive your right to appear, refuse to attend the hearing or appear at the hearing and become disruptive.
2. Right to make statements. If you choose to remain silent, your silence cannot be used against you. If you make a statement, such statement cannot be used in a subsequent criminal trial unless you have been given a Miranda Warning and then voluntarily testify.
3. Right to present material evidence.
4. Right to present witnesses.
5. Right to the assistance of a Hearing Facilitator.
6. Right to an interpreter if you cannot communicate well enough in English.
7. Right to appeal.

Within twenty-four hours of the Adjudication Captain reaching a decision of guilty, you will receive a copy of the "NOTICE OF DISCIPLINARY HEARING DISPOSITION" form informing you of the violation(s) you are found guilty of, the basis for that finding, the evidence relied upon and the penalty to be imposed. The following penalties are the maximum which may be imposed individually or in any combination:

1. Reprimand.
2. Loss of privileges.
3. Loss of good time if you are a sentenced inmate.
4. Punitive segregation for up to thirty (30) days per each applicable individual charge.
5. Restitution for intentionally damaging or destroying City property.

A twenty five ($25) dollar disciplinary surcharge will be imposed on all inmates found guilty of a Grade I or Grade II offense.
You have the right to appeal an adverse decision rendered by the Adjudication Captain.

| | | | |
|---|---|---|---|
| Interpreter Requested: | ☐ Yes (If yes, include what language) | | ☐ No |
| Hearing Facilitator Requested: | ☐ Yes   ☐ No | | |
| Witness(es) Requested: | ☐ Yes (If yes, include witness(es) Name, Book and Case Number (if inmate) or Shield/ID (if staff) and Location (if inmate) or Post (if staff)). | | ☐ No |

| | | | |
|---|---|---|---|
| Witness (Print Name): | B&C Number: | | Location: |
| Witness (Print Name): | B&C Number: | | Location: |
| Witness (Print Name): | B&C Number: | | Location: |
| Witness (Print Name): | Shield/ID Number: | | Post: |

| | | | |
|---|---|---|---|
| I certify that I received a copy of this notice: | Signature of Inmate: | Date: 3/10/18 | Time: 1657 /HS |
| Served by (Print Name, Rank and Shield #): Capt. Alim | Signature of Server: | | |
| Refused to Sign for Notice: ☐ Yes  ☒ No | Witnessed By: Carcii #916 | | |

**FACILITY COPY**



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

**ATTACHMENT B**

### INVESTIGATION REPORT

Form: 6500B
Rev. :08/04/15
Ref. : Dir. #6500R-C

Please indicate which of the following items are part of the Investigation:

- [x] Injury to Inmate
- [ ] UOF Reports
- [ ] Red ID/Enhanced Restraint Placement
- [ ] PHD (Specify where below)
- [ ] Property Damage Report

- [ ] Photos
- [ ] Drug Test Results
- [ ] NIK Reports (IU)
- [x] Witness Statements
- [ ] Confidential Informant

- [ ] Mental Health Clearances
- [x] Other **Genetec**

| Date Investigation Started: | Date Investigation Concluded: | Infraction #: |
|---|---|---|
| 03/10/18 | 3/11/18 | |

### INVESTIGATING OFFICIAL'S REPORT

Investigating official's report shall include observations and conclusions of the physical and documentary evidence. Identify each item and/or document evaluated. If inmate was served more than three (3) business days after incident, state why. Attach 600AR if necessary. If results of investigation indicate that no disciplinary action is warranted, specify the reason(s) for not pursuing disciplinary action.

Based on Officer Rivera # 6010 written eyewitness account, inmate statements, medical documentation, and the Genetec video, this investigation reveals that On Saturday March 10, 2018 at approx. 0625 hours in Dorm 4Upper a multiple inmate fight occurred between inmates William Javell B/C # 8251800217 NYSID# 02402848Q, CL 7, Non ICR, Non RED ID, Non SRG, VOP; inmate Henderson Pedro B/C # 1001700137  NYSID# 00243466J, CL 9, SRG Blood Hound Brim, ICR Non Enhanced Restraint, Non RED ID, VOP and inmate Best Sean B/C# 8951701554 NYSID# 08859416L, CL-2, SRG Blood Mac Baller Brim, ICR, Non RED ID, Non Enhanced Restraint, VOP.  Inmate  William approached inmate Henderson and began to exchange closed fist punches to each others facial area Inmate Best intervened in the altercation also throwing punches.  The inmate was given several direct orders to stop and did not comply.  After several more direct orders the inmates complied and inmate William was removed from the area.  I recommend inmates William, Henderson and Best be drug tested. I also recommend said inmate for an adjudication hearing on charges #101.12 # 120.10

**Statement of Inmate Charged:**

Inmates refused to give a statement.

### Statement of Witness(es) - (If more witnesses, attach additional sheets)

| Witness Name (Last, First): | Rank/Title, Shield/ID (If staff) B&C#/Sentence# (If inmate): |
|---|---|

Statement (If none, state such):

| Witness Name (Last, First): | Rank/Title, Shield/ID (If staff) B&C#/Sentence# (If inmate): |
|---|---|

Statement (If none, state such):

| Was inmate Mirandized in connection with this Infraction? | [ ] Yes  [x] No | Hearing Recommended? | [x] Yes  [ ] No |
|---|---|---|---|

| Inmate transferred pending hearing? [ ] Yes [x] No | If Yes, Where? | If PHD, check [ ] | Date: | Time: |
|---|---|---|---|---|

| Investigating Official's Signature | Investigating Official (Print Name, Rank and Shield #): |
|---|---|
| C Melendez | Melendez Capt # 650 |

600AR      Department of Correction – Intradepartmental Memorandum      Exhibit J

DATE : April 26, 2018

TO : Deputy Warden In Command Phipps, EMTC (Through Channel

FROM : C.O. Iannozzi # 10331

SUBJECT: **STATEMENT OF DECONTAMINATION**

On    Thursday April, 26    at approximately    1530    hours,
         2018
         (Date)                                  (Time)

I,    C.O. Iannozzi # 10331
      (Name, Rank, & Shield#)

Decontaminated Inmate    Best, Sean B/c: 895170155L
                        (Inmate Name and Book & Case #)

Of    10 upper    in the intake area with cool water and a Large fan.
     (Housing Area & Cell #)

Respectfully Submitted

(Signature)

C.O. Iannozzi #10331
(Print Name, Rank & Shield #)

D00762

• 4.15R



THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

Exhibit K



# DIRECTIVE

| [ ] NEW | [ ] INTERIM | [X] REVISED | SUBJECT | | | |
|---|---|---|---|---|---|---|
| EFFECTIVE DATE 02/24/15 | | TERMINATION DATE / / | | **CHEMICAL AGENTS** | | |
| CLASSIFICATION # 4510R-G | SUPERSEDES 4510R-F | DATED 04/27/12 | APPROVED FOR WEB POSTING [ ] YES [X] NO | DISTRIBUTION D | PAGE 1 OF 19 PAGES | |

| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | AUTHORIZED BY THE COMMISSIONER |
|---|---|
| *[signature]* | *[signature]* |
| MARTIN J. MURPHY, CHIEF OF DEPARTMENT   SIGNATURE | JOSEPH PONTE   SIGNATURE |

## I.   INTRODUCTION

A.   The use of chemical agents has proven to be an effective method in controlling certain situations. However, the use of chemical agents must be carefully evaluated prior to application. Excessive use or prolonged exposure can result in harmful effects to the individuals involved. Therefore, chemical agents shall be used with the utmost discretion. The spirit and intent of this Directive is to permit the Department to employ the use of a tool (chemical agent) that would minimize physical confrontations between staff and inmates thereby reducing physical injuries to both parties.

B.   As delineated in this directive, the procedures for the use of authorized hand-held chemical agents are specifically differentiated from procedures regarding the use of all other approved chemical agents.

## II.   PURPOSE

To establish policy, guidelines and procedures for the use of hand-held aerosols and other authorized chemical agents.

## III.   POLICY

A.   The procedures contained herein shall be strictly complied with by all members of the Department.

B.   Hand-held aerosols and other chemical agents shall only be used when appropriate and in accordance with both New York State Law and Departmental regulations, outlined herein.

C.   Random and arbitrary use of chemical agents is strictly forbidden.

416R

| | EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 2 OF 19 PAGES |

**III.   POLICY (Cont.)**

D.   Unless specifically prohibited by the Chief of Department and/or the Assistant Chief of Security, all facilities and divisions are authorized to use hand-held aerosols.

E.   Hand-held aerosols may be authorized at the command level and shall be a part of the authorized daily uniform and equipment of all Captains and authorized/certified correction officers. Prior authorization from Headquarters and notification to the Central Operations Desk (COD) is not required.

F.   The use of all other chemical agents (other than hand-held aerosols) shall only be authorized by one (1) of the following individuals.

   1.   Commissioner or designee;

   2.   First Deputy Commissioner or designee;

   3.   Chief of Department or designee;

   4.   Assistant Chief; and / or

   5.   Departmental Duty Officer or designee not to extend below the rank of Assistant Deputy Warden.

**IV.   GUIDELINES**

A.   INQUIRY CONCERNING MEDICAL CONTRAINDICATIONS

Prior to the use of any chemical agent (other than the hand-held units MK-3, MK-4, MK-6 and MK-9) against an inmate, the person responsible for such use shall notify facility health services staff to determine from such staff whether there is a medical reason (contraindications) why chemical agents should not be used. In emergency circumstances when a delay in the use of a chemical agent would present an immediate threat of death or serious injury, or would severely threaten the safety or security of the facility, no such notification must be made nor medical clearance obtained.

B.   HAND-HELD CHEMICAL AGENTS

The use of handheld chemical agents is restricted to trained personnel only.

   1.   Type

416R



| EFFECTIVE DATE<br>02/24/15 | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION #<br>4510R-G | CHEMICAL AGENTS | | |
| DISTRIBUTION<br>D | APPROVED FOR WEB POSTING<br>☐ YES — ☒ NO | PAGE 3 OF<br>19 PAGES |  |

## IV.   GUIDELINES (Cont.)

Only Orthochlorobenzalmalononitrile (CS) or Oleoresin Capsicum (OC) contained in an aerosol dispenser in liquid or dust form is authorized for use within the Department.

2.   Authorized Products

Note:   The letters (CS) or (OC) must be legible.

a.   Federal Lab 587 CS dust, large black container with dark blue label.

b.   Security Equipment Corp. Sabre Red MK – 6 OC (10% concentration), black container with light blue label.

c.   Sabre Red Dual Propellant System MK-3 OC (10% concentration), black container with black label.

d.   Sabre Red Dual Propellant System MK-4 OC (10% concentration), black container with black label.

e.   Sabre Aerosol Projector MK-9 and "Cell Buster" – OC (10% concentration) black container with black label.

3.   Anticipated effects of CS include:

a.   Visual impairment (tearing);

b.   Coughing and/or sneezing;

c.   Painful burning of eyes and throat;

d.   Extreme temporary pain or discomfort in all the moist, warm parts of the body including mucous membranes and throat;

e.   Skin irritation including blistering after long exposure;

f.   Compressed chest and panic caused by inability to breathe properly;

g.   Desire but inability to defecate;

416R

| EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|
| CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 4 OF 19 PAGES |

IV.   GUIDELINES (Cont.)

   h.   Possible immobilization; and

   i.   Other individualized side effects.

   Note:   All staff should be aware that some individuals with mental disorders or those under the influence of alcohol or narcotics will be affected by chemical agents; however, they may not show the desired effects.

4.   Anticipated effects of OC include:

   a.   Swelling of the mucous membranes;

   b.   Immediate involuntary closing of the eyes;

   c.   Uncontrollable coughing;

   d.   Gagging;

   e.   Gasping for breath; and

   f.   Sensation of intense burning of the skin and mucous membranes inside the nose and the mouth.

   Note:   All staff should be aware that some individuals with mental disorders or those under the influence of alcohol or narcotics will be affected by chemical agents; however, they may not show the desired effects.

5.   Commanding officers of each facility and division shall designate staff members who shall be authorized/certified to use and/or dispense hand-held aerosols.

6.   Commanding officers of each facility and division shall ensure their Probe Team Supervisors are carrying an operational MK-9 handheld unit when responding to facility alarms. In the event additional MK-9 handheld units are required to be dispatched to the area, the on-duty Tour Commander shall provide the additional MK-9 handheld units as necessary.

   Note:   Commanding officers of each facility and division shall ensure supervisors assigned to the Probe Team have been trained and are currently certified in the use of the MK-9 handheld unit.



| | |
|---|---|
| EFFECTIVE DATE **02/24/15** | SUBJECT |
| CLASSIFICATION # **4510R-G** | **CHEMICAL AGENTS** |
| DISTRIBUTION **D** | APPROVED FOR WEB POSTING  ☐ YES  ☒ NO |

PAGE 5 OF 19 PAGES



416R

## IV. GUIDELINES (Cont.)

7. Certification/re-certification in the use of chemical agents shall be conducted through training programs coordinated by the Correction Academy on an annual basis.

8. Every commanding officer shall ensure that personnel who are responsible for authorizing use of hand-held aerosols, receive instruction as noted in Section IV.B.6.

9. The Control Room Supervisor shall ensure that whenever a handheld unit is utilized during their tour, it shall be immediately taken out of circulation, forwarded to the security office for a new replacement and an entry made in the control room logbook attesting to such. If the Security Office is closed it shall be tagged and set aside in the arsenal for security staff to pick up during their daily inspection of chemical agents.

10. Time permitting, members anticipating the use of aerosols shall make every attempt to remove from the area of potential contamination all persons for whom the administration of the chemical agent is not intended. Medical staff should also be notified to prepare to provide immediate assistance.

## C. CHEMICAL AGENTS - OTHER THAN HAND-HELD AEROSOL

1. Types

Only Orthochlorobenzalmalononitrile (CS) and low toxic or non-toxic smoke are authorized for use within the Department. The following chemical agent delivery systems may be used:

a. Combustion (burning);

b. Aerosol liquid;

c. Aerosol dust;

d. Blast dispersion;

e. Liquid dissemination; or

f. Fog.

2. Color Codes:

416R

| | EFFECTIVE DATE 02/24/15 | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION 4510R-G | CHEMICAL AGENTS | | |
| | DISTRIBUTION D. | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 6 OF 19 PAGES | |

IV.    GUIDELINES (Cont.)

a.    BLUE (CS)

Grenades or projectiles.

b.    YELLOW (Smoke)

Grenades containing low toxic or non-toxic screening smoke.

c.    Any agent (other than hand-held aerosols) marked in a color other than the specified color codes shall not be used.

3.    Authorized Products and Equipment:

Important Note:    Federal Lab and Defense Technology manufacture the authorized products listed below.  This list indicates identical products and their corresponding numbers from both manufacturers. The departmental inventory contains products which indicate either Federal Lab or Defense Technology with corresponding numbers as noted below.

a.    Federal Lab #201-Z one and one-half inch (1 1/2") Gas Gun.

b.    Federal Lab #203A one and one-half inch (1 1/2") Gas Gun.

c.    Federal Lab #450A and Defense Technology #459 Grenade Launcher for #201-Z and 203A Gas Guns.

d.    Federal Lab #457 and Defense Technology #1270 Grenade Launcher Cartridge for #201-Z and 203A Gas Guns.

e.    Federal Lab #501 and Defense Technology #1142 Muzzle Dispersion Cartridge: dust type.

f.    Federal Lab #560 and Defense Technology #1182 Long Range Projectile: combustion type, range: 150 yards.

g.    Federal Lab #570 and Defense Technology #2002 Short Range Projectile: combustion type, range: 100 yards.

h.    Federal Lab #530 and Defense Technology #1152 Barricade Projectile: combustion type.

416R

| EFFECTIVE DATE 02/24/15 | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 7 OF 19 PAGES | |



IV.   GUIDELINES (Cont.)

  i.   Federal Lab #555 and Defense Technology #1072 Speedheat Grenade: combustion type.

  j.   Federal Lab #515 and Defense Technology #1026 Triple Chaser Grenade: combustion type.

  k.   Federal Lab #517 and Defense Technology #1032 Flameless Grenade: combustion type.

  l.   Federal Lab #514 and Defense Technology #1042 Blast Dispersion Grenade: dust type.

  m.   <u>Federal Lab Golden Eagle #3032 Pepper Fogger Generator: fogger type.</u>

  n.   Federal Lab #110-HC and Defense Technology #1083 Smoke Grenade: combustion type, low toxic smoke.

  o.   Federal Lab F-8-SAF and Defense Technology #1063 Smoke Grenade: combustion type, non-toxic smoke.

  Note:   Smoke Grenades are for outdoor use only.

  p.   Ispra Model 5 Protectojet Ejector: CS filled.

  q.   Sabre Water Based (H20) Series MK-60 : OC

  r.   Sabre Aerosol Projector MK-9 and "Cell Buster": OC.

  Note:   The Cell Buster consists of an 18.5 oz MK-9 canister with hose and wand attachment.

  s.   Pepperball SA-200 Launcher System (for ESU use only).

  Note:   Use of the Pepperball SA-200 Launcher System is outlined in Operations Order 14/07 entitled "Pepperball System," dated 8/13/07.

4.   Prior authorization to use agents (other than hand-held aerosols) must be obtained from one (1) of the aforementioned individuals noted in Section III.F. of this directive.

416R

| EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|
| CLASSIFICATION 4510R-G | **CHEMICAL AGENTS** | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 8 OF 19 PAGES |

IV.  GUIDELINES (Cont.)

> Note.   Combustion type devices may cause fires if dispensed in close proximity to flammable objects or structures.

5.   The command unit head or designee shall notify COD and provide the following information:

   a.   Reason for the use of the chemical agent (if other than hand-held aerosols).

   b.   Approximate number of inmates involved.

   c.   Area that the chemical agent is to be dispensed in.

   d.   Any other information that would assist one (1) of the authorizing individuals in rendering an objective decision.

> Note:   In an emergency, if time precludes the transmittal of notification, chemical agents may be used; however, attempts shall be made to notify the COD during the course of utilizing the agents.  In any case, COD shall be notified immediately after the chemical agent is dispensed.

6.   Prior to using chemical agents (other than hand-held aerosols) the authorizing supervisor from the facility or division shall notify the highest ranking medical staff person on-duty to have adequate medical personnel standing by and to assign medical personnel to triage these cases.  In addition, medical staff will be prepared to provide medical assistance to individuals who may require medical treatment due to exposure to chemical agents.

7.   During the use of chemical agents (other than hand-held aerosols), a certified supervisory officer shall be present and will direct the dispensing of said agent and all required decontamination procedures, contained here in.

8.   Commanding officers of each facility and division shall designate staff members who shall be authorized to use and/or dispense chemical agents (other than hand-held aerosols) and any related equipment.

9.   Certification/re-certification in the use of chemical agents shall be conducted by the Correction Academy on an annual basis.

| EFFECTIVE DATE 02/24/15 | SUBJECT | CHEMICAL AGENTS | |
|---|---|---|---|
| CLASSIFICATION # 4510R-G | | | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 9 OF 19 PAGES | |

## IV. GUIDELINES (Cont.)

10. Commanding officers of each facility and division shall ensure that personnel who are responsible for authorizing and/or using chemical agents receive instruction as noted in Section IV.B.6

### D. STORAGE OF ALL AGENT EQUIPMENT

1. Chemical agent munitions and related devices shall be stored within officially designated areas only and be maintained in a safe and secure manner. Such storage shall ensure that only persons trained in the use of such articles have access to them.

2. An officer assigned to the Security Office in each facility will be responsible for the day-to-day handling of all chemical agents and related equipment and will retain a copy of each quarterly inspection performed by ESU. He/she shall be trained annually in the Department's prescribed chemical agent course.

3. To avoid corrosion of firearms, CS/OC chemical agent munitions shall not be stored in the same enclosure with firearms.

4. The designated area for CS chemical agent munitions storage shall be equipped with a ventilating fan and duct system.

### E. QUARTERLY INSPECTION OF CHEMICAL AGENTS AND RELATED EQUIPMENT

1. Quarterly inspections of all chemical agents and related equipment shall be performed and documented by the Emergency Service Unit. A written record of all such inspections shall be maintained which shall include, but need not be limited to:

   a. The name of the person(s) inspecting the articles;

   b. The date of inspection;

   c. The type and quantity of articles stored and inspected; and

   d. A description of their condition.

2. No chemical agent products should be used beyond the expiration date except for training purposes.

3. All expired chemical agent products shall be separated from current stock and transferred by the Emergency Service Unit for disposal.

416R

| | EFFECTIVE DATE 02/24/15 | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | |  |
| | DISTRIBUTION B | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 10 OF 19 PAGES | |

IV.  GUIDELINES (Cont.)

4.   All defective chemical agent equipment shall be tagged and immediately separated from active arsenal stock. The facility shall contact the Special Operations Division (SOD) to arrange a transfer of the equipment for disposal.

5.   Equipment in need of repair shall be transferred by the Emergency Service Unit accompanied with a written memorandum (600-AR) to the SOD Commanding Officer describing the existing problem.

V.  PROCEDURE

A.   HAND-HELD AEROSOL

1.   General

a.   Certified correction officers designated by the commanding officer of the facility and all certified Captains shall be permitted to use the approved hand-held aerosol dispenser.

b.   Prior to using the hand-held aerosol dispensers, attempts should be made to resolve the situation by other means (e.g., interpersonal communication skills, supervisory response, etc.). Further, the subject shall be warned that chemical agents will be utilized if the subject continues his/her misconduct. The "device" shall be used with the utmost discretion.

c.   Facilities must develop an approved secure area in the Control Room, to permit the proper storage and accountability of hand-held product. Staff shall not store hand-held aerosol dispensers in their lockers.

d.   Whenever any member is issued and receives a departmental hand-held dispenser and holster, the following notations shall be made in the designated logbook:

i.   Name, rank, and shield number of each person issued a canister and holster.

ii.   Date and time the equipment was issued and returned.

iii.   Identification numbers of each piece of equipment (canister and holster).

| | EFFECTIVE DATE 02/24/15 | SUBJECT | | |
|---|---|---|---|---|
| 416R | CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 11 OF 19 PAGES | |

## V.   PROCEDURES (Cont.)

e.   Each facility shall maintain a master list of personnel who are authorized/certified to use hand-held dispensers.

f.   Hand held units (CS/OC) may be used outdoors.

2.   Authorized Use

The use of a hand-held dispenser is authorized in the following situations:

a.   To defend oneself.

b.   To defend another employee, inmate, or visitor.

c.   To prevent a serious crime, including inmate disturbances or escapes.

d.   To maintain the safety and security of the facility.

e.   To enforce Department rules, facility regulations, and court orders where necessary to promote the good order and safety of the facility.

f.   To take an inmate into custody.

g.   To prevent serious damage to property.

h.   To prevent an inmate from harming himself/herself.

Note:   The MK-6 hand-held aerosol unit is not as effective against large groups or in large areas. It is more effective in one-on-one or one-on-two situations, and in small cell areas.

3.   Prohibited Use

The use of a hand-held chemical agent is prohibited in the following situations:

a.   To force an inmate to comply with an officer's verbal orders, except in those situations outlined in the preceding Section V.A.2.;

b.   To solicit information;

c.   To discontinue an argument between inmates;

d.   As a threatening gesture; or

416R

| | EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # 1510R-G | CHEMICAL AGENTS | |
| | DISTRIBUTION "D" | APPROVED FOR WEB POSTING  ☐ YES  ☒ NO | PAGE 12 OF 19 PAGES |

## V.  PROCEDURES (Cont.)

   e.   To punish an inmate.

   4.   Safety Precautions and Use

      a.   Prior to using hand held chemical agents, the subject shall be warned that chemical agents will be utilized if the subject continues his/her misconduct.

      b.   Hand-held units, when used, shall be directed at the appropriate area of the subject as follows:

| MAKE AND MODEL | AIM |
|---|---|
| i.   Federal Lab #587 (CS) Dust | Above the head |
| ii.   Sabre Red MK-3, MK4, and MK-6 O/C | Face |
| iii.   Sabre Aerosol Projector MK-9 OC | Face |

      Note:   Do not aim or spray CS agents directly into eyes.

      c.   When using the dust hand-held unit, it shall be directed above the head of the subject.

      d.   Hand-held units should not be used at a distance of less than three (3) feet.

      e.   Liquid hand-held units have a maximum effective range of twelve (12) to fifteen (15) feet.

      f.   Dust hand-held units have a maximum range of approximately fifteen (15) feet in still air.

      g.   Limit application of the MK-6 hand-held unit to a single, two (2) second burst.  If necessary, a total of three (3), two (2) second bursts can be employed.

      g.   Limit application of the 587 (CS) dust hand-held unit to a single, two (2) second burst.  If necessary, a total of three (3), two (2) second bursts can be employed.

416R

| EFFECTIVE DATE 02/24/15 | SUBJECT | | |
| CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING [ ] YES [X] NO | PAGE 13 OF 19 PAGES | |

## V. PROCEDURES (Cont.)

i. The Sabre Aerosol Projector MK-9 OC should not be used at a distance of less than six (6) feet. The units have a maximum range of twenty-five (25) feet. Dispersion directed at an inmate shall be limited to three (3), two (2) second bursts.

j. The Sabre Aerosol Projector MK-9 OC is utilized in conjunction with the Cell Buster attachment (hose and insertion wand). The prescribed method of delivery is to insert the wand under a cell door or via the food slot and deploy the chemical agent for three (3) continuous seconds. If the desired effect is not achieved, you may apply one additional application for three (3) continuous seconds. No more than two application of chemical agent as prescribed above may be utilized. The Cell Buster is only to be used against potential assailants behind cell doors.

Note: When the prescribed method of insertion is obstructed, the wand may be inserted into any section of the cell door that is unobstructed and will allow the proper deployment of the chemical agent.

Caution: Do not spray subject at a range less than three (3) feet. Severe eye, skin irritation, or other injury may occur.

k. If the desired results are not achieved, the use of the dust unit is recommended. However, this is predicated on a supervisor's approval.

l. Under no circumstances shall OC or CS be used in conjunction with the Electronic Immobilization Shield as noted in Directive #4600, entitled ELECTRONIC IMMOBILIZATION SHIELD, page 3, subsection IV.B

m. A controlled avenue of exit must be identified.

Note: Person(s) exposed to CS or OC must not be left unattended.

5. Individual Decontamination and Medical Attention

a. Remove the individual(s) from the contaminated area.

b. Advise the individual(s) not to rub his/her eyes. Salves, oil or grease medications, or creams (e.g., butter, cold cream, petroleum jelly, lanolin, etc.) should not be applied to contaminated areas on the body. These applications tend to further entrap the agent causing intense irritation and blistering of the skin.

416R

| | | |
|---|---|---|
| **EFFECTIVE DATE** 02/24/15 | **SUBJECT** | CHEMICAL AGENTS |
| **CLASSIFICATION #** 4510R-G | | |
| **DISTRIBUTION** D | **APPROVED FOR WEB POSTING** [ ] YES [X] NO | **PAGE 14 OF 19 PAGES** |

## V.  PROCEDURES (Cont.)

c.  Do not bandage or cover the affected skin areas.

d.  If possible, bring the individual(s) out into fresh air or use a fan and have him/her face the wind.

e.  Have the individual(s) remove contaminated clothing.  Clothing should be washed or destroyed.

f.  The subject(s) shall shower or wash in cool water (flush contaminated skin areas with large quantities of cool water).  Calm and reassure subjects that they will receive medical attention and decontamination.

g.  After the individual decontamination has been completed, the area supervisor shall ensure that prompt medical attention is given to the individual(s) affected by the dispensing of the chemical agent.    This prevents the contamination of the medical environment.

Note:  Severe eye and/or skin irritation with CS may occur if hand-held chemical agents are dispensed at a distance less than three (3) feet of the subject.  If at any time it is apparent that the chemical agent has been used at a range closer than three (3) feet and has affected an individual's eyes, immediate medical attention shall be obtained for the person in question (flush with large amounts of cool water).

h.  Under no circumstances shall the subject(s) remain in the contaminated area for a period exceeding five (5) minutes after the hand-held aerosol application.  In the event the subject(s) refuses to leave the area, other appropriate means shall be employed to remove the subject within the prescribed time period.

6.  Whenever a hand-held chemical agent is utilized, the following shall be complied with:

a.  Immediately report the incident to a supervisory officer.

b.  A notation of the incident shall be made in the memo-book of the officer/supervisor who dispensed the agent and countersigned by the investigating supervisor.

c.  Record the incident in the area and the Central Control Room logbook.

| EFFECTIVE DATE 02/24/15 | SUBJECT | CHEMICAL AGENTS |  |
|---|---|---|---|
| CLASSIFICATION # 4510R-G | | | |
| DISTRIBUTION D | APPROVED FOR WEB POSTING [ ] YES [X] NO | PAGE 15 OF 19 PAGES | |

## V.    PROCEDURES (Cont.)

d.    Prepare "Use of Force Reports" (#5006 A-D).

e.    Ensure all contaminated persons (inmates and staff) receive immediate medical treatment.

f.    Obtain all applicable medical reports and evaluations from facility medical personnel.

g.    Prepare any other reports and forms as required by Department regulations.

7.    Review Of Hand-Held Chemical Agents Utilization (written evaluations)

a.    Each incident involving the use of the hand-held chemical agents including accidental discharge shall be reviewed by the respective commanding officer and Deputy Warden for Security.

b.    The commanding officer and the Deputy Warden for Security shall review the incident to ascertain whether or not Departmental procedures governing the use of the hand-held chemical agents were adhered to.

c.    Said review shall take place within twenty-four (24) hours or no later than the next business day following the incident.

B.    CHEMICAL AGENTS - OTHER THAN HAND-HELD AEROSOL

1.    General

a.    Whenever chemical agents are to be used in congregate areas, those individuals who request to be removed shall be immediately evacuated unless circumstances preclude this action.

b.    Chemical agents can be extremely dangerous to persons (staff and inmates) known to have heart or respiratory ailments. Every effort shall be made to safeguard these individuals from being exposed to chemical agents.

c.    Prior to using chemical agents (other than hand-held) the facility's ventilation system should be shut down.

d.    The following precautionary measures should be taken prior to entering an area with a concentration of chemical agents:

416R

| EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|
| CLASSIFICATION # 4510R-G | CHEMICAL AGENTS |  |
| DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 16 OF 19 PAGES |

## V.   PROCEDURES (Cont.)

    i.    Contact lenses and eyeglasses should be removed.

    ii.    Oil-based makeup or lotions should be removed from exposed skin areas.

    iii.    Jewelry should be removed (including watchbands).

    iv.    Tight-fitting clothing around the neck, wrist, and ankle areas should be loosened but skin should remain covered where possible.

  e.    Precautions shall be taken to ensure that chemical agents do not contaminate hospital, clinic, and other medical areas.

  f.    In any situation where chemical agents are being used, a controlled avenue of exit shall be provided for the inmates and other personnel   All staff in or entering an area where chemical agents have been or are about to be employed must wear a protective mask.

  g.    When using chemical agents, all personnel present shall be issued protective masks and must wear them.

  h.    Combustion and/or low-toxic smoke chemical agents are designed for use against large groups and in outdoor areas.  In a single cell or small room situations, or in cases where it is desirable to limit the size of the affected area, these types of agents should not be employed.

Note:    When selecting a product(s) to use, care must be taken to avoid introducing excessive volumes.  Consider the size of the area, number of people involved, ceiling height and, in ounces, weight of the product(s).

2.    Individual Decontamination and Medical Attention

  a.    Remove the individual(s) from the contaminated area to fresh air or a fan where possible.

  b.    Advise the individual(s) not to rub their eyes.  Salves, oil or grease medications or creams (e.g., butter, cold cream, vaseline/petroleum jelly, lanolin, etc.) should not be applied to contaminated areas on the body. These applications tend to further entrap the agent causing intense irritation and blistering of the skin.

| | | |
|---|---|---|
| EFFECTIVE DATE **02/24/15** | SUBJECT | |
| CLASSIFICATION # **4510R-G** | CHEMICAL AGENTS | |
| DISTRIBUTION ...D. | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 17 OF 19 PAGES |

## V.   PROCEDURES (Cont.)

c.   Do not bandage or cover the affected skin areas.

d.   If possible, bring the individual(s) out into fresh air or stand the individual(s) in front of a fan for approximately three (3) to five (5) minutes.  Said individual(s) should face the wind and shake any agent particles from hair and clothing, force their eyes open and allow them to tear.  Advise them not to rub their eyes.

e.   Have the individual(s) remove contaminated clothing.  Clothing should be washed or destroyed.

f.   In cases of extreme exposure, the subjects shall shower or wash in cool or lukewarm running water using non-deodorant soap.  Showers must have open drains since CS is not soluble in water and will float.  When CS has prolonged contact with skin, burns may result.

Caution:  Advise individual(s) not to take baths.

g.   Subjects may also be provided with cool water containing a five percent (5%) solution of sodium bicarbonate (baking soda) and instructed to apply to irritated skin areas.

h.   The area supervisor shall ensure that prompt medical attention is given to all persons affected by the dispensing of chemical agents

Note:   In the event of severe eye and/or skin irritation occurrences, or any other apparent serious reaction to the chemical agents, all affected subjects shall receive immediate medical attention.

i.   Under no circumstances shall an individual remain in the contaminated area for an extended period of time.  In the event an individual refuses to leave the area, other appropriate means shall be employed to remove said individual or counter the chemical agent's effects via ventilation /decontamination.

3.   Physical Plant Decontamination

The command in which the chemical agent was dispensed shall be responsible for affecting all decontamination procedures as follows:

a.   All inmates shall be removed from the contaminated area(s).

416R

| | EFFECTIVE DATE 02/24/15 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # 4510R-G | CHEMICAL AGENTS |  |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES  ☒ NO | PAGE  18 OF 19 PAGES |

## V.   PROCEDURES (Cont.)

b.   All spent CS casings shall be removed from the affected area(s) and placed in airtight containers.

   Note:   Spent CS casings, as well as the affected area, are a continuing source of contamination.

c.   Ventilate the contaminated area(s).

d.   If CS dust was employed, a commercial water vacuum shall also be used in the decontamination process.   If unavailable, a standard vacuum cleaner shall be used (after dampening the dust/dirt collecting bag).

   Extreme caution shall be taken to avoid electrical shock or recontamination via the vacuum.

e.   All contaminated surfaces shall be washed with light duty detergent. Mixing ratio:  two (2) measuring cups of light duty detergent per gallon of water, or two (2) cups of heavy duty detergent per gallon of water. The water should be hot.

f.   Food that is unprotected, exposed, in plastic containers or cellophane wrappings, must be disposed of, no exceptions.

g.   Food enclosed in sealed cans shall be saved for future use, after said containers have been thoroughly cleansed.

h.   Remove and air out all clothing/bedding (if applicable) and wash, or destroy if heavily soiled.

i.   Where possible, after all of the aforementioned decontamination procedures have been affected, all windows in the area should be closed. The area shall be heated to a constant 95 degrees for three (3) to four (4) hours.  In the event the 95 degree temperature cannot be achieved, a minimum of 80 to 85 degrees for an extended period of at least six (6) hours is necessary.  If the existing heating system cannot reach an 80 degree temperature, measures shall be taken to supplement the heating system (e.g., "space" heaters, electric heaters, etc.).  Upon completion, open one (1) window and utilize a large fan to blow out any remaining CS. If any CS residue still remains, re-vacuum with the commercial water vacuum.

| | EFFECTIVE DATE 02/24/15 | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # 4510R-G | CHEMICAL AGENTS | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 19 OF 19 PAGES | |

## VI. REFERENCES

A. Directive #5006R-C, Use of Force, dated 01/31/08 (as amended).

B. Directive #5000R-A, Reporting Unusual Incidents, dated 11/19/04 (as amended).

C. Directive #4600, Electronic Immobilization Shield, dated 07/09/98.

D. Operations Order 14/07, Pepperball System, dated 08/13/07.

E. New York State Penal Law, Article 35 - Defense of Justification, section 35.05, Justification;

F. New York State Correction Law, Subsection 45, Part 6.

G. New York State Correction Law, Subsection 137, Part 5.

H. State Commission of Correction, Subtitle AA, Part 7063 - Chemical Agents

Note: In the event that a reference is superseded, the successor document shall apply.

## VII. SUPERSEDES

A. Directive #4510R-F, Chemical Agents, dated 04/27/12.

B. Any other Directive, Operations Order, Teletype, Memorandum, etc. that may be in conflict with the policies and procedures outlined herein.

## VIII. SPECIAL INSTRUCTIONS

A. Within ten (10) calendar days of the effective date of this order, all Commanding Officers shall implement a Command Level Order incorporating the policy and provisions outlined herein.

B. One (1) copy of the command level order shall be forwarded to each respective Division Chief.

C. All facility managers and supervisors shall ensure strict enforcement of the policy, guidelines and procedures noted herein.

Exhibit ①

To: ORC J. Brown

From: Sean Best - 09-A-1969
        H-B-A-K-8

Re: Face 2 Face                          October 2, 2018
     document Request

Dear Madam,
                        Peace & Blessings. I write
to you Now to request an Emergency
Meeting. I Have been told you are my
New ORC. That's a blessing as you are
the only person that has assisted me in
my Never ending Quest for Freedom.
        My Max date has came and went,
I've written to Inmate Records, Albany,
Your Office requesting Any and all
documents pertaining to my Final Hearing
to No Avail. Everyone is telling me that
I recieved 18 months yet No one has
Furnished Any documents stating this. I
am Now personally writing to you for a
copy of these documents as well as
a copy of the "Divisions status Inquiry
Summary". Please Also provide me with
an updated Copy of my "Time computation
Sheet.

Page 2

Ms. Brown, again I am on a mission for my freedom and Your assistance would be greatly appreciated, and again if at all possible I'd like for You to allow me a face to face meeting so that we can get this resolved as soon as possible.

Thank You

Respectfully

```
10/11/18                RECEPTION/CLASSIFICATION SYSTEM
11:34:34                  LEGAL DATE COMPUTATION      BY: CCNSKML
                                           COMP DATE/TIME: 06/07/2018  12:40P
            TYPE P01  DET-IND MIX RETURNED PRSV NO NT

      DIN:  09A1969  NAME: BEST, SEAN                 NYSID:  08859416L
      DATE RECEIVED: 04/16/2009
      CURRENT LOCATION:  SING SING GN - 0A-KS-09S


   HEARING DATE              2019 03    TIME ALLOWANCE COMM DATE
   HEARING TYPE              CRC        TIME ALLOWANCE COMM TYPE    FMAX
   TENTATIVE RELEASE DATE    2019 05 27 POST-RELEASE SUPERVISION    0005 00 00
   GRADUATION DATE                      PRS MAXIMUM EXPIRATION DT   2022 03 23

   PRIOR MAXIMUM EXP DATE    2016 09 12 PRIOR PRS MAXIMUM EXP DT    2020 12 16
   DATE RELEASED           -2015 09 10  DELINQUENCY DATE          -2017 05 21
                           ---- -- --                             ---- -- --
   PRIOR TIME OWED MAX     =0001 00 02  PRS TIME OWED             =0003 06 25
   PRIOR PAROLE JAIL TIME  -0000 02 29  MAXIMUM EXPIRATION DATE   +2018 08 28
                           ---- -- --                             ---- -- --
   TIME OWED MAX           =0000 09 03  PRS MAXIMUM EXPIRATION DT =2022 03 23
   PAROLE JAIL TIME        -0000 06 10
                           ---- -- --
   NET TIME OWED MAX       =0000 02 23
   DATE RETURNED           +2018 06 05
                           ---- -- --
   MAXIMUM EXPIRATION DATE =2018 08 28

   PRIOR PAROLE ELIG DATE   2015 07 20
   DATE RELEASED          -2015 09 10
                          ---- -- --
   TIME OWED MIN          =0000 00 00




   PAROLE ELIGIBILITY DATE   =2015 07 20

   COMMENTS:
```

```
   JAIL TIME(S) IN DAYS:
      PAROLE JT =  190

   DIST:  IRC (1), GUID & COUNS UNIT (1), INST PAROLE (1), INMATE (1)
```

State of New York
**Department of Corrections
& Community Supervision
SING SING CORRECTIONAL FACILITY**
354 HUNTER STREET
OSSINING, NEW YORK 10562-5442
914-941-0108

Anthony J. Annucci                                                    Michael Capra
Acting Commissioner                                                  Superintendent

# Memorandum

February 01, 2019

To:     Best, S. #09A1969: HBA-K-09

From:   Q. Quick, IGP Supervisor

Subj:   **GRIEVANCE STATUS**

Be advised,

In regards to your 1/23/19 letter in regards to the status of your grievances. Grievance #SS60105-18 was heard on 10/02/18 and never appealed therefore it was closed on 10/31/18. #SS60175-18 was Passed Thru due to it being untimely on 9/28/18 and answered by the Superintendent on 10/10/18 however it was never appealed to CORC. #SS60176-18 was heard on 10/11/18 and passed thru to the Superintendent on 10/11/18. This was answered on 11/1/18 and appealed to CORC on 11/19/18. As for grievance #SS60303-18 it was heard on 12/6/18 and dismissed. #SS60514-18 was Passed Thru to the Superintendent on 12/6/18 and is awaiting a response. #SS60515-18 was also Passed Thru to the Superintendent on 12/6/18 and is awaiting a response. As for #SS60516-18 this was heard by the committee on 12/13/18 and dismissed. Grievance #SS60623-19 was heard on 1/31/19 and never appealed as of yet. As for Grievance #'s SS60626-19 and SS60664-19 these are open and pending investigation.

File.

Inmate Grievance Complaint
Sean Best · 02.2.1969
Doc  42A·K·8
date  September 24, 2018
Advisor = No                              Exhibit O

Description of Incident

        I received my time computational
Sheet(s) (1 at Downstate) and the other
from Sing Sing corr facility. It states
that my maximum Expiration date
was August 28, 2018. I wrote to
my counsellor, DSS Royce, and inmate
records, trying to get to the bottom
of why I have not been released.
The only person to write me a response
was DSS Royce, stating they gave me
my Post Release Supervision time.
        This made no sense to me. I saw
my counselor today who explained
to me that according to the (TRC)
and the computer (screen), after my
Final Revocation Hearing on May 27, 2018
(at which time I was given a reserved
decision) I was found guilty of the
lone charge of Record. She further
stated that according to the "PAR"
screen, on May 31st, 2018 my violation
was sustained and I was given an
18 month Hold, with "No Board Action"
and a Tentative Release Date of
May 27, 2019.
        I Explained to her that
according to Executive Law 259(I)

Inmate Grievance Complaint                    page 2

[3] (F) [xi] also 9 NYCRR 8005.20
[F] provides that an administrative
law Judge Sustaining charges of parole
violations "Must prepare a written
statement to be made to the alleged
violator And his counsel indicating
the evidence relied upon and the
reasons For revoking. Parole"

Directive no 9360 dated 3/05/15
Section (2) Policy States An inmate has
a Statutory right to Appeal — "A
decision by one of the Parole Board's
Administrative Law Judges that revokes
his/her Community Supervision pursuant
to Executive Law § 259-I (3)

It Further States that Form #8360-
ACS Must Be Filed with the Parole
Board's Appeals unit within 30 days
of "Reciept" of the decision revoking
Community Supervision.

"It is the Policy" of the (Docs)
to "Ensure" that the Notice of Appeal
For is made available to "Violators
who have had their Community Supervi-
sion revoked

Section (3) of Directive 8360 which
is The Procedure For Filing an Appeal
(#2) That the (PVU) Parole Violation
Unit staff "Shall" "Ensure" that Form
# 8360-ACS' is attached to the the
Parole Revocation Decision Notice For
"All" revocation cases. The Notice of
Appeal Form shall be provided to

Inmate Grievance Complaint                    page 3

adjudicated parole violators at "THE
Same time they are provided with
the parole Revocation Decision notice."
         I Have NEVER recieved
ANY of the Aforementioned documents
that Are mandated. I never got
them at my hearing Nor did I
Ever Recieve these Documents which
are deemed "legal Mail" and Must
be signed For via mail. I wrote
to the Facility Parole officer to no
avail. I wrote to NYS Board of parole,
Appeals unit - At NYSDOCS Headquarters to
no avail. I now write this grievance
to resolve this issue. and also as a
mandated pre-requisite to the
Forthcoming civil litigation For the clear
deliberate Violation of my Due Process
Rights.
         This Grievance is timely and in
accordance with IGRC policy and
Directives. Although Parole has a Mechani-
sm For appeal procedures I was not
afforded that, and now I'm being held
Illegally. and past my Max Date of
August 28, 2018

Relief Requested -
                    To be Released immediately
back to community Supervision and have
all records of this violation Expunged From
my Records, OR in the interim be
Furnished all Relevant Afore Mentioned
DOCUMENTATION.          Very Truly [signature]

Exhibit 1 of 3

_Inmate Grievance Complaint_

SEAN BEST - 09-9-1969

D.c. 43A-K-8

Date - September 24, 2018                    6076-18

Advisor - No

RECEIVED

SEP 23 2018

SING SING I.G.P.

_Description of Incident_

        I recieved my time computation
Sheet(s) (1 at Downstate) and the other
from Sing Sing Corr Facility. IT STATES
that My Maximum Expiration date
was August 28, 2018. I wrote to
My Counselor, DSS Royce, and INMATE
records, trying to get to the bottom
of why I have NOT been released.
THE only person to write me a response
was DSS Royce, STATING they gave me
My Post Release Supervision time.
        THis made no sense to me. I saw
My Counselor today who explained
to me THAT according to the (IRC)
and the computer (screen, after my
Final Revocation Hearing on MAY 27,2018
(at which time I was given a reserved
decision) I was found guilty of the
Lone charge of Record. She further
STATED that according to the "PAR"
Screen, on MAY 31ST,2018 My violation
was sustained and I was given AN
18 Month Hold, with "No Board Action"
and a TENATIVE Release Date of
MAY 27, 2019.
        I explained to her that
according to Executive Law 259(I)

60176-8  2of 3

Inmate Grievance complaint                    page 2

[3] (F) [Ex.] also 9 NYCRR 8005.20
[F], provides that an administrative
law Judge sustaining charges of parole
violations "Must prepare a written
statement to be made to the alleged
violator And his counsel indicating
the evidence relied upon and the
reasons for revoking ... Parole"

RECEIVED
SEP 23 2018
SING SING | C.F.

        Directive No. 8360 dated 3/05/15
section (2) Policy states An inmate has
a statutory right to Appeal ... "A
decision by one of the Parole Board's
Administrative Law Judges that revokes
his/her Community supervision pursuant
to Executive Law § 259-I (3)

        It further states that Form #8360-
ACS Must Be filed with the Parole
Board's Appeals unit within 30 days
of "Reciept" of the decision revoking
community supervision.

        "It" is the Policy" of the (Docs)
to "Ensure" that the Notice of Appeal
For is made available to "Violators
who have had their Community Super-
vision revoked

        Section (3) of Directive 8360 which
is the Procedure For Filing an appeal
(#2) That the (PVU) Parole Violation
Unit staff "shall" "Ensure" that Form
#8360-ACS' is attached to the the
Parole Revocation Decision Notice For
"All" revocation cases. The Notice of
Appeal Form shall be provided to

## Inmate Grievance Complaint                    page 3

adjudicated parole violators at "the Same time they are provided with the parole Revocation Decision notice." I Have NEVER recieved ANY of the Aforementioned document that Are MANDATED. I never got them at my hearing Nor did I ever Recieve these Documents which are deemed "legal Mail" and must be Signed For VIA Mail. I wrote to the Facility Parole officer to no avail. I wrote to NYS Board of parole, Appeals unit - At NYSDOCCS Headquarters to no avail I Now write this grievance to resolve this issue, and also as a Mandated pre-requisite to the Forth coming civil litigation For the clear deliberate Violation of my Due Process Rights.

   This Grievance is timely and in accordance with DOCCS policy and Directives. Although Parole has a mechanism For appeal procedures I was not afforded that, and Now I'm being held Illegally and past my MAX Date of August 28, 2018

## Relief Requested -

   To be Released immediately back to community Supervised and have all records of this violation Expunged From my Records, OR in the interim be Furnished all Relevant Afore mentioned DOCUMENTATION.  Very Truly   ___ Best

RECEIVED
SEP 23 2018
SING SING I.G.P.

*Exhibit Q*



# Corrections and
# Community Supervision

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

**August 9, 2018**

Best, S 09A1969
OB-ZN-50S

**Re:   FOIL Log No. SS-0880-18**

Dear Mr. Best,

This is in response to your New York State Freedom of Information Law request for a copy of the Marriage license, time computation sheet, sentencing & commitment papers and movement and control sheet.

We are attempting to determine what, if any, records are available concerning your request.  We anticipate a reply should be forwarded to you within 20 days of the date of this letter unless you are notified otherwise in writing.

Sincerely,

L. Varghese
Foil Officer

CC:   FOIL Records

---

If you do not receive a response or delay notification by the date specified, you may appeal by writing the Office of the Counsel & FOIL Appeals Officer, NYS Department of Corrections and Community Supervision, The Harriman State Campus, 1220 Washington Avenue, Albany, New York, 12226-2050.

In appeal correspondence, please clearly note your name, DIN number, facility from which records were requested, and the FOIL Log Number provided.

To: L. Varhose - FOIL Officer

From: Sean Best - 02A-1969

Re: FOIL Log No. - SS-0880-18

September 6, 201

Dear Mr/Ms. Varhose

You sent me a "To, From" on 8/4/18 acknowledging my request for ① my marriage license ② time computation sheet ③ sentence and commitment papers, and ④ my movement and control sheet.

You explained it would be up to 20 days for me to receive a reply - It's been appx 30 days and I've not heard anything from you. I need those things for litigation purposes, as they are departmental records in your custody. I don't understand the delay?

I humbly request a response as expeditiously as possible.

Thank you.

Respectfully

Sean Best

Exhibit Q

To: FOIL OFFICER L. VARGHESE

FROM: SEAN BEST · 09-2-1969

Re: GRIEVANCE # 60176
      Foil # SS-0880-18

DEAR MADAM,

I AM requesting from you, pursuant to FOIL, all documents pertaining to grievance # 60176, includ but not limited to the (3) responses from SORC. PIAZZA.

I am currently in litigation and these documents are required. I hope to recieve them Asap.

I am also writing to you a third time pertaining to Foil # SS-0880-18 which you told me I would have a reply by Aug 29 20. It is now October 16th 2018 and I have yet to hear back from you? I'd like a status on this request?

Your assistance in these matters would be greatly appreciated.

                        Very Truly,

cc\ Superintendent.

                        ___ Best

To: Superintendent
From: Seas Rust. 09.a1a69 - 4BA-K.9.

Re: FOIL.

10/16/18

Dear Sir,

I am requesting from you pursuant to FOIL any and all documents for Grievance # 60196.

I am requesting these documents from you because I wrote to the FOIL officer on several occasions to no avail, and I need these documents anon.

I also write to you because I put in a FOIL Request # SS-0880-18 which I was told I'd have a response by August 29, 2018, yet it is now October 16, 2018 and I've yet to receive anything.

You are the leader & Boss of this Jail as so I am putting you on notice that I need all the aforementioned documents for litigation purposes and they need to be preserved, and for me to be furnished with a copy asap?

I thank you in advance for your assistance.

Respectfully,

To: IGP : Supervisor Ms. Quick

From: Sean Best - 09-A-1969

Re: Grievance # 60176

Dear Madam,

I Humbly request the (3) responses from Former SORC Piazza, pertaining to the Above referenced grievances, pursuant to FOIL.

I wrot the FOIL officer to no avail documentat.

And as these

I Tha

assistance

To: Ms. A. King, ORC
   Building 8
   First Floor

From: Soas Best  09-A-1969 - HBA - K-9

Ms. King,
              Peace & Blessings. I
recieved your correspondence. I
appreciate you. However I write to
you now because I am missing the
most vital documents I need.
              I absolutely need those (3)
responses from former Soze Pfazz
that were read at my grievance
hearing which you attended
              These 3 items are imperative
in my plight for justice & freedom.
Not only do they bolster my claims,
but they will also clarify the docs
already in my possession.
              You heard with your own ears
and saw with your own eyes, I
am not suppose to be here. I humbly
ask you to please help me get back
to my life, I'm in school, and I
am a business owner. I also work
with the youth. I don't have time
for prison.
              Your assistance in these
matters will be greatly appreciated.
     If possible please schedule me
for a meeting A.S.A.P.
                              Respectfully
                                       S.A.

**State of New York**
**Department of Corrections**
**& Community Supervision**
**Sing Sing Correctional Facility**
**354 Hunter Street**
**Ossining, New York 10562-5442**
**914-941-0108**

**Anthony Annucci**
**ACTING COMMISSIONER**

**Michael Capra**
**SUPERINTENDENT**

# Memorandum

October 30, 2018

To:    S. Best #09A1969

From:  Q. Quick, I.G.P. Supervisor

Subj:  **FOIL Request for SS# 60176-18**

Be advised,

Submitting FOIL requests to the IGP is not procedure. Utilize the FOIL process. It is your option to litigate but you must request the decision and/or investigation for SS# 60176-18 via FOIL request. If you do not receive an answer to your FOIL request, you may contact Department Counsel at Central Office: 1220 Washington Avenue, The Harriman State Campus, Albany, N.Y. 12226-2050. You may obtain Policy & Procedure #350 and/or Directive #2010, which governs the FOIL process, through the facility's law library. I trust that this information has been helpful to you.

File.

```
PRODUCTION HMMI10      * * * NYS PAROLE PARTNER/VES * * *     DATE: 01-30-2018
ENTER IDENTIFIER: _____    STATUS INQUIRY - SUMMARY
Rec Status ACTIVE  Warrant 0784561  Controlling Office NYC PVU
Name  BEST,SEAN                     PRS ME DT  12-16-2020 Est ME DT 03-26-2022
NYSID 08859416L                     Owed To Sent 00 09 03 Owed To PRS 03 06 26
PON   MN02-9997-9999                DT Issued  06-16-2017 Est CR DT
Area  MANHATTAN II                  Warrant Type AB SPO Auth 0337
PRS2  SPO,UNK SHAW                  ABS.Status CANCEL   Want Can DT 11-27-2017
PRS1  PRS,UNK GRAUBARD              Date Lodged 11-27-2017 By RETURNED
Present Location    RI JUDICIAL CTR  Location    RI JUDICIAL CTR
Received Date       11-27-2017       DIN         09A1969
Preliminary Hearing WAIVED               Final Hearing SCHEDULED
Date    11-27-2017      ..              Final Date    02-09-2018      ..
Officer  ............................  Officer    CASEY,JOHN
Location RI JUDICIAL CTR               Location    RI JUDICIAL CTR
Decision PROB CAUSE                    Decision
Date Sent To Board                     NO Adjournmts 02
Original Delq Date 05-21-2017          Outside Date  03-28-2018   TIMESTOP
Delq Type    DD AND ARRANGE FINAL      Closure Date
             ...................       Closure Reason
Area Supvr   OLIVER,YVONNE             Attorney ...............................
Date Signed  06-23-2017                         ...............................
Release Date 09-10-2015                         ...............................
F2=VP/BRD F3=HRGS F4=SCHED F5=OVERVIEW F6=PAR F7=ST RDY F9=BEH 1 F10=BEH 2
```

```
PRODUCTION  HMMI30      * * * NYS PAROLE PARTNER/VES * * *      DATE: 10-11-2018
ENTER IDENTIFIER: _____  STATUS INQUIRY - ADJOURNMENTS
Rec Status CLOSED  Warrant  0784561      +---------------------------+
Name  BEST,SEAN                          | ENTER ADJOURNMENTS HEARING |
NYSID 08859416L      Next Court Dt        | TYPE: FINAL  (PRELIM/FINAL)|
PON  MN02-9997-7026  PO of Rec MN02-0357-1439 / BROWN,JOANNA
                                          +---------------------------+
DATE        STATUS                                   LOCATION        ALJ
12-07-2017 ADJRN ON 12-07-2017, NOT PRODUCED         RI JUDCAL CTR 3 863
01-09-2018 ADJRN ON 01-09-2018, BY ATTORNEY OF PAROLEE  RI JUDICIAL CTR 863
02-09-2018 ADJRN ON 02-09-2018, BY ATTORNEY OF PAROLEE  RI JUDICIAL CTR 860
03-09-2018 ADJRN ON 03-09-2018, PAROLEE REFUSED TO APPEAR RI JUDICIAL CTR 863
04-10-2018 ADJRN ON 04-10-2018, PAROLEE REFUSED TO APPEAR RI JUDICIAL CTR 863
05-11-2018 ADJRN ON 05-11-2018, PRS - FOR WITNESS    RI JUDICIAL CTR 863
05-29-2018 HELD                                      RI JUDICIAL CTR 863




F1=SUMMARY F2=VP/BRD F4=SCHED F5=OVERVIEW F6=PAR F7=ST RDY F9=BEH 1 F10=BEH 2
```

```
PRODUCTION  HMMI50     * * * NYS PAROLE PARTNER/VES * * *      DATE: 10-11-2018
ENTER IDENTIFIER: _____    STATUS INQUIRY - OVERVIEW
NAME BEST,SEAN                      NYSID 08859416L  RELEASE DT 09-10-2015
WARRANT NO 0784561  ISSUED ON 06-16-2017 LODGED 11-27-2017 AT RI JUDICIAL CTR
WANT POSTED NO  CANCELED ON 11-27-2017 FOR RETURNED      WARRANT TYPE AB


PRELIMINARY IS WAIVED     ON 11-27-2017 HELD AT RI JUDICIAL CTR
               BY              DECISION PROBABLE CAUSE FOUND


DELINQUENCY DATE OF 05-21-2017 BY Area Supvr   OLIVER,YVONNE
          SIGNED 06-23-2017 THE OFFICIAL DELQ DATE IS 05-21-2017


FINAL IS HELD       ON 05-29-2018 HELD AT RI JUDICIAL CTR
         BY CASEY,JOHN          DECISION NA/HOLD FOR 018 MTHS
CHARGES & DISP 02/WP 04/WP 08/S  07/WP 08/WP 08/WP 08/WP


BOARD ACTION BY            WAS TO NOT REQUIRED(CAT 1) THE DECISION
            ON            THE REVISED DECISION WAS


RETURNED TO DOWNSTATE     ON 06-05-2018 AS A PV
         PJT STARTED ON 11-27-2017 ENDED 06-04-2018 FOR 00190 DAYS


ULTIMATE DECISION REVOKED          ON 05-29-2018  RECORD STATUS CLOSED
   F1=SUMMARY F2=VP/BRD F3=HRGS F4=SCHED F6=PAR F7=ST RDY F9=BEH 1 F10=BEH 2
```

FORM 2131E (REVERSE) (REV. 6/06)
**Response of IGRC:**

SS# 60176-18                                    Code: 06          *Exhibit J*
Name: Best, S. #09A1969

October 11, 2018

**Pass-Thru**

Grievant claims he should have been released in August 2018. Per D. Piazza this matter has to be researched further. As a result, this committee is unable to make a unanimous decision.

Date Returned to Inmate __OCT 12 2018__          IGRC Members _____

Chairperson _____

Return within 7 calendar days and check appropriate boxes.*

☐  I disagree with IGRC response and wish to Appeal to the Superintendent.

☐  I have reviewed deadlocked responses. Pass-Thru to Superintendent

☐  I agree with the IGRC response and wish to Appeal to the Superintendent.

☐  I apply to the IGP Supervisor for review of dismissal

Signed_____
              Grievant

_____
         Date

_____
Grievance Clerk's Receipt

_____
         Date

*To be completed by Grievance Clerk.*

Grievance Appealed to the Superintendent _____
                                                                          Date

Grievance forwarded to the Superintendent for action_____
                                                                                        Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

Exhibit U

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. 60176-18 | DATE FILED 9/28/18 |
|---|---|---|
| | FACILITY Sing Sing | POLICY DESIGNATION Institutional |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Guidance Unit/ Counseling | CLASS CODE 6 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE | DATE 10/31/18 |

| GRIEVANT Best, S | DIN 09A1969 | HOUSING UNIT HBA K-9 |
|---|---|---|

Grievant states he was never provided with the parole revocation decision therefore he should be immediately released.

Grievance Denied. Grievant advised the parole decision in accordance with directive #4040§701.3(f) is a non grievable issue however, grievants time computation has be perused and it has been determined to be correct.  Grievant further advised to utilize the appeal mechanism set forth in directive #8360.

---

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

_____

_____

_____

| GRIEVANT'S SIGNATURE | DATE |
|---|---|
| GRIEVANCE CLERK'S SIGNATURE | DATE |

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

Exhibit V

To: Facility Parole Office

From: Sean Best · 09-A-1969
Loc: A-K-8

August 28, 2018

To whom it may concern:

I write now to you because according to my departmental time computation sheet as of today I have reached my maximum expiration date, yet I'm still here?

I asked the Sgt. to call and he informed me that someone from this office explained to him that although today is my max date, I was given 18 months by ALJ Casey, therefore I can be held past my max date?

First off, I had my final PRH on May 29, 2018, at that time I was given a reserved decision. It has now been appx. 90 days since and I have not received any of the mandated paperwork required by Executive Law 259 · I. According to 259 · I, I should have received a written disposition of the finding

page 2

of guilt. (2) THE reasons (3) a notice
of Appeal and How much time I
recieved. I Have Not recieved and of
the requisite papers aforementioned, which
would have come to me via Legal
Mail which I must sign for.

Secondly from the time of my
delinquency 5-21-18 until my arrest
day of 11-25-18 is 6 months and
4 days. From my time of arrest until
today my MAX date is 9 months and
3 days. My original PRS max date was
December of 2020. However by
adding my delinquent and my current
Jail Time, my PRS Max date was
pushed back 15 months and 7 days
therefore it is clear I should
have been released as of today.
I am suppose to do the remainder
of my time on P.R.S. Not in prison.
I do Not owe the State anything
but P.R.S. and if I was/am
supposed to do 9 months more in
prison, it could only come off of my
P.R.S. So it could Not have possibly
been pushed back 15 months as 9
months must be accounted for, I

Page 3

cannot be made to do Free Jail time.

Somebody messed up somewhere and I need to know whom is the responsible party. So that I may pursue Further Litigation in the civil courts.

I need a copy of the paper work stating I was given 18 months by whom? A copy of All of the papers I'm entitled to have including my Notice of Appeal.

I Humbly ask THAT THIS be addressed immediately because as of 12 AM 8/29/18 I'm being held against my will in violation of my constitutional rights.

You are on Notice.

Thank You.

(CC) NYSDOCCS commissioner

Gov. Cuomo

Attorney General

Tracie Susdack Esq - Attorney

Exhibit V

To: NYSDOCCS

Attn: Appeals Unit Board of Parole
Harriman State Campus, Build'g 2
Albany, NY 12226

From: Seas Best - 09A1969
Sing Sing Corr. Fac.
354 Hunter St
Ossining NY 10562

Re: Warrant # 784561                    September 13, 2018

To whom it may concern.
                                    On November
25th 2017, I was served notice
of violation papers. My Final hearing
was concluded on May 27th 2018
at which time I was given a
"Reserved Decision".
        I came into the State's
custody on June 5, 2018 at
Downstate Corr. Facility. I then
came to Sing Sing Correctional Facility
on June 21, 2018. It is Now September
13, 2018 and I have yet to receive
Any written Disposition, notice of
appeal or any other papers that
are required and mandated by
Executive Law 259.I.
        To Add Insult to Injury my
time computation sheet says that
my Max date was August 28, 2018
However I am being told I
received 18 months by ALJ Casey

Page 2

Yet I have not been provided any documents that state this.

Also according to 259 I. The ALJ decision is only a recommendation to final binding disposition comes from Central Office. Both would have come to me via Legal Mail which I must sign for. I never recieved anything.

I have a right to appeal my violation hearing decision pursuant to Exec. Law 259-I (4) A) and 9 NYCRR, Subtitle CC, Part 8006. However absent the relevant papers I cant.

You're in violation of my Due Process rights. I ask that you furnish me with all Relevant documents as well as the transcript of my hearing pursuant to a catch this request that I've been severly prejudiced You lift the warrant, expunge all records of this violation from my records, and Restore me to parole.

I will be pursuing State and Federal litigation due to the Violations of my due process Rights.

Thank You For Your Time and Attention in this matter

Respectfully

BEST   V   GRIFFIN  - 695 FED Appx 18

To: Tina Stanford
    Chair-Woman, Board of Parole
    1220 Washington Ave
    Albany, N.Y. 12226

From: Sean Bust. 09-A-1969
    Sing Sing Corr. Facility
    354 Hunter St
    Ossining, N.Y. 10562

Re: Warrant # 784561

Madam,
    I write to you now for
several reasons. On November 27, 2018
I was served a "NOV" by P.O. Brown
Manhattan 2. She told me due to my
New arrest that I was not entitled
to a preliminary hearing. She wrote
waived on the form. However I
never checked that I did not
want a preliminary hearing as required
by Executive Law 259. I.
    Upon Judicial Review P.O. Brown
submitted a copy of her duplicate
copy (the yellow copy) which had
a check mark. As you know I
recieve the white original, and our
2 copies greatly differ.
    Section 2, (3.4) of the NYSDOC
Employees Manual states that "No
Employee shall submit falsified
documents into official depertmental
records, nor shall any employee

Page 2

allow Falsified documents to be
entered into departmental records.
THERE can be No Justification
as to why P.O. Brown submitted
Falsified documents into departmental
records, Nor any Justification as
to why You and Your office, all
employees of NYSDOCCS who are
governed by the NYSDOCCS Employee
manual allow this Fraudulent copy
to be submitted in Departmental
records. As you are the chairwoman
of Parole it is Your obligation to
correct this.

My Next issue is I sent 3
letters to the Appeals unit, the
last Appx September 19, 2018, in
which I requested any and all
documents pertaining to my "Final
Hearing" on MAY 27, 2018 before
ALJ CASEY, at Rikers Island
Judicial Center.

On MAY 27, 2018 I was given
a reserved decision. On June 5, 2018
I was taken to Downstate Corr.
Facility. I was told my max date
was August 28, 2018. I never
recieved the requisite documents
that are mandated by Executive Law
259 (I), NYCRR, and Docs Directives.

As stated I wrote 3 times
to your officer, THE Facility
Parole officer, Inmate Records, and
my ORC, No one has Any docum

P. 99<3

ers. I grieved this issue still no documents.

By letter dated September 28, 2018 via Legal mail (signature Required) Your office informed me that I Lost my right to Appeal and informed my Attorney of this on August 14, 2018, alleging that on June 4th 2018 my decision was Forwarded to me, and I had 30 days from then to submit A Notice to Appeal.

This must be vigorously examined according to my ORC after reviewing the Divisions Status Inquiry on the PAR screen which she Furnished me A copy. All it states is that I had a Final on 5/27/18, and on 5/31/18 a decision was Rendered. No where does it say that Any documents were sent to me and or my Attorney, and to be clear the mandate is "to the Alleged Violator "AND" His Attorney. and according to directive " It is the Departments policy to Ensure that the alleged Violator recieves these papers and Notice of appeal papers"

I Now personally write to you so that you may provide me with these documents, as well as Your copy of The Divisions Status Inquiry along with the proof of

Page 4

that you mailed the requisite papers to me, and or my attorney, the address where it was sent and the date. As you know all parole documents are considered legal mail requiring a signature, I need the date, time, place where these papers were allegedly forwarded.

You have now been personally made aware of these violations of my constitutional rights. I hope that you can resolve these matters.

Your time and attention is greatly appreciated

Very Truly

(cc)

NYSDOCCS Commissioner
Gov. Cuomo
U.S. District Court
Westchester County Supreme Court
Court of Claims

To. Administrative Law Judge CASEY
Rikers Island Judicial Center
West Facility, Hazen st
East Elmhurst, N.Y. 11370

From: Sean Best - 09-A-1969
Sing Sing Corr. Facility
354 Hunter St
Ossining, N.Y. 10562

Re: Warrant No: 784561

Dear Sir,

I was before you on 5/29/18
for a final contested hearing. At that
time you sustained the lone charge,
and you gave me a reserved decision.
On June 5th 2018 I was taken to
Downstate Correctional Facility. I wrote
to you on July 5th 2018 30 days after
I was in the state's custody because
I still haven't recieved your decision.
You never wrote me back.
My time computation sheet said my
max date was August 28, 2018 and that
my P.R.S. max date went from 12/2020
till 3/2022 (15 months added) In doing
my math that is the 6 months of
delinquent time with the 9 months
from November 27, 2017 until August 28, 2018
yet I wasn't released.
They (the Inmate Records coordinator
and my ORC) are saying you gave me
an 18 month Hold, yet no one has
this paper work?

Page 2

It has now been over 4 months since your Revised decision and I have no paper work pertaining to your decision, as Required be directed and Executive law 259.I.

I wrote Everyone and no one has provided me with these documents. I know write to you again to request that you Furnish me with these documents, So that I may know and understand what is going on and what steps I must Now take to regain my Freedom.

I'm also Requesting that you Furnish me with the "Divisions Status Inquiry Summary".

I Appreciate Your time and attention in this matter.

Very Truly,

(c) Parole violation Appeals unit
Acting commissioner Annucci.
Tina Stanford : Chair woman of parole
Gov. Andrew Cuomo

To: NYSDOCCS - Parole Division
    1220 Washington Ave
    Albany, N.Y. 12224

From: Sean Best - 09-A-1969
      SSCF - 354 Hunter st
      Ossining, N.Y. 10562

                              February 25, 2019

Dear Ms. Stanford:
                    I've written to you
several times pertaining to the
documents that you are mandated
to send me pursuant to Executive
Law 259. I) - My Final Hearing was
held on 5/29/17, at such time I
was given a reserved decision by ALJ
Casey, Since then I have not heard
anything from Anyone?
            I have now been incarcerated
for 15 months on this violation and
it has been 9 months since the
Final Hearing, I have not received ANY
legal mail from your office with any
of these documents?
            To go further My Max date was
August 28, 2018. Yet I remain in Prison,
and my time computation has not
changed since I came upstate on
June 5th 2018. So I'm Just doing Free
time?
            All of these issues must be
addressed anon. I was called to

page 2   NysDoccs                              Parole Division

My ORC's office and told she was
preparing a "Parole Packet" which also
included a New Compas - Like are you
guys serious? Why am I going to
a Parole Board when I already have
more than 10 yrs in on a sentence
of 8 yrs? I need answers.

I am also requesting to be
furnished with the following documents
pursuant to the FOIL - and as a note
I am requesting these documents for
litigation purposes and need them asap.
(1) All Transcripts pertaining to my
current violation.

(2) The number of all violators that
have been returned to Maximum Facilities
because they are category 1 violators.

(3) The documents mandated by
Executive Law that MUST Be provided
to "The alleged Violater And his
attorney," upon sustaining a violation.

Your assistance in this matter
will be greatly appreciated.
I Thank You in advance.

Very Truly,

| NEW YORK STATE **Corrections and Community Supervision** DIRECTIVE | TITLE **Inmate Grooming Standards** | | NO. 4914 |
| --- | --- | --- | --- |
| | | | DATE 03/26/2018 |
| SUPERSEDES DIR# 4914 Dtd. 07/06/2015 | DISTRIBUTION A  B | PAGES PAGE 1 of 7 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to) Directive #4933, #4910, #4910A, #4035; 7NYCRR, Part 254; ACA Expected Practices 4-4283, 4-4343 | APPROVING AUTHORITY *James A. O'Gorman* | | |

I. **DESCRIPTION**:  This directive establishes the basic grooming standards (including criteria for beards, mustaches, and length of hair) for inmates.

II. **PURPOSE**:  It is the purpose of this directive to ensure that inmate appearance will be regulated sufficiently to maintain accurate identification of each individual.

III. **REGULATIONS**

    A. <u>Grooming Standards at Reception</u>:  Initial shaves and haircuts shall be required of all newly committed male inmates and returned parole violators unless exempted as set forth below.  Inmates shall be required to remove all hair extensions and maintain naturally grown hair only.  These are required for reasons of health and sanitation, as well as, to permit the taking of the initial identification photograph.

        1. Shaves:  Inmates or returned parole violators who have beards upon reception shall be permitted the option to use an electric razor, hand razor, hand clippers, or a depilatory to remove their beards.

        2. Exemptions to Shaves:  The initial shave regulation applies to all inmates and returned parole violators, unless:

            a. The inmate possesses a Court Order restraining the Department from such enforcement.  Any inmate or returned parole violator covered by this exemption shall be classified and transferred in the standard manner, and cannot be disciplined or placed in administrative segregation for their refusal to have an initial shave.

            b. The inmate or returned parole violator professes to be of a religion that would not allow him to shave and thus refuses the initial shave based on a religious objection.  The inmate or returned parole violator's objection shall be referred to the Deputy Superintendent for Reception/Classification or equivalent, who shall conduct a review, and may consult with the Division of Ministerial, Family and Volunteer Services or the Office of Counsel as needed, to determine if a religious exemption to the initial shave is required.  The Deputy Superintendent for Reception/Classification will make a recommendation to the Superintendent, who will make the final determination.

            If the Superintendent determines that the inmate or returned parole violator should be exempt from the initial shave, then he shall be classified and transferred in the standard manner and cannot be disciplined or placed in administrative segregation.  Further, the Office of Counsel shall be contacted to determine if a beard permit should be issued based on his religious objection to shaving.

c. The returned parole violator had a Court Order upon initial entry or a verifiable beard permit from the Department that was issued during his current term of imprisonment, and there is an acceptable identification photograph of him without a beard in the Department's possession sufficient to provide an accurate identification.  The Deputy Superintendent for Reception/Classification shall be responsible for verifying that the parole violator had a Court Order or beard permit during his current term of imprisonment, and that the photograph of him on file is sufficient to provide an accurate identification.  Any returned parole violator covered by the exemption shall be classified and transferred, in the standard manner, and cannot be disciplined or placed in administrative segregation for his refusal to have an initial shave.

3. Refusal to Shave:  Inmates or parole violators who refuse the initial shave and do not possess a valid Court Order, and do **not** qualify for an exemption to the initial shave, shall be subject to appropriate discipline for failing to follow Departmental policy and procedures.

NOTE:  Identification photographs of any inmate or returned parole violator who has an exemption to shave or has refused to have his initial shave shall be taken in accordance with the procedures developed to allow for digitally enhanced photographs.  Whenever the procedure for digitally enhanced photographs is utilized, the Deputy Commissioner for Correctional Facilities shall be notified of the inmate and the reason for utilizing the digitally enhanced process.

4. Haircuts

a. Male inmate hair length upon completion of this initial haircut shall not exceed one (1) inch on any part of the head.

b. An inmate who self-identifies as transgender, or professes to be intersex or have Gender Dysphoria, may choose to have either a male initial haircut in accordance with the grooming standards, or choose not to have the initial haircut as identified in Section III-A-5.

NOTE:  Gender identity means every individual's internal sense of being male, female, or an alternate gender.  The term refers to a person's innate, deeply felt, psychological identification.  Gender identity is distinct from sexual orientation.  It usually manifests very early in life and is understood as a largely inflexible characteristic.

5. Exemption to Haircuts:  Any reception inmate or returned parole violator who professes to be a Rastafarian, Taoist, Sikh, Native American, Orthodox Jew, or member of any other religious sect of a similar nature, or who expresses that they are transgender, or professes to be intersex, or have Gender Dysphoria, and refuses to have an initial haircut cannot be forced to comply with the initial haircut requirements.  In addition, any reception inmate or parole violator who refuses to comply with the initial haircut regulation on religious grounds, or on the basis of gender identity, and who has a Court Order restraining the Department from enforcing the initial haircut regulation, cannot be forced or ordered to comply with the initial haircut regulation.

NOTE:  Any inmate or returned parole violator covered by the above exemption shall be classified and transferred in the standard manner and cannot be disciplined or placed in administrative segregation for their refusal on religious or gender identity grounds to have an initial haircut.

Identification photographs of any inmate or returned parole violator who has not had their hair cut shall be taken in accordance with the following:

- For the frontal view, the hair shall be pulled back away from the face and ears.
- For the side view (profile), the hair shall be pulled back and to the side.

6. Refusal for Initial Haircut:  Inmates or parole violators who refuse to comply with the initial haircut regulation, and do not possess a valid Court Order, and do **not** qualify for an exemption to the initial haircut shall be subject to appropriate discipline for failing to follow Departmental policy and procedures.  This applies even though the identification photographs were obtained with the hair pulled back.

7. An inmate shall not be placed in administrative segregation or disciplinary confinement pending the review of his objection to the initial shave or haircut by the Deputy Superintendent for Reception/Classification or equivalent such as Deputy Superintendent.

B. Artificial Nails:  Artificial nails will be removed if possible, or cut to a length not to extend beyond the tip of the fingers or toes.

C. Removeable Body or Dental Jewelry at Reception:  Any inmate at a reception facility who has what appears to be removable body or dental jewelry (e.g., a metal grill or cap over the teeth or a ring, stud, barbell or plug piercing the tongue, eyebrow, lip or belly, etc.), will be given a direct order to remove the item.

1. If the inmate indicates that he or she cannot remove the item because it is or has become permanently affixed to his or her body, or because it serves a necessary medical purpose, he or she will be given a direct order to undergo an assessment by a doctor or dentist, as appropriate, to determine if the item serves a necessary medical purpose.

    a. If the item serves a necessary medical purpose, the item will not be disturbed and a notation will be added to the inmate's medical record.

    b. If the item is determined not to serve a medical purpose and can be removed without the application of force (e.g., it can be readily slid off or screwed off, etc.) the doctor or dentist, with the inmate's consent, shall remove the item.

    c. If the inmate does not consent, the inmate may be given another direct order to remove the item by a security supervisor.

NOTE:  Prior to removal of the item, the inmate will be so advised and sign a release noting that the Department will not be responsible for any damage done to the item in the removing, cleaning or storage process.  See Attachment A, Form #4914, "Removable Body or Dental Jewelry Wavier."

2. All such items removed from the inmate will be cleaned using Corcraft Germicidal RTU and placed in a small plastic evidence bag, labeled with the inmate's name and DIN.

3. The inmate will have the option to send the item(s) out of the facility at their expense, or the items will be placed in the inmate's personal property.

4.   If the inmate either refuses the assessment or refuses to remove an item that a doctor or dentist determined after an assessment serves no medical purpose and can be removed without the application of force (e.g., it can be readily slid off or screwed off, etc.), he or she shall be confined and issued a misbehavior report for failure to obey a direct order and may receive future additional disciplinary action for continued refusals.

5.   If the assessment indicates the item is affixed to the inmate's body and the inmate refuses to allow it to be removed, no force will be used to facilitate a medical or dental procedure to remove the affixed item. Instead, the inmate will be confined, an Administrative Segregation recommendation issued, and a hearing conducted pursuant to 7NYCRR, Part 254. Inmates in Administrative Segregation shall have such status reviewed in accordance with Directive #4933, "Special Housing Units." However, an inmate can be released from Administrative Segregation status at any time, once the inmate consents in writing and the jewelry is removed by a doctor or dentist as appropriate.

NOTE:  Disposal of removable body or dental jewelry found on an inmate's body after reception will be disposed of as contaminated jewelry in accordance with Department Directive #4910A, "Contraband/Evidence - Handling, Storage and Disposition."

D.   <u>General Grooming Standards</u>:  After the initial haircut and shave, general grooming standards as set forth below are applicable to all inmates except those inmates participating in the Department's Shock Incarceration Program.

1.   Beards and Mustaches:  An inmate may grow a beard and/or mustache, but beard/mustache hair may not exceed one (1) inch in length unless:

NOTE:  Patterns, designs, or braids are not allowed.

a.   The inmate has a Court Order restraining the Department from enforcement; or

b.   The inmate has requested and received an exemption based upon his documented membership in a religion which has an established tenet against the trimming of beards including, but not limited to, inmates who are Rastafarian, Orthodox Jew, Muslim or Sikh. All inmate requests for such exemption shall be referred to and reviewed by the Office of Counsel after consultation with the facility Chaplain. After such review, the Office of Counsel will make a recommendation to the Deputy Commissioner for Correctional Facilities. If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate.

Further, pending the Office of Counsel determination of requests for exemption from the one (1) inch rule, inmates shall not be required to cut or trim their beards, disciplined for refusing the order to shave, or subject to repeat orders to shave.

An inmate who refuses to comply with this rule will be given 14 days from the date of the written order to shave in which to request an exemption. If the inmate fails to submit a request for an exemption within 14 days, he may be disciplined for refusal to obey such order.

Copies of the written order, an inmate's request for exemption, and the exemption will be filed in the inmate's legal file.

2.  Hair

    a.  Only basic haircuts will be allowed.  Only one straight part will be allowed with no other lines, designs, or symbols cut into the hair.  In accordance with established barbering guidelines of the Department's Occupational Training Program, basic haircuts are defined as:

    - Short, medium, and long
    - Short, medium, and long pompadour
    - Crew
    - Butch
    - Quo-vadis (bald)
    - Afro-natural
    - Flat top
    - Elevation

    Hair may be permitted to grow over the ears to any length desired by the inmate.  The hair must be neatly groomed and kept clean at all times.

    The only braids allowed are the corn row style.  Corn row braids may only be woven close to the scalp in straight rows from the forehead to the back of the neck and braids may not extend beyond the hairline.  No designs or symbols may be woven into the hair.

    The dreadlock hairstyle is allowed.  When worn, dreadlocks must extend naturally from the scalp and may not be woven, twisted, or braided together forming pockets that cannot be effectively searched.  Inmates wearing below shoulder length dreadlocks must tie them back in a ponytail with barrette, rubber band, or other fastening device approved by the Superintendent.

    NOTE:  Inmates may wear their dreadlocks in an approved religious head covering.

    b.  See Section III-B-2-d below for inmates assigned to work near machinery or food.

    c.  Inmates may wear only one approved hairstyle; no combination of approved hairstyles is allowed.

    d.  Long hair is defined as below shoulder length.

    e.  Inmates wearing long hair assigned to work near machinery or food shall be required to wear a hair net.  Any other inmate assigned to work near food shall be required to wear either a hat or a hair net.

    f.  Whenever they leave their housing unit, any inmate wearing long hair will be required to have the hair tied back in a ponytail at all times with a barrette, rubber band, or other fastening device approved by the Superintendent.

    Exemption:  Native Americans involved in scheduled and approved Native American cultural ceremonies do not have to comply with this restriction.

    g.  An inmate may be subjected to a hair search when there is reason to believe that contraband may be discovered by such a search.  An inmate may be subjected to such search at any time during a pat frisk, strip search, or strip frisk is being conducted.  Consistent with Directive #4910, "Control of & Search for Contraband," during a pat frisk, an inmate will be required to run fingers through their hair.  During a strip search, an inmate may be subjected to an inspection of his or her hair.  During a strip frisk, an inmate will run his or her hands through the hair.

E.   <u>Photographs</u>:  If, in the opinion of a Correction Officer or supervisor, an inmate drastically changes his or her appearance by changing the length, style, and/or color of his or her hair, or growing or shaving a beard and/or mustache, he or she will be re-photographed for identification purposes.  All such re-photographs will be at the expense of the inmate in accordance with Directive #4035, "Inmate Identification Cards."

Form #4914 (01/18)
Photocopy Locally

NEW YORK STATE – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**Removable Body or Dental Jewelry Waiver**

Date: _____

I, _____ hereby relinquish any and all
     (Inmate Name and DIN)

claims to any and all damages that may occur during the removal, cleaning or storage

of my body or dental jewelry.


Signature:    _____
           (Inmate Signature)


Witness:    _____
          (Attending Staff)


cc: Inmate
    Original IRC

06/18/2018          NYS DEPT OF CORRECTIONS & COMMUNITY SUPERVISION          PAGE    1
DCP004                     DISCIPLINARY  HEARING DISPOSITION RENDERED

                DWNSTATE REC                      TAPE NUMBER

DIN: 09A1969 NAME: BEST, SEAN                          LOCATION: 01-0B-017

INCIDENT DATE & TIME:        06/15/2018    04:35 PM    TIER 2

REVIEW DATE:                 06/16/2018          BY:  LT   LIMAYE, V V

DELIVERY DATE & TIME:        06/18/18    09:54 AM  BY:  CO   PEGUERO, L

HEARING START DATE & TIME:   6/20/18  10:41 Am BY:  LT  _____

HEARING END DATE & TIME:     6/20/18  10:5 Am BY:  LT  _____


CHARGE
NUMBER      DESCRIPTION OF CHARGES              REPORTED BY          DISPOSITION

107.10   INTERFERENCE WITH EMPLOYEE        SGT   FIGUEROA, A              G
------   -------------------------------- ----  --------------------
106.10   REFUSING DIRECT ORDER                                           G
------   --------------------------------


ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.
SANCTION DATES BELOW ARE SUBJECT TO REVIEW/CHANGE, AND WILL BE CONSECUTIVELY ADDED TO
ANY SIMILAR CURRENT SANCTION. IN ADDITION, WHENEVER A CONFINEMENT PENALTY IS BEING
SERVED AND A MORE RESTRICTIVE CONFINEMENT PENALTY IS IMPOSED AS A RESULT OF ANOTHER
HEARING, THE MORE RESTRICTIVE PENALTY SHALL BEGIN TO BE SERVED IMMEDIATELY, AND ANY
TIME OWED ON THE LESS RESTRICTIVE PENALTY SHALL BE SERVED AFTER COMPLETION OF THE
MORE RESTRICTIVE PENALTY PERIOD.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| 0300 | keplock | 30 | 6/1/18 | 7/15 | | | |
| 0800 | Pck | 6 | 6/15/18 | 7/15 | | | |
| 0800 | commiss | 6 | 6/15/18 | 7/15 | | | |
| 0800 | phone | 10 | 6/15/18 | 7/15 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Exhibit 1

**State of New York**
**Department of Corrections**
**& Community Supervision**
**Sing Sing Correctional Facility**
**354 HUNTER STREET**
**OSSINING, NEW YORK 10562-5442**
**914-941-0108**

Anthony Annucci
ACTING COMMISSIONER

Michael Capra
SUPERINTENDENT

**Memorandum**

July 31, 2018

**To:**        S. Best #09A1969 ~~B-62~~  B-2-50

**From:**      Q. Quick, IGP Supervisor

**Subject:**   **Untimely Grievance (6/15/18 keeplock)**

Be advised,

I am in receipt of your grievance concerning keeplock on 7/15/18. This grievance is untimely. Directive #4040, §701.5 (a) (1), requires you to submit your grievance "to the clerk within 21 calendar days of an alleged occurrence ..." Furthermore, you should utilize the disciplinary appeal mechanism.

If you have any questions regarding the grievance process you may speak with your IGRC representative and/or contact the IGRC Office.

File.

Summary View for BEST, SEAN

*Exhibit #2*

# NYC HEALTH+ HOSPITALS

## BEST, SEAN
NYSID: 08859416L BookCase: 8951701554
Facility Code: EMTC Housing Area: 10U
36 Y old Male, DOB: 11/27/1981
Account Number: 18976
NONE GIVEN, 8G, NEW YORK, NY-10037

Insurance: Medicaid
Appointment Facility: Eric M. Taylor Center (Corr Inst for Men)

**05/14/2018**                                                              **Ashley Andreo, LMSW**

## Current Medications
**Taking**
● Miconazole Nitrate 2 % Cream Total Dose: apply Twice a day, stop date 05/18/2018, KOP: No, Drug Source: Pharmacy
● Lac-Hydrin 12 % Lotion Total Dose: apply Twice a day, stop date 05/18/2018, KOP: No, Drug Source: Pharmacy
● Vasotec 2.5 MG Tablet Total Dose: 2.5 mg Daily, stop date 06/18/2018, KOP: No, Drug Source: Pharmacy
● Aspirin EC 81 MG Tablet Delayed Release Total Dose: 81 mg Daily, stop date 06/08/2018, KOP: No, Drug Source: Pharmacy
● Atorvastatin Calcium 10 MG Tablet Total Dose: 10 mg Daily, stop date 06/08/2018, KOP: No, Drug Source: Pharmacy
● Metformin HCl 500 MG Tablet Total Dose: 500 mg Daily, stop date 06/08/2018, KOP: No, Drug Source: Pharmacy
● HydrOXYzine HCl 25 MG Tablet Total Dose: 25 mg At Bedtime, stop date 05/28/2018, KOP: No, Drug Source: Pharmacy
● Lamotrigine 25 MG Tablet Total Dose: 50 mg At Bedtime, stop date 05/28/2018, KOP: No, Drug Source: Pharmacy
● Zoloft 50 MG Tablet Total Dose: 50 mg At Bedtime, stop date 05/28/2018, KOP: No, Drug Source: Pharmacy

## Past Medical History
Chickenpox
Bipolar affective disorder, mixed
Bipolar affective disorder, mixed
Polysubstance dependence
Diabetes mellitus type 2 with unspecified manifestations uncontrolled
OBESITY NOS
Migraine, unspecified, without mention of intractable migraine
HX-SEAFOOD ALLERGY
EtOH [Ethanol] abuse NOS
Back pain

## Allergies
seafood: rash: Allergy

## Reason for Appointment
1. DCP Progress Note

Notes: Swker contacted Bronx CRAN to connect with the CM's case manager. The CM's case manager is Shalisha Johnson (SJohnson@eacnyc.org, 718-538-7416 ). The swker contacted Ms. Johnson to introduce herself and update her on the CM's discharge plan.



**Electronically signed by Ashley Andreo on 05/14/2018 at 01:29 PM EDT**

**Sign off status: Completed**

Eric M. Taylor Center (Corr Inst for Men)
10-10 Hazen Street
East Elmhurst, NY 11370
Tel: 347-774-7000
Fax: 347-774-8088

Patient: BEST, SEAN   DOB: 11/27/1981   Progress Note: Ashley Andreo, LMSW   05/14/2018

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

Exhibit #3

# Inmate Grievance Complaint

Name - SEAN BEST
Number - 09-A-1969
Location - A-K-8
Advisor - NO
Date - September 6, 2018

RECEIVED
SEP 11 2018
SING SING I.G.P

## Description of Incident

On August 28th, 2018 I saw my Medical Doctor, ELAM, I informed him that I have not been recieving my medications for over a month. I explained to him that while I was on keeplock from 6/20/18 until 7/16/18, that I always put down for keeplock medications and sometimes they would let me out and sometimes they wouldn't. I explained to him that OFFICER Collymore told the officer who escorted me that he spoke to the nurse on duty and he told him that I don't get medical medication only PSU. He also told me If I came down there he would send me to the Box, that is when they stopped letting me go to keeplock meds. This continued even after I was off.

I put down for Emergency Sick call in July. I saw my provider on July 16, 2018 who confirmed I do get medical meds, I asked him why don't I have them, he said P.S.U. will not allow me to self carry. However I was still not allowed to go to the Hospital to get my medications due to officer Collymores instructions to

RECEIVED

SEP 11 2018

SING SING I.G.P.

2 of 3

September 6th   Page II   I.A.C

NYSDOCCS state. I moved to A-Block and immediately dropped a sick call slip. I was placed on a callout to see Dr. Elam on August 20th, however I did not see him until August 22nd 2018. At this time I again expressed to him my concerns about not recieving or being allowed to get my medications, and explained to him that he knows I can die if I don't have my medications. He asked me if they were still giving me problems I said Yes. He checked the computer and said "Well Somebody changed Your mental health Status you can self carry now I'll order your Meds" I got my medication on August 23rd.

I also am grieving the mental health Staff for failing to give me my medications, not seeing me since I've been here as far as the Dr. who prescribe medications, changing my mental health status to cover their Deliberate Indifference.

I Have been on the Mental Health caseload in the NYSDOCC since my inception of April 2009, and throughout my tenure in corrections. I am currently a Parole violate I returned to Downstate correctional on June 5, 2018. I saw Someone from OMH on June 6, 2018, I was told I'll remain on the medications that were prescribed to me on Rikers Island. I Explained to them that I was on Ramadan fast and that I needed reasonable accomodation So that I may adhere to my Strict

RECEIVED
SEP 11 2018
SING SING I.G.P.

September 6th,     Page III

religious diet. I was told "That would Not happen at downstate".

Upon Entering Sing Sing I saw all medical staff and was told, OMH will schedule me for a callout. I saw my therapist, who asked me about my meds, I informed her I wasn't recieving them. She told me I was scheduled to see the Doctor. July went No Doctor, August No Doctor Yet, she told me my Status was changed From a 2S to a 2C. I have been diagnos as having a Serious Mental Illness (SMI) Since 2006, all my papers, including those From Rikers Island, state that. Someone took it upon themselves to change my status, diagnosis, and Stop my medications which I Really need without even laying eyes on me. The Nysdoccs and the Omh staff have both been deliberately indifferent to my serious medical needs, and also have violated my due process rights both of a constitutional magnitude, and I want this addressed immediately.

My claims are timely according to the grievance directive which states, I should try to address all issues prior to filing a grievance. I have to No Avail.

Action Requested - To Recieve my medications For my mental illness, seen by the omh doctor, For all parties to be held responsible and reprimanded.

To: OMH Unit Chief

From: Sean Best 09-A-1969. HBA-K9

Re: Medications/Treatment

Exhibit #3

Dear Sir/Madam -

Hello. I write to You now because I feel as if I am being mishandled by Your office and staff.

I wrote a grievance that I have not been recieving my medications since my inception at Sing Sing. I met with Dr. Husdorfean in September and I addressed my concerns to her. At that time she told me she would be putting a prescription in. I never recieved it. The nurse at the med window told me that although it was noted in my charts, no prescription ever went in. I also spoke to Ms. Lightstone about this, I was told I'd see Dr. Husdorfean on 11/19/2018, I never recieved any call outs, nor was I taking those. I have been on keeplock since 11/12/18 So it's not as if I wasn't available.

Dr. Husdorfean Also told me that

Page 2

according to her records I was a
No-show, on July and August. This
Makes no sense as all medical
call outs, especially building 8 are
mandatory. Ms. Lightstone also
told my someone changed my
OMH status.

I have an extensive mental
Health history. I was diagnosed
as Bi-polar / schizo effective in
2006, and that has been a constant
diagnosis throughout my Tenure in
both city and state Corrections. I
was Also receiving Treatment in
the community as well.

Although I am "Functional", I
struggle to remain balanced, and
sans my medication my mental state
is deteriorating. I am stressed the
Hell out. I'm super paranoid and I'm
afraid that I'm going to act on my
paranoia. I need my medication. I
have been headed on a downward
Spiral, and I want to catch it
before I Find myself in trouble. I'm
Agitated and irritable, and I have
a Nasty Temper that my medication

Page 3

helps me to control. I Have Also found that I am at my Best in a theraputic community setting. I Enjoy groups where I can openly express myself with others like me.

At Times I feel isolated here in population, I Have to continuously put on a mask, and I'm sick of it. I've been depressed for a while now, In a way I Actually like the feeling of mania when it comes, I feel productive, and insightful, I Just Hate the crash after.

Any way please Help me, I AM Not Suicidal or Homicidal, I Just want to be my Best me.

Also I'd like to Review my OMH Records.

I Thank You in advance

Emperor Best.

# Inmate Grievance Complaint

Name : Sean Best - 09 A 1969
Loc - 4BA - K - 8
Date - September 24, 2018
Advisor - No

Exhibit #3

## Description of Incident

       I previously submitted a grievance that I was not receiving my medical or my Mental Health meds. among other things. Shortly after I received a partial order of my medical medications.

       I saw my therapist ms. Rightslive who told me I was scheduled to see the Mental Health psycologist on 9/5/18. I saw the Dr. as scheduled. I told her I haven't gotten my Meds since June, She checked and verified that. I asked her why did it take so long for me to be seen. She said I was scheduled for June, July, and August but I didn't show up. I told her either she was a liar or someone didn't do their Job because all Building 8 mental health call outs are Mandatory, and if I refused to come as per Directive I would have been placed on keeplock and received a Misbehavior report.

       She stated that she was putting in an order for medications, However it has been Appx 3 weeks and everytime I go to the window I'm being told I Have no meds and

Inmate Grievance Complaint          page 2

that no order was put in.

I Have A Severe Persistent Mental Illness, that without my Medication causes me to Suffer all Types of Symptoms. I Have a 2009 Number and Have been on the Mental Health case load since my inception in Docs upon my return on this violation my Files and med orders Followed me From Rikers, with all of this being known NYSDOCCS and The Department of Mental Health and Hygiene by way of their staff are continuously being deliberately Indifferent to my Serious medical needs in violation of the U.S. constitution.

This matter was addressed before in the matter of Best v Bell 2014 WL 1316773 where Judge J Paul Oetken US District Judge For the SD.NY. admonished defendants For these same actions, and granted relief. I NEED MY MEDS PLEASE.

Action Requested

To receive my meds and the proper medical Treatment to combat the Furtherance of my continuous onset of Symptoms and get back to a Healthy balanced state of mind.

New-Art

11:7:58 Saturday, March 09, 2019

Exhibit #S

```
03/09/19  C070CEB              DISCIPLINARY SYSTEM                    KDCPM55
11:37:56  C070N240         070    SING SING GENERAL
                         INMATE CURRENT SANCTIONS                    PAGE  02


    DIN:  09A1969 NYSID:  08859416L NAME:  BEST, SEAN
    CURRENT FACILITY:  070 SING SING GN    CURRENT HOUSING LOCATION:  0A-PS-21S


                          LENGTH   ST.DATE      REL.DATE
PENALTY                   MO DAY  MO/DA/CCYR MO/DA/CCYR

LOSS OF PACKAGES          00 015  05/31/2019 06/15/2019 02/04/2019 06:00 AM
LOSS OF COMMISSARY        00 030  02/23/2019 03/25/2019 12/09/2018 08:40 PM
LOSS OF COMMISSARY        00 015  03/25/2019 04/09/2019 01/21/2019 09:20 PM
LOSS OF COMMISSARY        00 015  04/09/2019 04/24/2019 02/04/2019 06:00 AM
LOSS OF PHONE             00 020  02/26/2019 03/18/2019 11/27/2018 11:50 AM
LOSS OF PHONE             00 030  03/18/2019 04/17/2019 12/09/2018 08:40 PM
LOSS OF PHONE             00 015  04/17/2019 05/02/2019 01/21/2019 09:20 PM
LOSS OF PHONE             00 015  05/02/2019 05/17/2019 02/04/2019 06:00 AM

                                    NEXT DIN:
                                ADDITIONAL SANCTIONS



<ENTER>          <PF3>  EXIT(FUNCT)        <CLEAR>  EXIT(SYSTEM)
```

11:37:55 Saturday, March 09, 2019

Exhibit # 5

```
03/09/19  C070CEB              DISCIPLINARY SYSTEM                    KDCPM55
11:37:53  C070N240          070     SING SING GENERAL
                          INMATE CURRENT SANCTIONS                    PAGE  01


   DIN:  09A1969 NYSID:  08859416L NAME:   BEST, SEAN
   CURRENT FACILITY:  070 SING SING GN    CURRENT HOUSING LOCATION:  0A-PS-21S


                      LENGTH    ST.DATE      REL.DATE
PENALTY               MO DAY   MO/DA/CCYR  MO/DA/CCYR

LOSS OF RECREATION    00 030   02/15/2019  03/17/2019 12/09/2018 08:40 PM
LOSS OF RECREATION    00 015   03/17/2019  04/01/2019 01/21/2019 09:20 PM
LOSS OF RECREATION    00 015   04/01/2019  04/16/2019 02/04/2019 06:00 AM
LOSS OF PACKAGES      00 030   02/10/2019  03/12/2019 11/12/2018 06:45 PM
LOSS OF PACKAGES      00 015   03/12/2019  03/27/2019 11/27/2018 11:00 AM
LOSS OF PACKAGES      00 020   03/27/2019  04/16/2019 11/27/2018 11:50 AM
LOSS OF PACKAGES      00 030   04/16/2019  05/16/2019 12/09/2018 08:40 PM
LOSS OF PACKAGES      00 015   05/16/2019  05/31/2019 01/21/2019 09:20 PM


                                   NEXT DIN:
                              ADDITIONAL SANCTIONS



<ENTER>          <PF3>  EXIT(FUNCT)            <CLEAR>  EXIT(SYSTEM)
```

FORM 2171B (10/14)
Side 2

05/070

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

_Sing-Sing_  **Correctional Facility**

Exhibit #5-1
#3002
T2
EO

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO ♦ NÚM | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Best, Sean | 09A1969 | HBA K-8 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| Barber Shop | 9/21/18 | Approx 9:10 AM |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN(ES)**

106.10 Direct order   107.20 false information

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On 9/21/18 while working in the barber shop I C.O J. Walker advised inmate (Best, Sean #09A19.9 of directive 4914 of which he is only allowed a basic haircut. Inmate Best was given a direct order to have his mohawk hairstyle removed. Inmate stated that he is a Rastafarian and refuse to have his hair cut. Inmate was returned to his cell for refusing the direct order and giving false information about his religion because upon further review of his record he belongs to the Nation of Islam

A block housing supervisor notified Sergeant A. Alvarado.

Served by C.O
R. Castro  9-22-18
5:00pm

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 9/21/18 | J. Walker C.O | _(signature)_ | C.O |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)**   SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS:   1. _____

2. _____        3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE AND TIME SERVED UPON INMATE _____   NAME AND TITLE OF SERVER _____

FECHA HORA DADO AL RECLUSO _____   NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

### NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un carge formal el cual se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondráun peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

bution: WHITE - Disciplinary Office   CANARY - Inmate (After review) ♦ Disfribución: BLANCA - Oficina Disciplinaria   AMARILLA - Recluso (después de la resión)

Exhibit S-2

11/13/2018       NYS DEPT OF CORRECTIONS & COMMUNITY SUPERVISION    PAGE   1
DCP004             DISCIPLINARY HEARING DISPOSITION RENDERED

SING SING GN                    TAPE NUMBER 18-320

DIN: 09A1969 NAME: BEST, SEAN           LOCATION: 0A-KS-09S

INCIDENT DATE & TIME:     11/12/2018   06:45 PM   TIER 2

REVIEW DATE:           11/12/2018      BY: LT  DURLAND, T M

DELIVERY DATE & TIME:     11/13/18   05:40 PM  BY:  CO  CASTRO, R M
HEARING START DATE & TIME: @ 11/17/18 12:00 pm BY:  LT. E. PAGAN

HEARING END DATE & TIME:  11/17/18 12:10 pm BY:  LT. E. PAGAN

DOES THIS MISCONDUCT MEET THE CRITERIA FOR WORKPLACE VIOLENCE?  Y / N
CHARGE
NUMBER    DESCRIPTION OF CHARGES        REPORTED BY     DISPOSITION

| Charge Number | Description of Charges | Reported By | Disposition |
|---|---|---|---|
| 104.13 | CREATING A DISTURBANCE | CO PAGANO, S J | Guilty |
| 107.10 | INTERFERENCE WITH EMPLOYEE | | Guilty |
| 106.10 | REFUSING DIRECT ORDER | | Guilty |
| 102.10 | THREATS | | Guilty |
| 115.10 | REFUSE SEARCH OR FRISK | | Guilty |

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.
SANCTION DATES BELOW ARE SUBJECT TO REVIEW/CHANGE, AND WILL BE CONSECUTIVELY ADDED TO
ANY SIMILAR CURRENT SANCTION. IN ADDITION, WHENEVER A CONFINEMENT PENALTY IS BEING
SERVED AND A MORE RESTRICTIVE CONFINEMENT PENALTY IS IMPOSED AS A RESULT OF ANOTHER
HEARING, THE MORE RESTRICTIVE PENALTY SHALL BEGIN TO BE SERVED IMMEDIATELY, AND ANY
TIME OWED ON THE LESS RESTRICTIVE PENALTY SHALL BE SERVED AFTER COMPLETION OF THE
MORE RESTRICTIVE PENALTY PERIOD.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| B000 | Keeplock | 30 | 11/12/18 | 12/12/18 | — | 30 | |
| E000 | Loss of Pack | 30 | 11/12/18 | 12/12/18 | — | 30 | |
| F000 | Loss of Comm | 30 | 11/12/18 | 12/12/18 | — | 30 | |
| G000 | Loss of Phone | 30 | 11/12/18 | 12/12/18 | — | 30 | |



# NEW YORK STATE | Corrections and Community Supervision

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

*Exhibit S-3*

## MEMORANDUM

**TO:** Best. S    09A1969    A-K-9

**FROM:** M. Royce, Deputy Superintendent of Security

*M Barnes Capt A/DSS*

**SUBJECT:** Correspondence

**DATE:** November 20, 2018

I am replying to your correspondence to my office pertaining to your keeplock time. You are currently confined on a misbehavior report dated 11/12/18. You will remain confined pending the outcome of the hearing.

cc: File
Guidance
Disciplinary



**NEW YORK STATE**

# Corrections and Community Supervision

Exhibit 5-3

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

## M E M O R A N D U M

To:    Best, S 09A1969

From:  A/CAPT. R. Williams

Subject:  Appeal review

Date:  12/0418

    I have reviewed you request to have your appeal reviewed on the basis of the sanctions given by hearing Officer LT. Pagan.  Although 30 days deferred was written in it is clear that no number of days was written suspended section. This indicates that the hearing officer made a typographic error. It is clear from his reason for disposition that he intended for you to be keep locked for 30 days from 11/12/18 till 12/12/18. It is also noted you will be keep locked until 1/11/19 on the misbehavior report you were issued on 11/20/18. You may also receive additional keep lock time on the 4 misbehavior reports issued to you on 11/27/18 and 11/29/18.  I encourage you to conform to department policy and guideline so you may take advantage of programs offered at Sing Sing.

                                           R. Williams A/Capt.

Exhibit S-4

**State of New York**
**Department of Corrections**
**& Community Supervision**
**Sing Sing Correctional Facility**
**354 Hunter Street**
**Ossining, New York 10562-5442**
**914-941-0108**

**Anthony Annucci**                                        **Michael Capra**
**ACTING COMMISSIONER**                                   **SUPERINTENDENT**

## Memorandum

January 2, 2019

K-9

To:     S. Best #09A1969

From:   Q. Quick, I.G.P. Supervisor

Subj:   **30 Day Disposition**

Be advised,

I think you have misread the disposition. You were certainly given 30 days, there were no deferral days.

File.



## Corrections and Community Supervision

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

MEMORANDUM

TO:        Inmate: Best, S 09A1969

FROM:      Captain's Office

SUBJECT:   Tier II Appeal

DATE:      12/05/18

Your recent correspondence has been received in this office.  Your letter references a Tier II hearing completed on 11/26/18, at which you were found guilty of:

Charges: 107.11, 106.10 and 112.21

Based on a review of the issues you raised in your letter and information relevant to this hearing:

____X____        The disposition is hereby affirmed

_____        Disposition is modified as follows:

**Comments:** This hearing was completed in accordance with Chapter 5 Title 7. 1) Sergeant Shepherd endorsed the report as the area supervisor. Sergeant Shepherd and Officer Ciszewski were available at the hearing for you to question them about the incident but you chose not to attend. 2) you were not keep locked on this report nor was any keep lock time given for this report.

CC: Disciplinary Office – please enter discretionary review

Guidance Unit

Inmate Corresp. File

# Inmate Grievance Complaint

Sean Best - 09-A-1969
H3A - K - 9 - SSCF
Advisee - No

Jan - 23, 2019

## Description of Incident

I recieve a total of 60 days keeplock, 30 of which was illegally imposed. I was scheduled to go off of keeplock status on January 11 2019 on that day I spoke to Sgt. Accurdo and gave him all of the documentation in my cell pertaining to all my disposition. He said that their paperwork said I get off on January 19, 2019. I asked him how that was possible when I only had 60 days beginning Nov. 11, 2018. He said to me He spoke To Lt. Busch who he said told him "He's an asshole anyway who likes to write grievances, tell him to write that". I remained illegally confined for 9 days, I wrote to the Superintendent who did nothing.

Action Requested: To stop being retaliated against and compensation for illegal confinement.

To: Superintendent Capra
From: Sean Best. 09-A-1969  - HBA - K9

Re: Wrongful confinement and
     Excessive wrongful confinement

Dear Sir,
              This is my third time
writing to you to No avail.
          (I initially spoke to you vis-à-vis
on K-gallery while you were making
rounds with Sgt. Shupard. I explained
to you that according to the disposition
that I recieved from Lt. Pagan, which
I showed you that clearly stated
that although I was given 30 days
kieplocked and loss of privileges as
well However it was stipulated via
the Hearing record disposition that
said sanctions be deferred for 30 days
as well. Your intelligent So I will not
offend you by asking you if you have a
clear understanding of my argument
which is in fact a meritorious claim
of illegal confinement
          I was never taken off as you
suggested upon completion of the
60th total K.L. days I had to serve

Page 2

between the 11th of November 2018 until January 11th of 209. However on the 11th of January, I was not taken off, I wrote to you immediately Yet I received no response?

I spoke to Sgt. Acevado whom in turn spoke to Lt. Buel, stated I Should Just grieve it, because "He's an asshole with a Lot of tickets. I got released From K.L. Status on 1/19/19 appx 9 days after my sanctions were recorded to have been complete, and by Law and Directive I Should have been released.

I don't know what? If at this point you can do to rectify this situation I'm being retaliated against because of my numerous complaints? I Just want to do my time in peace. I am not supposed to be here anyway, AS I told you Prior. My max date was on August 28 2018. As Dep. Piazza clearly stated I should have been released on 8/24/18 No later than 8/28/18. and I Have Never received any documents saying otherwise

Page 3

This is a Violation of Directive as well as executive laws 259.I). I'm being illegally confined, it's not privileged, I'm fully aware, and your intention is to keep me confined illegally.

I humbly ask that you rectify this situation. I have put you on legal notice pursuant to NY state and federal laws, that your response is required to this missive and that once your research is complete that you take the steps to free me.

I thank you in advance for your time and attention in this matter.

Very Truly,

Respectfully

cc)
U.S.

To: Captain Barnes

From: Sean Bett - 09-a-1969- A-K-9

Re: Your correspondance / appeal

November 22, 2018

Dear Sir,

I recieved your memo pertaining to my Appeal, which it seems you have mistaken for a letter, My Hearing for the incident on 11/12/18 that you refer to has been completed on 11/18/18 hence my appeal to you.

I'm requesting that you address the issues in my timely Appeal in your possession, I should note that I spoke directly to the Supt. and showed him that according to the disposition for aforementioned hearing all of the Sanctions have been deferred, his reaction was the same as mine when he asked "So why do the still have you locked up? This is a problem" They've still refused to take me of K.L even though the Supt. said So. I'm Asking You to address this as he said You are his

Page 2

Delegate in the event they didn't
Follow his orders.
        I thank you in advance for
your assistance in this matter.

Very Truly,

[signature]

To: Superintendent or Designee          Ex-54

From: Sean Busl - 09-A-1969 - 48A-K9

Re: Tier 3 Appeal

November 29, 2018

Dear Sir,

   I'm appealing a disposition of
guilty and all sanctions due to this
guilty finding.

   I received a Misc. 11/20/2018
according to the DISDOCS Hearing record
Sheet. The sheet Alleges that I was
Served on 11/23/18 by Co Ramirez J.

   On 11/29/18 I was told at 8am
to get ready for disciplinary. At Appx 8:45
a.m. I was in the disciplinary office.
I had (3) callouts for 1pm
one for Building B 3rd floor. And
one for Dr. Alam in the hospital.
An officer was called to escort
me to building B because Dr. Husbandry
was available and had agreed to see
me due to the conflicting callouts
both being mandatory and important.
The only Log Book will Reflect
this as well.

   When I was done in Bldg B
I told the escort'g officer I needed
to go back to disciplinary. He Told
me it was court time if they wanted

me THEY'd have to get me from the block. He took me to my gallery and locked me in. I remained in my cell for the count.

The count sheet for K-1-O gallery for the 11 AM master count will reflect this, as will the log book from the disciplinary office and their 11 am count sheet.

At Appx 12:15, I was in my cell, they brought me lunch, I ate my food and then I was told to get Ready for my 1pm Hospital Callout. At Appx 12:50, I was taken out of my cell by officer murphy and searched then to the hospital. there were other inmates before me. we waited. I met with DR Alam. medical Records and the Hospital log book will Reflect this As will the Facilities Master callout list for November 29, 2018.

According to Lt Bosch, I refused to attend the hearing which he said according to the Record At 12:15 pm and ended on 12:42 pm. As stated I was at A callout. Medical Supersedes a disciplinary Hearing, on top of the fact that no one came to get me before or After the 11 A.M count.

As per Directive 4932

Tier 2 Appeal 

I Have a due process and statutory right to attend the hearing, present evidence and call witnesses on my behalf.

I was denied this right and then penalized with numerous sanctions by a Biased hearing officer, who did not investigate as to why I was unable to attend the Hearing. I Had Mandatory Medical callouts in the A.M. and P.M. yet he held a Hearing in Absentia, Found me guilty and blasted me with 8 sanctions.

As such this hearing must be reversed and because it is a Due process violation along with a violation of Directive 4932, all records of this must be expunged From my Records, to not do so is a further violation of my constitutional and regulatory Rights.

I Thank You in advance for Your time and attention in this matter.

Respectfully,

[signature]

(c.c.) commissioner of corrections
1220 washington Ave
Albany, N.Y. 12224

To: Superintendent

From: Sean Best · 09-a-1969

Re: Tier 2 Appeal

November 19, 2018

Dear S.a,
            I recieved an Inmate
Misbehavior Report (IMBR) on 11/13/18
For an alleged incident on 11/17/18.
            On the morning of 11/17/18 I was
taken to disciplinary to begin my
hearing at appx 8am, and I remained
there until after the afternoon
count was clear. I returned back to
my cell appx 1:30 pm. This can be
verified by (1) The K-20 gallery log
book, The K gallery pan "Go round"
Sheet, The count sheet for K gallery
for the 11 a.m. master count, and
the log book from disciplinary office.
            At 1pm I was told Lt. E. Pagan
was going to the shu to conduct
hearings and would return. The officer
told me that I could go use the
bathroom in my cell, and that if
she didn't come back in the
afternoon she'd get me in the
A.M. on 11/18/18. I said ok and was
returned to my cell.
            That evening (11/17/18) officer
Castro from the disciplinary office
brought me a Hearing Disposition and

Tier II. Appeal                                          Page III

told me that I Had been Found guilty of all charges. I explained to her I never started my hearing. She said to me You refused to go to Your hearing and He held it in absentia.

The Hearing disposition record states that on 11/17/18 at 12:00 pm Lt Pagan started the hearing, and that the hearing ended at 12:10 pm. In his Statement of Evidence Relied upon He says "Your Refusal to be present at the hearing".

This must be vigorously Examined. As stated I was at disciplinary from 8am until 1:30 p.m. He alleged that at 12pm I refused to attend my hearing. How is that possible? Secondly the hearing record is void of any Factual Evidence Stating how and why I Refused my Hearing, there must be a written Record of this and it must be a part of the Statement of Evidence relied upon. He cannot Just State I refused to be present.

These are the facts. Now I'll present to you the law governing disciplinary hearings, according to NYSDOCCS Directive no 4932 Area Chapter V Ticer

(1) 250.2 (C) states Disciplinary action must Never be arbitrary or capricious or administered for the purpose of Retaliation

Tier 2 Appeal                                          Page 4

or Revenge - There can be no intension
or this that it being arbitrary or capricious
that Lt. Pagas without Just cause to
hold a hearing in absentia

(2) 253.1 (a) states "The Disciplinary
Hearing Officer shall be responsible for
conducting Disciplinary Hearings in an Impartial
Manner". - Lt. Pagas was not 'Impartial'.

(3) 253.5 (A)(B)(C) Inmate witnesses.
In short "The inmate may call witnesses
on his behalf", "If permission to call a
witness is denied, the hearing officer shall
give the Inmate a written statement
stating the reason for the denial" (A)

(B) "Any witness shall be allowed to
testify at the hearing in the presence of
the inmate"

(C) "An Inmate may Request A witness
by either (1) Informing Assistant or
(2) Informing the hearing officer during
the hearing"

Once Lt. Pagas decided to hold my
hearing without me in ~~absentia~~, he
violated my statutory and Regulatory
due process Rights to call any witnesses
to assist me in my hearing. This is also
a violation of the U.S. constitutional.